IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| DANNY W. PICKARD, #245939 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:07-cv-00270-MHT-WC |
| | ) | |
| SGT. MOORE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' SPECIAL REPORT

COME NOW Sergeant Pierce Moore (hereafter, "Sergeant Moore"), Nurse Tina Riley (hereafter, "Nurse Riley"), and the Russell County Detention Center (hereafter, the "Jail"), (collectively, hereafter, the "Defendants"), Defendants in this action, and submit this Special Report to the Court as follows:

## I.    INTRODUCTION

On or about March 28, 2007, Plaintiff filed this action against Sergeant Moore, Nurse Riley, and the Jail, alleging violation of his civil rights while he was incarcerated in the Jail. On March 30, 2007, this Court ordered that Defendants file an Answer and Special Report.

## II.    PLAINTIFF'S ALLEGATIONS

The Plaintiff alleges violations of his civil rights in that he was subjected to excessive force, and denial of adequate medical treatment, all perpetrated by Defendants while the Plaintiff was incarcerated at the Jail.[1]

---

[1] This is an aggregation of the claims made in both of the Plaintiff's Federal Court Complaints, and the claims made in his State Court Complaint. All three Complaints, collectively, will hereafter be denominated the "Complaint."

### III.    DEFENDANT'S RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants Sergeant Moore, Nurse Riley, and the Jail deny the allegations made against them by the Plaintiff, as said allegations are untrue and completely without basis in law or fact.

### A.    FACTS

The Plaintiff in this action, Danny Wayne Pickard, was incarcerated at the Russell County Jail on January 18, 2007, on a charge of probation violation in the state of Florida.[2]  (See Danny Wayne Pickard's Inmate File (hereafter, "Inmate File"), attached hereto as Exhibit A and incorporated herein as if fully set forth.)

At the time of the Plaintiff's incarceration, the Jail had a policy forbidding the use of excessive force by Jail employees.  (Affidavit of Pierce Moore dated May 31, 2007 (hereafter, "Moore Aff."), attached herewith and incorporated herein as Exhibit B, at ¶ 9; Affidavit of Stephen Wurst (hereafter, "Wurst") dated May 31, 2007 (hereafter, "Wurst Aff."), attached herewith and incorporated herein as Exhibit C, at ¶ 9; Affidavit of Danny Bussey (hereafter, "Sergeant Bussey") dated May 31, 2007 (hereafter, "Bussey Aff."), attached herewith and incorporated herein as Exhibit D, at ¶ 8.)  It is a violation of Jail policy to use excessive or unnecessary force towards an inmate. Id.

On or about January 22, 2007, at about 3:15 a.m., Sergeant Moore was in the Sergeant's Pod completing paperwork and monitoring the Jail observation cells.  (Moore Aff. at ¶ 10.)  At that time, the Plaintiff was housed in an observation cell because he had recently been admitted to the Jail while suffering from withdrawal from alcohol and possibly other drugs.  Id.  At that time, Sergeant Moore heard a banging noise coming from the Plaintiff's cell, and he went to investigate. Id.  He witnessed the Plaintiff backing up in his cell, taking several steps forward and ramming his head into the steel cell door.  Id.  During this time the Plaintiff was repeating in a loud voice that he

---

[2] Five days later, while in the Russell County Jail, the Plaintiff was arrested for six (6) related charges of Second Degree Forgery  Id.

had to get out of the cell, and that he was going to kill himself.  Id.  Sergeant Moore (and subsequently Officer Wurst) observed blood on both the Plaintiff's forehead and running down the inside of the cell door.  (Id.; Wurst Aff. at ¶ 10.)  Sergeant Moore urged to Plaintiff to stop his behavior to prevent further injury, but the Plaintiff continued his behavior.  Id.  Sergeant Moore called for backup, and opened the cell door and attempted to grab the Plaintiff's arm to secure him. (Id.; Wurst Aff. at ¶ 10.)  The Plaintiff resisted Sergeant Moore's attempts to restrain him, and Sergeant Moore applied a one-second burst of chemical spray to attempt to incapacitate the Plaintiff.  (Moore Aff. at ¶ 10.)  However, the chemical spray appeared to have no affect on the Plaintiff, and he slipped by Sergeant Moore, ran down the hall, and barricaded himself in the property room.  Id.  At this time Correctional Officers Steven Wurst and Joyce Walden responded. (Id.; Wurst Aff. at ¶ 10.)  The property room door would not completely close, and Officers Wurst, Walden and Sergeant Moore managed to force the door open.  Id.  Upon opening the door, the Plaintiff was discovered in the back corner of the room with a broom in the "baseball bat" position. (Wurst Aff. at ¶ 10.)  The officers instructed the Plaintiff to drop the broom and get on the ground, but the Plaintiff did not comply.  Id.  The Plaintiff exited the room wielding a broom, at which time Sergeant Moore grabbed the Plaintiff's right arm and the officers were able to wrestle the Plaintiff to the ground.  (Id.; Moore Aff. at ¶ 10.)  The Plaintiff was resisting during this time.  (Moore Aff. at ¶ 10.)  After the Plaintiff was on the ground Sergeant Moore was able to remove the broom from the Plaintiff's hands, but was unable to apply handcuffs due to the Plaintiff's continued aggressive resistance.  Id.  Sergeant Moore therefore deployed his collapsible baton and struck the Plaintiff in the lower thigh, on the common peronial pressure point, in order to gain compliance.  Id.[3]  After one

---

[3] Officer Wurst's testimony is that Sergeant Moore employed his collapsible baton in order to get the Plaintiff on the ground and remove the broomstick from the Plaintiff's hand.  (Wurst Aff. at ¶ 10.)  Nevertheless, both Wurst's and Moore's testimony agree that Moore employed only a single strike to the Plaintiff's common peronial (outer thigh area) to subdue the Plaintiff enough to apply handcuffs.  (Id.; Moore Aff. at ¶ 10.)

strike, the Plaintiff complied and the officers were able to handcuff him and escort him back to his holding cell.  (Id.; Wurst Aff. at ¶ 10.)

At that time Sergeant Moore notified the on-call Jail nurse that she was needed at the Jail immediately.  Id.  After approximately five (5) to ten (10) minutes, the nurse arrived and the officers advised her of what had occurred.  Id.  Officer Wurst and Sergeant Moore then re-entered the Plaintiff's holding cell and escorted the Plaintiff to the Jail infirmary for medical treatment.  Id.  The nurse began treatment on the Plaintiff, and advised the officers that due to the depth of the cut on his head, the Plaintiff needed to be transported to the hospital for treatment.  Id.  Sergeant Moore then contacted central dispatch and advised them to send Emergency Medical Services to the Jail.  Id.  A few minutes later EMS arrived, began conducting medical treatment on the Plaintiff, and loaded the Plaintiff into an ambulance for transport to the hospital.  Id.

Officer Wurst escorted the Plaintiff to the hospital, riding in the ambulance with him. (Wurst Aff. at ¶ 11.)  During the transport, Wurst heard the Plaintiff complaining to the emergency medical technicians that the jail personnel had beat him with tire irons and sprayed him with poison. Id.  Wurst also heard him state that he was a P.O.W. and was being held against his will, and that the medics needed to contact the F.B.I.  Id.  Upon arrival at the hospital, Wurst heard the Plaintiff continue to complain to the hospital staff that he had been beaten with tire irons and sprayed, and that he was being held against his will.  Id.  Wurst also heard him inform them that they needed to contact his brother in Rome.  Id.  Wurst observed that any time he was present the Plaintiff would refer to his name, rank and serial number as if he was a prisoner of war; however, if Wurst was not within the Plaintiff's visual area, the Plaintiff would speak to the hospital staff in a normal manner. Id.  Wurst also heard the Plaintiff state that he was trying to give the Jail staff "hell" during the incident at the Jail, that the Jail staff was going to kill him when he got back to the Jail, that he was fearful for his life, and that the Jail is a scam to make money.  Id.  Wurst observed the hospital

medical staff bring a mobile x-ray machine into the Plaintiff's room in order to take an x-ray of his head, though Wurst did not personally observe the x-ray.  Id.  Wurst observed the medical staff put approximately ten (10) to fifteen (15) staples in the Plaintiff's head, and otherwise treat his head injury.  Id.  Wurst did not observe the Plaintiff complain of any other injuries, nor did Wurst observe the hospital medical staff treat any other injuries.  Id.  Wurst did not observe any other injuries on the Plaintiff.  Id.

Upon discharge, Wurst notified the jail that he and the Plaintiff needed transportation back to the jail.  (Id. at ¶ 12.)  Deputy Tim Watford arrived at the hospital for transport, but the Plaintiff refused to leave the hospital bed.  Id.  Deputy Watford managed to verbally calm the Plaintiff and convince the Plaintiff to exit the hospital and enter the patrol car.  Id.  As Wurst, Deputy Watford and the Plaintiff were en route to the Jail, the Plaintiff continued to complain that the Jail Staff was going to kill him, etc.  Id.  Deputy Watford repeatedly instructed the Plaintiff to quiet down, but the Plaintiff did not comply.  Id.  Upon arrival at the Jail, the Plaintiff was escorted back to his holding cell.  Id.  Upon the Plaintiff's return from the emergency room that day, he was examined by Dr. Warr, the Jail doctor.  (Affidavit of Tina Riley dated May 31, 2007 (hereafter, "Riley Aff."), attached herewith as Exhibit E and incorporated herein as if fully set forth, at ¶ 3.)  Nurse Riley assisted in that examination.  Id.  Dr. Warr and Nurse Riley cleaned the Plaintiff's wound and provided him with medication for pain at that time.  Id.

The force used in the aforementioned incident was restricted to the minimum force necessary to gain and maintain control of the Plaintiff and ensure the protection of the Plaintiff and Jail personnel.  (Moore Aff. at ¶ 11; Wurst Aff. at ¶ 13.)  At no time was the Plaintiff hit in the head, or otherwise assaulted beyond the minimum standardized and approved pressure point and joint manipulation control techniques required to subdue the Plaintiff sufficient to place him in handcuffs.  Id.

At the time of the Plaintiff's incarceration, the Jail had an inmate grievance procedure. (Moore Aff. at ¶ 4; Wurst Aff. at ¶ 4; Bussey Aff. at ¶ 4.)  Grievances were required to be in writing and could be filed with any member of the Jail Staff.  Id.  Jail policy provided an exception that allowed emergency grievances to be made orally.  Id.  Copies of all written grievances were placed in the inmate's file.  Id.  It was a violation of Jail policy to deny an inmate access to the grievance procedure.  (Moore Aff. at ¶ 6; Wurst Aff. at ¶ 6; Bussey Aff. at ¶ 6.)  The Plaintiff was aware of the grievance procedure.  (Moore Aff. at ¶ 5; Wurst Aff. at ¶ 5; Bussey Aff. at ¶ 5.)  The Plaintiff filed a series of grievances with respect to the subject matter of this lawsuit.  (Inmate File; Bussey Aff. at ¶ 5.)  After receiving the initial grievance on March 1, 2007, Sergeant Bussey began an investigation into the Plaintiff's complaints.  Id.  On April 5, 2007, he concluded that investigation, and found that there was no evidence to support the allegations contained in the Plaintiff's grievances.  Id.  However, due to the Plaintiff's statements indicating that he was scared of other inmates, Sergeant Bussey placed the Plaintiff in protective custody in the front of the jail.  Id.

The Jail has policies, procedures, and personnel in place to provide inmates with necessary medical care.  (Moore Aff. at ¶ 7; Wurst Aff. at ¶ 7; Bussey Aff. at ¶ 7; Riley Aff. at ¶ 4.)  Inmates at the Jail can receive routine medical attention by simply requesting it.  Id.  The Jail's inmate medical policy also includes procedures for more urgent medical needs.  Id.  If a correctional officer believes he is confronting an obvious emergency, he has full authority to immediately send inmates to the Jail infirmary.  Id.

Upon his incarceration (January 18, 2007), the Plaintiff was examined by the Jail medical staff.  (Medical File of Danny Pickard (hereafter, "Medical File"), attached herewith as Exhibit F and incorporated herein as if fully set forth.)  His Intake Screen notes that he exhibited confusion and poor short term memory, that he had a history of attempted suicide, and that he exhibited auditory and visual hallucinations.  Id.  He was immediately placed on suicide watch.  Id.

6

On February 3, 2007, the Plaintiff submitted a Medical Request Form complaining of headaches, anxiety, stating that his medication was not working, and seeking help.  Id.  He was referred to see a doctor and other assistance.  Id.  On February 6, 2007, the Plaintiff submitted another Medical Request Form complaining that he had passed three (3) kidney stones, and that he had another one.  Id.  He continued to state that his medication was not working and that he was anxious.  Id.  He was given two medications and referred to the jail doctor.  Id.  On March 28, 2007, the Plaintiff submitted another Medical Request Form complaining that his medication was not working.  Id.  The jail doctor spoke with him regarding this request.  Id.

On March 3, 2007, the Plaintiff again submitted a Medical Request Form complaining of anxiety, and stating that his medication was not working.  Id.  He was referred to the jail doctor.  Id.  Three days later, on March 6, 2007, the Plaintiff submitted another Medical Request Form complaining about a kidney stone.  Id.  He was scheduled to see the jail doctor within a few days.  Id.  However, the very next day (March 7, 2007) the Plaintiff submitted another Medical Request Form asking to see his mental health doctor, and complaining that Nurse Riley was ignoring his previous requests.  Id.  He was informed the next day that he already had an appointment scheduled with East Alabama Mental Health.  Id.  On March 12, 2007, the Plaintiff again submitted a Medical Request Form asking that his medication be changed, and complaining of anxiety.  Id.  He was referred to the jail physician.  Id.  Two days later he was seen by East Alabama Mental Health.  Id.  On March 22, 2007, the Plaintiff submitted another Medical Request Form specifically to Nurse Riley complaining about his medications making him sick.  Id.  That complaint noted that East Alabama Mental Health needed to be contacted regarding changing the Plaintiff's medications.  Id.  That very same day, however, the Plaintiff submitted another Medical Request Form complaining that he needed to see a dentist regarding a tooth.  Id.  Despite the Plaintiff's statement that he had

sent previous requests regarding the tooth, this was the first written request received by the jail medical staff.  Id.  The Plaintiff was put on the list to see a dentist.  Id.

On March 23, 2007, the Plaintiff submitted two Medical Request Forms asking for a couple of Tylenol.  Id.  He was given two Tylenol.  Id.  On March 30, 2007, the Plaintiff submitted a Medical Request Form asking for help with his tooth, and also asking for a snack to keep his medication from upsetting his stomach.  Id.  The snack was not approved.  Id.  However, on April 1, 2007, the Plaintiff again submitted a Medical Request Form asking about a snack and help with his tooth.  Id.  Again, the snack was not approved.  Id.  On that same day, the Plaintiff submitted two more Medical Request Forms asking for some Tylenol.  Id.  Both requests indicate that he was given two Tylenol.  Id.  On May 21, 2007, the Plaintiff submitted a final Medical Request Form asking for Tylenol and something for a sore throat.  Id.  He was given two Tylenol and two throat lozenges.  Id.

Nurse Riley has no personal knowledge of the facts of the Plaintiff's Complaint.  (Riley Aff. at ¶ 3.)  She works an eight-to-five day shift, and was not on duty during the times relevant to the Plaintiff's Complaint.  Id.  She has no personal knowledge of the Plaintiff suffering from seizures. (Id. at ¶ 6.)  At one time the Plaintiff did complain of kidney stones, and a urinalysis was performed by Dr. Warr.  Id.  There was a trace of puss, but no indication of blood in his urine, which is indicative of kidney stones.  Id.  Nevertheless, out of an abundance of caution, the Plaintiff received an antibiotic and pain reliever as a result of that examination.  Id.  Nurse Riley has never thrown away, discarded, or otherwise destroyed medical request forms from the Plaintiff or any other inmate.  (Id. at ¶ 7; Medical File.)

**B.    LAW RELATING TO THE PLAINTIFF'S ALLEGATIONS**

    **1.    The Plaintiff's Claims Against the Russell County Detention Center are Due To Be Dismissed.**

The Plaintiff's claims against the Russell County Detention Center (the Jail) are due to be dismissed because the Jail is not a valid legal entity capable of being sued.  Sheriff's departments, and by extension their jails, are not legal entities, and under Alabama law do not have the capacity to be sued.  Dean v. Barber, 951 F.2d 1210, 1214-15 (11th Cir. 1992) ("Sheriff's departments and police departments are not usually considered legal entities subject to suit").

    **2.    The Plaintiff's Claims are Barred by the Prison Litigation Reform Act for Failure to Exhaust Administrative Remedies.**

The Prison Litigation Reform Act requires exhaustion of all available administrative remedies *before filing a lawsuit* under 42 U.S.C. § 1983.  See 42 U.S.C. § 1997e(a) (2005). Exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).  The Plaintiff in this case has not utilized a distinct administrative remedy available to him; he has failed to pursue a grievance through the State Board of Adjustment.  See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies).  Alabama law provides the opportunity to file a claim and proceed before the Alabama State Board of Adjustment pursuant to Ala. Code § 41-9-60 et seq.  The Plaintiff has failed to do so.  Because the State has provided an administrative remedy that the Plaintiff failed to exhaust, the Plaintiff's claims are barred by 42 U.S.C. § 1997e(a).  See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of present action due to failure to exhaust administrative remedies).

3.     **The Defendants, in Their Official Capacities, Are Entitled to Judgment in Their Favor as a Matter of Law.**

In his Complaint, the Plaintiff has not designated whether he is suing the Defendants in their official or individual capacities.   Out of an abundance of caution, to the extent the Plaintiff's Complaint can be construed as making official capacity claims, the Eleventh Amendment bars such claims.   Additionally Defendants, in their official capacities, are not "persons" for purposes of 42 U.S.C. § 1983.

(a)     **All official capacity claims against Defendants are barred by the Eleventh Amendment to the United States Constitution.**

The Plaintiff's official capacity claims are due to be dismissed for lack of subject matter jurisdiction.   Defendants are executive officers of the State of Alabama.   Therefore, a suit against Defendants, in their official capacities, is a suit against the State of Alabama.   See Hafer, 502 U.S. at 25; Lancaster, 116 F.3d at 1429; see also Kentucky v. Graham, 473 U.S. at 165-66. Because this suit is, in effect, a suit against the State of Alabama, the Eleventh Amendment to the United States Constitution bars the Plaintiff's claims under § 1983.   See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989); see also Dean v. Barber, 951 F.2d 1210, 1215 n.5 (11th Cir. 1992); Carr v. City of Florence, 916 F.2d 1521, 1525 (11th Cir. 1990) (citing Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) and upholding the proposition that a deputy sued in his official capacity is entitled to Eleventh Amendment immunity).   Thus, this Court lacks subject matter jurisdiction over these claims.

(b)     **Defendants, in their official capacities, are not "persons" for purposes of 42 U.S.C. § 1983.**

42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution.   42 U.S.C. § 1983.   The United States Supreme Court has held that a state official sued in his or her official capacity, is not a "person" under § 1983.   Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).   Thus, any claims

10

against these Defendants, in their official capacities, are due to be dismissed because Defendants are not "persons" under § 1983, and therefore, these claims fail to state a claim upon which relief can be granted.  Id.; Carr, 916 F.2d at 1525 n.3 (citing Will and noting that, in addition to entitlement to Eleventh Amendment immunity, "neither a State nor its officials acting in their official capacities are a 'person' under § 1983").

### 4.    Defendants are Entitled to Qualified Immunity.

In the event this Court construes the Plaintiff's Complaint to include claims against the Defendants in their individual capacities, the Defendants are entitled to qualified immunity and a dismissal of Plaintiff's claims unless they violated his clearly established constitutional rights of which a reasonable person would have known.  Lancaster v. Monroe County, 116 F.3d 1419, 1424 (11th Cir. 1997).  Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial.  Ansley v. Heinrich, 925 F.2d 1339, 1345 (11th Cir. 1991).  The Eleventh Circuit Court of Appeals has observed, "[t]hat qualified immunity protects governmental actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities."  Lassiter v. Alabama A & M Univ., 28 F.3d 1146 (11th Cir. 1994) (en banc) (emphasis in original) (footnote omitted).  In the light of pre-existing law the unlawfulness must be apparent.  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Mere statements of broad legal truisms, without more, are not sufficient to overcome qualified immunity.  Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993).

Once a defendant has asserted the defense of qualified immunity, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  The second

inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the Plaintiff's constitutional rights? Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994). A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster v. Monroe County, 116 F.3d 1419, 1424 (11th Cir. 1997). "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Board of Education, 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

The instant Plaintiff alleges that he was unlawfully subjected to excessive force by the Defendants and further, that he was denied medical care. The Defendants are entitled to judgment in their favor as a matter of law on these claims for three reasons. First, these Defendants' policies and actions were not deliberately indifferent to a constitutional right of the Plaintiff. Second, the Defendants did not promulgate policies that caused the Plaintiff's alleged constitutional deprivations. Third, no clearly established law provided these Defendants with "fair warning" that their conduct was unlawful.

### (a)    The Plaintiff did not suffer from an objectively serious medical need.

The Constitution does not mandate comfortable prisons. Rhodes v. Chapman, 452 U.S. 337, 349 (1981). Jail officials must provide humane conditions of confinement, ensuring that inmates receive adequate food, clothing, shelter, and medical care. Hudson v. Palmer, 468 U.S. 517, 526-

527 (1984). A claim is stated only where the conditions of confinement pose a risk to the health or safety of an inmate and the defendant official is deliberately indifferent to that risk. Farmer, 511 U.S. at 837.

A constitutional violation for denial of medical care is stated where the facts tend to show that a Jail official was deliberately indifferent to the serious medical needs of an inmate. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). The Plaintiff must satisfy both an objective and a subjective inquiry. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000); Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995). First, he must show an objectively serious medical need. Taylor, 221 F.3d at 1258; Adams, 61 F.3d at 1543. Second, the Plaintiff must demonstrate that the Defendants acted, or failed to act, with an attitude of "deliberate indifference" to that serious medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A prison official cannot be deliberately indifferent to an excessive risk to an inmate's health unless he is both "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . draws[s] the inference." Farmer, 511 U.S. at 837. In the instant case, the Plaintiff has failed to allege any facts tending to show that these Defendants knew of a serious medical condition.

An inmate does not have a right to a *specific* kind of treatment. City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; *how [a municipality] obtains such treatment is not a federal constitutional question*") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff. See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in Jail, and

although plaintiff may have desired different modes of treatment, care provided by Jail did not constitute deliberate indifference), <u>cert. denied</u>, 475 U.S. 1096 (1986); <u>Westlake v. Lucas</u>, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").  The Plaintiff has not alleged any facts to show that he has been in danger of serious injury.  Consequently, he cannot show an objectively serious medical need for purposes of this lawsuit.

In the instant case, the Plaintiff has failed to allege any facts tending to show that these Defendants knew he was suffering from a serious medical condition.  Plaintiff submitted sixteen medical requests.  (<u>See</u>, Medical File.)  All of those requests were responded to promptly (often the same day) and placed in the Plaintiff's medical file.  <u>Id.</u>  Most of the complaints referenced the Plaintiff's anxiety, dissatisfaction with his medication, and a tooth problem.  <u>Id.</u>  None of these complaints constitute a serious medical condition.    Nurse Riley has testified that she has no knowledge of the Plaintiff suffering seizures, and the Plaintiff's Medical File makes no reference whatsoever to any seizures.  (Riley Aff. at ¶ 6; Medical File.)  Though the Plaintiff was tested for kidney stones, there was no evidence to support that diagnosis; nevertheless, out of an abundance of caution, the Plaintiff was provided with an antibiotic and a pain reliever.  (Riley Aff. at ¶ 6.)  In fact, every time the Plaintiff requested Tylenol via a Medical Request Form, he was given two Tylenol.  (Medical File.)  Again, there is no evidence that the Jail staff, or these particular Defendants, knew of any serious medical condition afflicting the Plaintiff.

> **(b)** **The Complaint fails to allege a constitutional violation in that Defendants were not deliberately indifferent to the Plaintiff's serious medical needs.**

These Defendants were not deliberately indifferent to any objectively serious need that could be construed in the Plaintiff's Complaint.  In order to be deliberately indifferent, an official

must both know of a serious risk of harm and disregard it.  Farmer, 511 U.S. at 837.  There is absolutely no evidence, and Plaintiff does not allege, that the Defendants knew of any serious medical condition afflicting the Plaintiff.

Further, Sergeant Moore does not have any kind of medical education, training or experience.  He relies upon the professional judgment of medical professionals who have been retained to provide care to the inmates.  While the Eleventh Circuit has not had an opportunity to visit this issue, the Eighth Circuit has addressed a similar claim.  In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director for failing to provide him with a positive air pressure machine needed to treat his sleep apnea.  302 F.3d at 847.  Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations.  "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions."  302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription."  Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000).  Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision.  Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849.

Assuming, *arguendo*, that the Jail's medical staff in some way did not properly respond to the Plaintiff's medical complaints, Sergeant Moore not been deliberately indifferent.[4]  The Russell

---

[4] Of course, as amply demonstrated above, it is clear that the Jail medical staff did indeed respond to the Plaintiff's medical complaints in a timely manner.

County Jail staff is **required** to rely upon the Jail medical staff. They cannot supplant their untrained opinion for that of medical professionals.

<div style="text-align:center">

(c)    <u>The Complaint fails to allege a constitutional violation in that Defendants were not deliberately indifferent to the Plaintiff's constitutional rights by their use of force.</u>

</div>

The Eleventh Circuit has stated that to establish an excessive force violation a prisoner must prove that his injury was caused by an unnecessary and wanton infliction of pain. In such cases a court must decide whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and cruelly to cause harm. <u>Harris v. Chapman</u>, 97 F.3d 499, 505 (11th Cir. 1996); <u>McBride v. Rivers</u>, No. 5:04-CV-26, 2005 WL 1163192 at *3 (May 16, 2005).

The United States Supreme Court has ruled that "prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve the internal order and discipline and to maintain institutional security." <u>McBride</u>, 2005 WL 1163192 at *4. The Court has further stated that this deference extends to measures taken in response to an actual confrontation with a disorderly inmate. <u>Id.</u> Consequently, a judge should not freely substitute his judgment for that of officials who have made a considered choice. <u>Id.</u> <u>See also</u>, <u>Whitley v. Albers</u>, 106 S.Ct. 1078 (1986).

In the case at bar, the Jail has a policy forbidding the use of excessive force. (Moore Aff. at ¶ 9; Wurst Aff. at ¶ 9; Bussey Aff. at ¶ 8.) However, it is undisputed that occasionally physical force is necessary to ensure the security and safety of the facility. <u>Id.</u> In this case, the minimum reasonable amount of force was used in order to subdue and secure the Plaintiff without risking injury to either the Plaintiff or the Defendants. The Defendants' contact was pursuant to a legitimate security policy of the Jail, and the force used was *de minimus*. Finally, the contact was initiated in response to the Plaintiff's disorderly and defiant conduct.

(d)    **The Defendants did not subject the Plaintiff to excessive force.**

The Plaintiff cannot meet his burden to establish a Constitutional violation for two (2) reasons.  First, the Defendants' actions were done for a proper purpose and not for the purpose of causing harm.  Second, the Plaintiff's injuries were *de minimis*.

(i)    **The Defendants Used Force for a Legitimate Penological Purpose.**

The standard used in analyzing excessive force claims in Jail settings has been described by the United States Supreme Court as follows:  "whether force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320-21 (1984); Bozeman v. Orum, 422 F.3d 125 (11th Cir. 2005).

In Hudson v. McMillian, the United States Supreme Court reasoned:

> [C]orrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmate. . . .  Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

503 U.S. 1, 6 (1992) (citations omitted).  The factors to be considered in evaluating whether the use of force was wanton and unnecessary include: 1) the need for application of force; 2) the relationship between the need and the amount of force used; 3) the threat reasonably perceived by the prison official; 4) any efforts made to temper the severity of a forceful response; and 5) the extent of the injury suffered by the inmate.  Whitley, 475 U.S. at 1085.

"The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense."  Whitley, 475 U.S. at 319.[5]  In evaluating the challenged conduct of Jail officials, a court

---

[5] The Supreme Court of the United States has recognized that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  Graham v. Connor, 490 U.S.

must keep in mind the paramount concerns of maintaining order and discipline in an often

dangerous and unruly environment.  Ort v. White, 813 F.2d 318, 322 (11th Cir. 1987).

> Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. . . .  That deference extends to prison security measures taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline.

Whitley, 475 U.S. at 321-322.  "[T]he courts give great deference to the actions of prison officials in

applying prophylactic or preventive measures intended to reduce the incidence of riots and other

breaches of prison discipline."  Williams v. Burton, 943 F.2d 1572, 1576 (11th Cir. 1991).  "When

the 'ever-present potential for violent confrontation and conflagration,' . . . ripens into *actual* unrest

and conflict, the admonition that 'a prison's internal security is peculiarly a matter normally left to

the discretion of prison administrators,' . . . carries special weight."  Whitley, 475 U.S. at 321

(emphasis in original).  In Whitley, the court held that the "shooting [of an inmate in the leg] was

part and parcel of a good-faith effort to restore prison security . . . [and] did not violate respondent's

Eighth Amendment right to be free from cruel and unusual punishments."  475 U.S. at 319.

    While placed in the context of a Fourth Amendment excessive force claim, courts have

employed standards that are equally applicable to similar claims under the Fourteenth Amendment.

"In analyzing whether excessive force was used, courts must look at the totality of the

circumstances."  Garrett v. Athens-Clarke County, 378 F.3d 1274, 1280 (11th Cir. 2004).  "We

must look at the situation not with hindsight, but with the eye of the objectively reasonable officer

on the scene."  Garrett, 378 F.3d at 1281. Analyzing a use of force claim "requires an evaluation of

the officers' reasonable apprehension to assess their responses to the circumstances confronting

---

386, 396 (1989); see also Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citing same principle in reference to excessive force claim in a prison context).

them, particularly in a rapidly evolving situation." <u>Carr v. Tatangelo</u>, 338 F.3d 1259, 1268 n.17 (11th Cir. 2003).

The instant record demonstrates conclusively the Defendants did not use force maliciously, but for the legitimate purpose of enforcing the policies of the Jail. An analysis of the instant record and the <u>Whitley</u> factors shows that as a matter of law, the Defendants did not use excessive force.

**(ii)      There was a strong need for force to be applied to the Plaintiff.**

The first factor to consider under <u>Whitley</u> is the need for force. 475 U.S. at 1085. Here, there was a strong need for force due to the Plaintiff's attempts to injure himself, his attempt to escape, his attempt to barricade himself inside the property room, his employment of a weapon (the broom handle), and his noncompliance with the Sergeant Moore's reasonable orders.

As the United States Supreme Court has noted, this Court should give great deference to the Defendants:

> Prison administrators are responsible for maintaining internal order and discipline, for ***securing their institutions against unauthorized access or escape***, and for rehabilitating, to the extent that human nature and inadequate resources allow, the inmates placed in their custody. The Herculean obstacles to effective discharge of these duties are too apparent to warrant explication. Suffice it to say that the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree. Most require expertise, comprehensive planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. For all of those reasons, courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform. Judicial recognition of that fact reflects no more than a healthy sense of realism.

<u>Id.</u> at 548 n.30 (quoting <u>Procunier v. Martinez</u>, 416 U.S. 396, 404-05 (1974))(emphasis added).

The Plaintiff's actions, as documented in the record, demonstrate that he was injuring himself, attempting to escape, and was non-compliant with lawful, reasonable requests. Further, the Plaintiff was combative, even wielding a weapon.

The above facts and law lead to the inescapable conclusion that there was a legitimate need for force in restraining Plaintiff. The Plaintiff was attempting to escape and refusing to follow legitimate instructions intended for his own safety and well being, as well as the safety and well being of the other inmates and the Jail staff.

**(iii)    The force used was reasonable in relation to the need for force.**

Defendants' decision to use chemical spray and a collapsible baton on Plaintiff was undeniably reasonable, especially in light of the Plaintiff's attempts to escape and his employment of a weapon in that attempt. Furthermore, the use of such implements on the Plaintiff does not violate the Constitution. Federal appellate courts addressing the issue have authorized the use of force generally to effect inmate obedience. Caldwell v. Moore, 968 F.2d 595, 602 (6th Cir. 1992) (holding that prison officials are entitled to use physical force to compel obedience by inmates); Jolivet v. Cook, 48 F.3d 1232, *1 (10th Cir. 1995) (affirming the district court's granting of correction officers' motion to dismiss where plaintiff alleged that the defendants used a TASER on him after he refused three (3) requests for him to submit to being handcuffed). Even under the more stringent Fourth Amendment standard for analyzing excessive force cases, this and other federal district courts have found no Constitutional violation under similar circumstances. Magee v. City of Daphne, 2006 WL 3791971, *10 (S.D. Ala. 2006) (granting officers Summary Judgment where they used TASERs on an unarmed and intoxicated domestic violence suspect who refused to comply with verbal commands); Devoe v. Rebant, 2006 WL 334297, *6-7 (E.D. Mich. 2006) (relying on Draper and granting Summary Judgment to an officer who used TASER in drive stun mode on resisting **handcuffed** arrestee who was refusing to get in the patrol car).

**(iv)    Defendants reasonably perceived that the situation posed a potentially significant threat.**

As set forth in the immediately preceding sections, the Plaintiff was definitively non-compliant on a regular basis. Despite being ordered to calm down, and most importantly, drop the broom handle, the Plaintiff refused to obey Defendants' orders, but instead rushed at the correctional officers. The chemical spray employed by Sergeant Moore appeared to have no effect, and as a result the Plaintiff managed to escape his cell and make it down the hall to the property room and attempt to barricade himself in. Further, if Sergeant Moore had not used his collapsible baton to effectuate compliance, the Plaintiff could well have used the broom handle he was wielding to injure the corrections officers. The Sixth Circuit has determined that use of pepper spray on a non-violent, non-compliant subject – even a subject that was not under arrest – constitutes a reasonable use of force. Monday v. Oullette, 118 F.3d 1099 (6th Cir. 1997).

"We must avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer at the scene. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day." Smith v. Freland, 954 F.2d 343, 347 (6th Cir. 1992). "The Constitution simply does not require police to gamble with their lives in the face of a serious threat of harm." Elliott v. Leavitt, 99 F.3d 640, 641 (4th Cir. 1996).

**(v)    Defendants tempered the force used.**

The undisputed evidence in the record demonstrates conclusively that Defendants took several steps to temper and mitigate the amount of force they used. At any time, had the Plaintiff chosen to comply, he could have avoided being sprayed or struck altogether. Further, Sergeant Moore's strike with his collapsible baton was to a recognized pressure point – the common peronial nerve located on the outside of the subject's thigh – and he only struck once.

21

**(vi)    Any injury inflicted on the Plaintiff by Defendants was minor.**

There is absolutely no evidence in the record that Sergeant Moore's use of chemical spray, control tactics, or the collapsible baton caused any significant harm to the Plaintiff.  In fact, the Plaintiff's only injury was a significant gash to his head – which he inflicted on himself, as evidenced by the blood on the inside of the Plaintiff's cell door.

Putting all the elements together, the Eleventh Circuit recently affirmed a District Court's Order granting Summary Judgment in favor of two deputies who were accused of excessive force by an inmate.  Butler v. Hutson, 147 Fed.Appx. 62 (11th Cir. August 12, 2005).  In Butler, the plaintiff and another inmate had had a fight in one of the pod areas.  The defendants, deputies, moved the two inmates into the multipurpose room and told them to remain seated in chairs at opposite ends of the room.  The deputies left the room and then returned and found the two inmates arguing and the plaintiff moving toward the other inmate.  One of the deputies then struck the plaintiff, causing him to trip and fall and break his jaw.  The Eleventh Circuit found that because the plaintiff posed a threat to another inmate and disobeyed the deputies order to remain seated, and because the defendants did not have time for any other measures, and because the deputy did not apply any further force once the plaintiff complied with the order to sit down, the deputies' actions did not rise to the level of "malicious and sadistic" conduct for the very purpose of causing harm. Butler v. Hutson, 147 Fed.Appx. at 65.

Just as in Butler, the Plaintiff in this case was violent and noncompliant.  He attempted to escape, attempted to barricade himself inside a room, refused to obey orders, and employed a weapon against the corrections officers.  The plaintiff's injuries in Butler were far more severe than those complained of by the instant Plaintiff.  Finally, Defendants applied only the minimal amount of force required to achieve compliance.  If the actions of the deputies in Butler were not malicious or sadistic, clearly, as a matter of law, neither are the actions of these Defendants.

### (e)    The Plaintiff's Injuries Were *De Minimis*.

The *de minimis* nature of the Plaintiff's alleged injuries also mandates judgment in Defendants' favor as a matter of law.  Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000) (holding that the application of *de minimis* force will not support a claim for excessive force in violation of the Fourth Amendment.)  In Nolin, the defendant officer grabbed the plaintiff from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back, pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and placed the plaintiff in handcuffs.  207 F.3d at 1255.  The plaintiff allegedly suffered bruising to his forehead, chest, and wrists.  Id.  As just discussed, there is no evidence that anything Defendants' did caused the Plaintiff any injury whatsoever.

### (f)    The policies and customs of the Russell County Jail have not caused the Plaintiff's alleged injuries.

The Eleventh Circuit applies a three-prong test that the Plaintiff must satisfy to establish supervisory liability: (1) the supervisor's actions, either in training, promulgating policy, or otherwise, were deliberately indifferent to the Plaintiff's rights; (2) a reasonable person in the supervisor's position would know that his or her actions were deliberately indifferent; and (3) the supervisor's conduct was causally related to the subordinate's constitutional infringement. Greason v. Kemp, 891 F.2d 829, 836-37 (11th Cir. 1990); see also Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).  Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates "on the basis of *respondeat superior* or vicarious liability." Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994) (citation and quotation omitted).  The causal connection may be established where the supervisor's improper "custom or policy ... result[s] in deliberate indifference to constitutional rights."  Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986)).  "[T]he inadequacy of police training may serve as the basis for § 1983 liability *only* where the failure to

23

train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989) (emphasis added). The Complaint fails to allege any of these elements, and there is no evidence to support the allegations even if they were made.

The only way the Plaintiff may state a claim against a supervisory Defendant is in their role as policymakers for the Jail. See Crawford, 906 F.2d at 671. However, neither Defendant is a policymaker for the Jail. Further, the Plaintiff has not made any allegations with respect to training deficiencies in the Jail staff. Id.

Even if any or all of the Defendants are found by the Court to be supervisory officials, an official cannot be held liable just for instituting a facially constitutional policy. See City of Canton v. Harris, 489 U.S. 378, 387 (1989). The policies put in place by these Defendants are constitutionally sound and did not cause the Plaintiff's alleged injuries. It is undisputed that the Jail has a policy against the unlawful use of force. Further, the unlawful use of excessive force would be a contravention of this policy. This policy, too, is constitutionally sound and did not cause the Plaintiff's alleged injuries. Further, the Jail has a policy to provide medical treatment to its inmates, and failure to provide such medical treatment would be a contravention of this policy. In sum, there can be no liability for policies which are constitutional.

### (g) No clearly established law provided these Defendants with "fair warning" that their conduct was unlawful.

Before stripping an official of qualified immunity, clearly established law must provide "fair warning" to the official that his or her conduct was illegal. Willingham, 321 F.3d at 1301. The conduct of these Defendants was in accordance with clearly established law. As the Plaintiff cannot show a constitutional violation of clearly established law, these Defendants are entitled to qualified immunity. See Saucier, 533 U.S. at 201.

24

## IV.    MOTION FOR SUMMARY JUDGMENT

### A.    SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant.  Greason, 891 F.2d at 831.  However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit.  See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000).  "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"  Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[6]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'"  Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

### B.    MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this honorable Court treat this Special Report as a motion for summary judgment and grant unto them the same.

---

[6] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"  Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Respectfully submitted, this 7th day of June, 2007.

        **s/Scott W. Gosnell**
        SCOTT W. GOSNELL – Bar No. GOS002
        Attorney for Defendants
        WEBB & ELEY, P.C.
        7475 Halcyon Pointe Road (36117)
        Post Office Box 240909
        Montgomery, Alabama  36124
        Telephone:  (334) 262-1850
        Fax:  (334) 262-1889
        E-mail:  sgosnell@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 7th day of June, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF and served the following by U.S. Mail:

        Danny Pickard
        AIS 245939
        Russell County Jail
        P.O. Box 640
        Phenix City, Alabama  36868

        **s/Scott W. Gosnell**
        OF COUNSEL

**EXHIBIT A – PART ONE**
**INMATE FILE OF DANNY WAYNE PICKARD**

| Fingerprinted | R84 Completed |
|---|---|
| ☐ Yes ☒ No | ☐ Yes ☐ No |

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

**IDENTIFICATION**

| 1 ORI # | 0 5 7 0 0 0 0 | 2 AGENCY NAME Russell Co. Sheriff's Office | 3 CASE | 4 SFX |
|---|---|---|---|---|

5 LAST, FIRST, MIDDLE NAME
**PICKARD, DANNY, WAYNE**

6 ALIAS AKA

| 7 SEX ☐ M ☒ F | 8 RACE ☒ 1 W ☐ 2 B ☐ 3 A ☐ 4 I | 9 HGT 6'0 | 10 WGT. 185 | 11 EYE BRO | 12 HAIR BLK | 13 SKIN | 14 |
|---|---|---|---|---|---|---|---|

☐ 1 SCARS   ☐ 2 MARKS   ☐ 3 TATTOOS   ☐ 4 AMPUTATIONS

| 15 PLACE OF BIRTH (CITY, COUNTY, STATE) | 15 SSN 2 6 0 - 9 2 - 3 5 1 5 | 17 DATE OF BIRTH 0 5 0 4 5 7 | 18 Age 49 | 19 MISCELLANEOUS ID # |
|---|---|---|---|---|

| 20 SID # | 21 FINGERPRINT CLASS | KEY | MAJOR | PRIMARY | SCDV | SUB-SECONDARY | FINAL | 22 DL # | 23 ST |
|---|---|---|---|---|---|---|---|---|---|
| 24 FBI # | HENRY CLASS / NCIC CLASS | | | | | | | 25 IDENTIFICATION COMMENTS | |

| 26 ☒ RESIDENT ☐ NON—RESIDENT | 27 HOME ADDRESS (STREET, CITY, STATE, ZIP) 50 NORMAN DR., SEALE, AL 36875 | 28 RESIDENCE PHONE ( ) | 29 OCCUPATION (BE SPECIFIC) |
|---|---|---|---|

| 30 EMPLOYER (NAME OF COMPANY/SCHOOL) | 31 BUSINESS ADDRESS ( STREET, CITY, STATE) | 32 BUSINESS PHONE |
|---|---|---|

**ARREST**

| 33 LOCATION OF ARREST (STREET, CITY, STATE, ZIP) RUSSELL CO. JAIL | 34 SECTOR | 35 ARRESTED FOR YOUR JURISDICTION ☒ IN STATE    ☒ YES ☐ NO ☐ OUT STATE AGENCY |
|---|---|---|

| 36 CONDITION OF ARRESTEE | ☐ DRUNK ☒ SOBER ☐ DRINKING ☐ DRUGS | 37 RESIST ARREST? ☐ YES ☒ NO | 38 Injuries? ☐ 2 OFFICER ☒ 1 NONE ☐ 3 ARRESTEE | 39 ARMED? ☐ Y ☒ N | 40 DESCRIPTION OF WEAPON ☐ 1 HANDGUN    ☐ 4 OTHER FIREARM ☐ 2 RIFLE    ☐ 5 OTHER WEAPON ☐ 3 SHOTGUN |
|---|---|---|---|---|---|

| 41 DATE OF ARREST 0 4 2 4 0 7 | 42 TIME OF ARREST 2100 ☐ 1. AM ☐ 2. PM ☒ 3. MIL | 43 DAY OF ARREST S M ☒ W T F S | 44 TYPE ARREST ☒ ON VIEW ☐ CALL ☐ WARRANT | 45 ARRESTED BEFORE? ☒ YES ☐ NO ☐ UNKNOWN |
|---|---|---|---|---|

| 46 CHARGE—1 ☒ FEL ☐ MISD FORGERY 2ND X 4 COUNTS | 47 UCR CODE | 48 CHARGE—2 ☐ FEL ☐ MISD | 49 UCR CODE |
|---|---|---|---|

| 50 STATE CODE/LOCAL ORDINANCE 13A-009-003 | 51 WARRANT # 07 000168.00 | 52 DATE ISSUED 0 4 2 3 0 7 | 53 STATE CODE/LOCAL ORDINANCE | 54 WARRANT # | 55 DATE ISSUED |
|---|---|---|---|---|---|

| 56 CHARGE—3 ☐ FEL ☐ MISD | 57 UCR CODE | 58 CHARGE—4 ☐ FEL ☐ MISD | 59 UCR CODE |
|---|---|---|---|

| 60 STATE CODE/LOCAL ORDINANCE | 61 WARRANT | 62 DATE ISSUED | 63 STATE CODE/LOCAL ORDINANCE | 64 WARRANT # | 65 DATE ISSUED |
|---|---|---|---|---|---|

| 66 ARREST DISPOSITION ☒ HELD ☐ BAIL ☐ RELEASED | ☐ TOT-LE ☐ OTHER | 67 IF OUT ON RELEASE WHAT TYPE? | 68 ARRESTED WITH (1) ACCOMPLICE (FULL NAME) |
|---|---|---|---|
| | | | 69 ARRESTED WITH (2) ACCOMPLICE (FULL NAME) |

**VEHICLE**

| 70 VYR | 71 VMA | 72 VMO | 73 VST | 74 VCO TOP / BOTTOM | 75 TAG # | 76 LIS | 77 LIY |
|---|---|---|---|---|---|---|---|
| 71 VIN | | | | | | | |

| 81 OTHER EVIDENCE SEIZED/PROPERTY SEIZED | 78 IMPOUNDED? ☐ YES ☐ NO | 80 STORAGE LOCATION/IMPOUND # |
|---|---|---|

**JUVENILE**

| 82 JUVENILE DISPOSITION: ☐ HANDLED AND RELEASED ☐ REF. TO JUVENILE COURT | ☐ REF TO WELFARE AGENCY ☐ REF TO OTHER POLICE AGENCY | ☐ REF. TO ADULT COURT | ☐ CONTINUED IN NARRATIVE |
|---|---|---|---|
| 84 PARENT OR GUARDIAN (LAST FIRST, MIDDLE NAME) | 85 ADDRESS (STREET, CITY, STATE, ZIP) | | 83 RELEASED TO |
| 87 PARENTS EMPLOYER | 88 OCCUPATION | 89 ADDRESS (STREET, CITY, STATE, ZIP) | 83 PHONE ( ) |
| | | | 90 PHONE ( ) |

**RELEASE**

| 91 DATE AND TIME OF RELEASE 0 4 2 4 0 7 2100 ☐ 1. AM ☒ 3. MIL ☐ 1. PM | 92 RELEASING OFFICER NAME Timothy Watford | 93 AGENCY/DIVISION Russell Co. Sheriff's Office | 94 ID # 5759 |
|---|---|---|---|

| 95 RELEASED TO Russell Co. Jail | 96 AGENCY/DIVISION Russell Co. Sheriff's Office | 97 AGENCY ADDRESS 305 Prentiss Dr., Phenix City, AL 36869 |
|---|---|---|

| 98 PERSONAL PROPERTY RELEASED TO ARRESTEE ☐ YES ☐ NO ☐ PARTIAL | 99 PROPERTY NOT RELEASED/HELD AT: | 100 PROPERTY |
|---|---|---|

No injuries at time of arrest

| 102 SIGNATURE OF RECEIVING OFFICER | 103 SIGNATURE OF RELEASING OFFICER | LOCAL USE |
|---|---|---|
| | | STATE USE |

| MULTIPLE CASES CLOSED | 104 CASE # | 105 SFX | 106 CASE # | 107 SFX | 108 CASE # | 109 SFX | 110 ADDITIONAL CASES CLOSED ☐ Y ☐ N |
|---|---|---|---|---|---|---|---|

| 111 ARRESTING OFFICER (LAST, FIRST, M) Watford, Timothy, A. | 112 ID # 5759 | 113 ARRESTING OFFICER (LAST, FIRST, M) | 114 ID # | 115 SUPERVISOR ID # | 116 WATCH CMDR ID # |
|---|---|---|---|---|---|

**TYPE OR PRINT IN BLACK INK ONLY**

ACJIC—34 REV. 10-90

ACR380 Case 3:07-cv-00270-MHT-WC Document 9-2 Filed 06/07/2007 Page 3 of 50
ALABAMA JUDICIAL DATA CENTER
GRAND JURY OF RUSSELL COUNTY
WARRANT OF ARREST
GJ 2007 000168.00
TERM #: APR07-275

TO ANY LAW ENFORCEMENT OFFICER OF THE STATE OF ALABAMA:

AN INDICTMENT HAS BEEN RETURNED BY THE GRAND JURY OF RUSSELL COUNTY

AGAINST        PICKARD DANNY WAYNE
               50 NORMAN DRIVE
               SEALE            AL 36875-0000

CHARGING THE OFFENSE OF:

| | | | |
|---|---|---|---|
| FORGERY 2ND | 13A-009-003 | CNTS: | 1 |
| FORGERY 2ND | 13A-009-003 | CNTS: | 1 |
| FORGERY 2ND | 13A-009-003 | CNTS: | 1 |

*Total Counts*
*For 2nd*
*X 4*

YOU ARE THEREFORE ORDERED TO ARREST THE PERSON NAMED ABOVE AND BRING THAT
PERSON BEFORE A JUDGE OR MAGISTRATE OF THIS COURT TO ANSWER THE CHARGES
AGAINST THAT PERSON AND HAVE WITH YOU THEN AND THERE THE WARRANT OF ARREST
WITH YOUR RETURN THEREON. IF A JUDGE OF MAGISTRATE OF THIS COURT IS
UNAVAILABLE, OR IF THE ARREST IS MADE IN ANOTHER COUNTY, YOU SHALL TAKE
THE ACCUSED PERSON BEFORE THE NEAREST OR MOST ACCESSIBLE JUDGE OF
MAGISTRATE IN THE COUNTY OF ARREST.

BOND SET AT:        $8,000.00

DATE ISSUED: 04/23/2007                    BY  *JBS*
                              CLERK

EXECUTED THIS  *24th*  DAY OF  *April*  , *2007* , BY
ARRESTING THE WITHIN NAMED DEFENDANT  *Danny W. Pickard*

                    *T. A. West G.*
LAW ENFORCEMENT OFFICER
BY:  *A. A. W.*

DEFENDANT'S FEATURES:

HT: 6'00"  HAIR: BLK   DOB: 05/04/1957
WT: 185  SEX: M   EYE: BRO  RACE: W
SSN: 260923515

ARRAIGNMENT DATE: MAY 3, 2007, AT 10:00 A.M. (E.S.T.)
REPORT TO COURTROOM 1 SECOND FLOOR, RUSSELL COUNTY COURTHOUSE.
YOUR RETAINED ATTORNEY MUST APPEAR WITH YOU FOR ARRAIGNMENT.
IF YOU HAVE ANY QUESTIONS, YOU SHOULD CONTACT YOUR ATTORNEY.

04/23/2007 JOS

*Charges Added*

*Bond Increased*

# BOOKING CHECKLIST

INMATE NAME: _Danny W. Pickard_    DATE: _1-18-07_

### The following are enclosed in inmate file:

1) Copy of Arrest Report(s)
2) Copy of Warrant(s) if possible
3) Property Inventory Slip
4) Fingerprint <u>Card</u>
5) Copy of Waiver (if applicable)
6) Copy of Medical Release (if applicable)

### The following computer fields have been completed:

1) Names Table
2) Xname
3) Medical History
4) Arrest
5) Offense (Bond or Fine)
6) Housing

**Comments:**    AKA  , Danny Leman Pickard , was placed as
Danny Wayne Stephens Hodin. I
-need photo before release

0701182009

Booking Officer's Signature _Russell_

# ALABAMA UNIFORM ARREST REPORT

| Fingerprinted | R84 Comleted |
|---|---|
| 2 No | 2 No |
| Yes | Yes |

**OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION**

| 1 ORI # | 2 AGENCY NAME | 3 CASE # | 4 SFX |
|---|---|---|---|
| 0570000 | Russell County Sheriff's Department | | |

## IDENTIFICATION

**5 LAST, FIRST, MIDDLE NAME**
Pickard, Danny Wayne

**6 ALIAS AKA**

| 7 SEX | 8 RACE | 9 HGT. | 10 WGT. | 11 EYE | 12 HAIR | 13 SKIN | 14 |
|---|---|---|---|---|---|---|---|
| M | W | 6'00" | 185 | BRN | BLK | FAIR | |

| 1 SCARS | 2 MARKS | 3 TATOOS | 4 AMPUTATIONS |
|---|---|---|---|

| 15 PLACE OF BIRTH (CITY, COUNTY, STATE) | 16 SSN | 17 DATE OF BIRTH | 18 AGE | 19 MISCELLANEOUS ID# |
|---|---|---|---|---|
| Muleshoe, Texas | 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 | 05/04/57 | 49 | |

| 20 SID # | 21 FINGERPRINT CLASS | KEY | MAJOR | PRIMARY | SCDV | SUB-SECONDARY | FINAL | 22 DL # | 23 ST |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | 028310898 | GA |

| 24 FBI # | HENRY NCIC | | 25 IDENTIFICATION COMMENTS |
|---|---|---|---|

| 26  1 RESIDENT  2 NON-RESIDENT | 27 HOME ADDRESS (STREET, CITY, STATE, ZIP) 50 Norman Dr., Seale, Alabama 36856 | 28 RESIDENCE PHONE 706-289-6439 Cell | 29 OCCUPATION (BE SPECIFIC) Unemployed |
|---|---|---|---|

| 30 EMPLOYER (NAME OF COMPANY/SCHOOL) none | 31 BUSINESS ADDRESS (STREET, CITY, STATE, ZIP) none | 32 BUSINESS PHONE |
|---|---|---|

## ARREST

| 33 LOCATION OF ARREST (STREET, CITY, STATE, ZIP) 4401 River Chase Drive, Phenix City, Al 36867 | 34 SECTOR # 0000002 | 35 ARRESTED FOR YOUR JURISDICTION?  YES  NO  IN STATE  OUT OF STATE  AGENCY |
|---|---|---|

| 36 CONDITION OF ARRESTEE: 1 DRUNK  2 DRINKING  3 SOBER  4 DRUGS | 37 RESIST ARREST? 1 YES  2 NO | 38 INJURIES? NONE  2 OFFICER  3 ARRESTEE | 39 ARMED? 1  2 N | 40 DESCRIPTION OF WEAPON 1 HANDGUN  2 RIFLE  3 SHOTGUN  4 OTHER FIREARM  5 OTHER WEAPON |
|---|---|---|---|---|

| 41 DATE OF ARREST 01/18/06 | 42 TIME OF ARREST 4:00 p.m. | 43 DAY OF ARREST S M T W T F S | 44 TYPE ARREST 1 ON VIEW  2 CALL | 45 ARRESTED BEFORE? 1 YES  2 NO  3 UNKNOWN |
|---|---|---|---|---|

| 46 CHARGE-1  1 FEL  2 MISD Probation Violation, Okaloosa, Florida | 47 UCR CODE | 48 CHARGE-2  1 FEL  2 MISD | 49 UCR CODE |
|---|---|---|---|

| 50 STATE CODE/LOCAL ORD. | 51 WARRANT # | 52 DATE ISSUED | 53 STATE CODE/LOCAL ORD. | 54 WARRANT # | 55 DATE ISSUED |
|---|---|---|---|---|---|

| 56 CHARGE-3  1 FEL  2 MISD | 57 UCR CODE | 58 CHARGE-4  1 FEL  2 MISD | 59 UCR CODE |
|---|---|---|---|

| 60 STATE CODE/LOCAL ORD. | 61 WARRANT # | 62 DATE ISSUED | 63 STATE CODE/LOCAL ORD. | 64 WARRANT # | 65 DATE ISSUED |
|---|---|---|---|---|---|

| 66 ARREST DISPOSITION 1 HELD  2 BAIL  3 RELEASED  4 TOT-LE  5 OTHER | 67 IF OUT ON RELEASE WHAT TYPE? | 68 ARRESTED WITH (1) ACCOMPLICE (FULL NAME) 69 ARRESTED WITH (2) ACCOMPLICE (FULL NAME) |
|---|---|---|

## VEHICLE

| 70 VYR | 71 VMA | 72 VMO | 73 VST | 74 VCO | TOP BOTTOM | 75 TAG # | 76 LIS | 77 LIY |
|---|---|---|---|---|---|---|---|---|

| 78 VIN | 79 IMPOUNDED? 1 YES 2 NO | 80 STORAGE LOCATION/IMPOUND # |
|---|---|---|

| 81 OTHER EVIDENCE SEIZED/PROPERTY SEIZED | □ CONTINUED IN NARRATIVE |
|---|---|

## JUVENILE

| 82 JUVENILE DISPOSITION  1 HANDLED AND RELEASED  2 REF. TO JUVENILE COURT  3 REF. TO WELFARE AGENCY  4 REF. TO OTHER POLICE AGENCY  5 REF. TO ADULT COURT | 63 RELEASED TO |
|---|---|

| 84 PARENT OR GUARDIAN (LAST, FIRST, MIDDLE NAME) | 85 ADDRESS (STREET, CITY, STATE, ZIP) | 86 PHONE |
|---|---|---|

| 87 PARENTS EMPLOYER | 88 OCCUPATION | 89 ADDRESS (STREET, CITY, STATE, ZIP) | 90 PHONE |
|---|---|---|---|

## RELEASE

| 91 DATE AND TIME OF RELEASE  :  MT | 92 RELEASING OFFICER NAME | 93 AGENCY/DIVISION | 94 ID# |
|---|---|---|---|

| 95 RELEASED TO: | 96 AGENCY/DIVISION | 97 AGENCY ADDRESS |
|---|---|---|

| 98 PERSONAL PROPERTY RELEASED TO ARRESTEE 1 YES  2 NO  3 PARTIAL | 99 PROPERTY NOT RELEASED/HELD AT: | 100 PROPERTY # |
|---|---|---|

| 101 REMARKS (NOTE ANY INJURIES AT TIME OF RELEASE) | LOCAL USE |
|---|---|
| | STATE USE |

| 102 SIGNATURE OF RECEIVING OFFICER Russel 1-18-37  2227 | 103 SIGNATURE OF RELEASING OFFICER |
|---|---|

| MULTIPLE CASES CLOSED | 104 CASE # | 105 | 106 CASE # | 107 SFX | 108 CASE # | 109 SFX | 110 ADDITIONAL CASES CLOSED Y  N |
|---|---|---|---|---|---|---|---|

| 111 ARRESTING OFFICER (LAST, FIRST, M.) King, Stanley | 112 ID# 5721 | 113 ARRESTING OFFICER (LAST, FIRST, M.) | 114 ID# | 115 SUPERVISOR ID# | 116 WATCH CMDR. ID# |
|---|---|---|---|---|---|

**TYPE OR PRINT IN BLACK INK ONLY**          ACJIC-34 REV. 10-90

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

| ADDITIONAL ARREST NARRATIVE CONTINUED | 117 DATE AND TIME OF ARREST 01/18/07 | 1600    MT | 118 CASE # | 119 SFX |
|---|---|---|---|---|

120 ADDITIONAL ARREST INFORMATION

The defendant was arrested for Probation Violation (Fraud impersonating Contractor During State of Emergency) from the State of Florida and the County of Okaloosa. The defendant was detained and transported from the Summit Hospital after he was released from the establishment to the Russell County Jail without incident and turned over to booking for processing.

NARRATIVE

NARRATIVE

NARRATIVE

☐ CONTINUE ON ADDITIONAL SUPPLEMENT

**TYPE OR PRINT IN BLACK INK ONLY**

| 1 Yes | | 1 Yes | |
|---|---|---|---|
| ✓ | No | ✓ | No |

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

| 1 ORI # | 2 AGENCY NAME | | 3 CASE # | 4 SFX |
|---|---|---|---|---|
| 0570000 | Russell County Sheriff's Department | | SL0700289 | |

**IDENTIFICATION**

| 5 LAST, FIRST, MIDDLE NAME | | | | | | | 6 ALIAS AKA | |
|---|---|---|---|---|---|---|---|---|
| Pickard, Danny Wayne | | | | | | | | |

| 7 SEX | 8 RACE | 9 HGT. | 11 EYE | 12 HAIR | 13 SKIN | 14 | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| M | W | 6'02" | 185 | blue | brn | fair | 1 SCARS | 2 MARKS | 3 TATOOS | 4 AMPUTATIONS |

(11 EYE = blue; 10 WGT. = 185)

| 15 PLACE OF BIRTH (CITY, COUNTY, STATE) | 16 SSN | 17 DATE OF BIRTH | 18 AGE | 19 MISCELLANEOUS ID# |
|---|---|---|---|---|
| Muleshoe, Texas | 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 | 05/04/57 | 49 | |

| 20 SID # | 21 FINGERPRINT CLASS | KEY | MAJOR | PRIMARY | SCDV | SUB-SECONDARY | FINAL | 22 DL # | 23 ST |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | 028310898 | GA |

| 24 FBI # | HENRY NCIC | 25 IDENTIFICATION COMMENTS |
|---|---|---|
| | | |

| 26   1 RESIDENT   2 NON-RESIDENT | 27 HOME ADDRESS (STREET, CITY, STATE, ZIP) | 28 RESIDENCE PHONE | 29 OCCUPATION (BE SPECIFIC) |
|---|---|---|---|
| | 50 Norman Dr., Seale, Alabama 36856 | 706-289-6439 | Unemployed |

| 30 EMPLOYER (NAME OF COMPANY/SCHOOL) | 31 BUSINESS ADDRESS (STREET, CITY, STATE, ZIP) | 32 BUSINESS PHONE |
|---|---|---|
| none | none | |

**ARREST**

| 33 LOCATION OF ARREST (STREET, CITY, STATE, ZIP) | 34 SECTOR # | 35 ARRESTED FOR YOUR JURISDICTION? YES ✓ NO |
|---|---|---|
| 307 Prentiss Dr., Phenix City, Alabamaa | 00002 | IN STATE / OUT OF STATE   AGENCY |

| 36 CONDITION OF ARRESTEE:   1 DRUNK   2 DRINKING   3 SOBER   4 DRUGS | 37 RESIST ARREST?   1 YES   2 NO | 38 INJURIES?   1 NONE | 39 ARMED?   1 Y   2 N | 40 DESCRIPTION OF WEAPON   1 HANDGUN   2 RIFLE   3 SHOTGUN   4 OTHER FIREARM   5 OTHER WEAPON |
|---|---|---|---|---|

(36 CONDITION = 3 SOBER; 37 RESIST = 2 NO; 38 INJURIES = 1 NONE; 39 ARMED = 2 N)

| 41 DATE OF ARREST | 42 TIME OF ARREST | 43 DAY OF ARREST | 44 TYPE ARREST | 45 ARRESTED BEFORE? |
|---|---|---|---|---|
| 01/23/07 | 1642 hours | S M T W T F S | 1 ON VIEW   2 CALL   3 WARR | 1 YES   2 NO   3 UNKNOWN |

(44 TYPE ARREST = 1 ON VIEW; 45 ARRESTED BEFORE = 1 YES)

| 46 CHARGE-1   1 FEL   2 MISD | 47 UCR CODE | 48 CHARGE-2   1 FEL   2 MISD | 49 UCR CODE |
|---|---|---|---|
| Forgery 2nd | | Forgery 2nd | |

| 50 STATE CODE/LOCAL ORD. | 51 WARRANT # | 52 DATE ISSUED | 53 STATE CODE/LOCAL ORD. | 54 WARRANT # | 55 DATE ISSUED |
|---|---|---|---|---|---|
| 13A-009-003 | 2007 000240.00 | 01/23/07 | 13A-009-003 | 2007 000241.0 | 01/23/07 |

| 56 CHARGE-3   1 FEL   2 MISD | 57 UCR CODE | 58 CHARGE-4   1 FEL   2 MISD | 59 UCR CODE |
|---|---|---|---|
| Forgery 2nd | | Forgery 2nd | |

| 60 STATE CODE/LOCAL ORD. | 61 WARRANT # | 62 DATE ISSUED | 63 STATE CODE/LOCAL ORD. | 64 WARRANT # | 65 DATE ISSUED |
|---|---|---|---|---|---|
| 13A-009-003 | 2007 000242.00 | 01/23/07 | 13A-009-003 | 2007 000243.0 | |

| 66 ARREST DISPOSITION   1 HELD   4 TOT-LE   2 BAIL   5 OTHER   3 RELEASED | 67 IF OUT ON RELEASE WHAT TYPE? | 68 ARRESTED WITH (1) ACCOMPLICE (FULL NAME) |
|---|---|---|
| | | 69 ARRESTED WITH (2) ACCOMPLICE (FULL NAME) |

**VEHICLE**

| 70 VYR | 71 VMA | 72 VMO | 73 VST | 74 VCO | TOP / BOTTOM | 75 TAG # | 76 LIS | 77 LIY |
|---|---|---|---|---|---|---|---|---|

| 78 VIN | | 79 IMPOUNDED?   1 YES 2 NO | 80 STORAGE LOCATION/IMPOUND # |
|---|---|---|---|

| 81 OTHER EVIDENCE SEIZED/PROPERTY SEIZED | ☐ CONTINUED IN NARRATIVE |
|---|---|

**JUVENILE**

| 82 JUVENILE DISPOSITION:   1 HANDLED AND RELEASED   2 REF. TO JUVENILE COURT   3 REF. TO WELFARE AGENCY   4 REF. TO OTHER POLICE AGENCY   5 REF. TO ADULT COURT | 83 RELEASED TO |
|---|---|

| 84 PARENT OR GUARDIAN (LAST, FIRST, MIDDLE NAME) | 85 ADDRESS (STREET, CITY, STATE, ZIP) | 86 PHONE |
|---|---|---|

| 87 PARENTS EMPLOYER | 88 OCCUPATION | 89 ADDRESS (STREET, CITY, STATE, ZIP) | 90 PHONE |
|---|---|---|---|

**RELEASE**

| 91 DATE AND TIME OF RELEASE | : MT | 92 RELEASING OFFICER NAME | 93 AGENCY/DIVISION | 94 ID# |
|---|---|---|---|---|

| 95 RELEASED TO: | 96 AGENCY/DIVISION | 97 AGENCY ADDRESS |
|---|---|---|

| 98 PERSONAL PROPERTY RELEASED TO ARRESTEE   1 YES   2 NO   3 PARTIAL | 99 PROPERTY NOT RELEASED/HELD AT: | 100 PROPERTY # |
|---|---|---|

| 101 REMARKS (NOTE ANY INJURIES AT TIME OF RELEASE) | |
|---|---|
| | LOCAL USE |

| 102 SIGNATURE OF RECEIVING OFFICER | 103 SIGNATURE OF RELEASING OFFICER | STATE USE |
|---|---|---|
| S. Verden 17:09 1-23-07 | | |

| MULTIPLE CASES CLOSED | 104 CASE # | 105 | 106 CASE # | 107 SFX | 108 CASE # | 109 SFX | 110 ADDITIONAL CASES CLOSED NARR: Y  N |
|---|---|---|---|---|---|---|---|

| 111 ARRESTING OFFICER (LAST, FIRST, M.) | 112 ID# | 113 ARRESTING OFFICER (LAST, FIRST, M.) | 114 ID# | 115 SUPERVISOR ID# | 116 WATCH CMDR. ID# |
|---|---|---|---|---|---|
| King, Stanley | 572? | | | | |

TYPE OR PRINT IN BLACK INK ONLY          ACJIC-34 REV. 10-90

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

| ADDITIONAL ARREST NARRATIVE CONTINUED | 117 DATE AND TIME OF ARREST 01/23/07 | 1642 | MT | 118 CASE # SL0700289 | 119 SFX |
|---|---|---|---|---|---|

120 ADDITIONAL ARREST INFORMATION

The listed defendant was arrested on six (6) related charges of forgery in the second degree.

Bond set at: $3,500.00 on each charge.

NARRATIVE

NARRATIVE

NARRATIVE

☐ CONTINUE ON ADDITIONAL SUPPLEMENT

**TYPE OR PRINT IN BLACK INK ONLY**

ALABAMA JUDICIAL INFORMATION SYSTEM

* * * IN THE DISTRICT COURT OF RUSSELL COUNTY * * *

AGENCY NUMBER:                                WARRANT NUMBER: WR 2007 000242.00
                                              OTHER CASE NBR:              .

C O M P L A I N T

BEFORE ME THE UNDERSIGNED JUDGE/CLERK/MAGISTRATE OF THE DISTRICT  COURT OF
RUSSELL COUNTY, ALABAMA, PERSONALLY APPEARED   JUDY FLOWERS
WHO BEING DULY SWORN DEPOSES AND SAYS THAT HE/SHE HAS PROBABLE CAUSE FOR
BELIEVING, AND DOES BELIEVE THAT    DANNY WAYNE PICKARD            DEFENDANT,
WHOSE NAME IS OTHERWISE UNKNOWN TO THE COMPLAINANT, DID WITHIN THE ABOVE
NAMED COUNTY AND

DID ON OR ABOUT JANUARY 5, 2007, WITH INTENT TO DEFRAUD,   FALSELY MAKE,
COMPLETE OR ALTER A WRITTEN INSTRUMENT, IN SUBSTANCE AS FOLLOWS: CHECK
NUMBER 145 DRAWN ON THE ACCOUNT OF JERRY L STARLING AT CB&T BANK OF
EAST ALABAMA, MADE PAYALE TO DANNY PICKARD IN THE AMOUNT OF $870.00,
AND SIGNED BY JERRY L STARLING, WHICH IS, PURPORTS TO BE, IS CALCULATED
TO BECOME, OR REPRESENTS, IF COMPLETED, A GENIUNE INSTRUMENT,
IN VIOLATION OF 13A-009-003                   OF THE CODE OF ALABAMA,
AGAINST THE PEACE AND DIGNITY OF THE STATE OF ALABAMA.

_Judy Flowers  Security Officer_
COMPLAINANT'S SIGNATURE

**ORIGINAL**

SWORN TO AND SUBSCRIBED BEFORE ME THIS THE 23 DAY OF JANUARY, 2007.

_Jennie Powell_
JUDGE/CLERK/MAGISTRATE OF DISTRICT  COURT

CHARGES: FORGERY 2ND        13A-009-003        F  FELONY

WITNESS FOR THE STATE

JUDY FLOWERS/CB&T BANK/910 13TH STREET/PHENIX CITY/36867

INV STANLEY KING/R.C.S.O./PHENIX CITY/36867

OPERATOR: DEB    DATE: 01/23/2007

STATE OF ALABAMA                    RUSSELL COUNTY

                                                              DISTRICT COURT

AGENCY NUMBER:

                         WARRANT NUMBER: WR 2007 000242.00
                         OTHER CASE NBR:

TO ANY LAWFUL OFFICER OF THE STATE OF ALABAMA:

YOU ARE HEREBY COMMANDED TO ARREST    DANNY WAYNE PICKARD    AND BRING
HIM/HER BEFORE THE DISTRICT   COURT OF RUSSELL COUNTY TO ANSWER THE STATE
ON A CHARGE(S) OF:
            FORGERY 2ND   CLASS: C  TYPE: F  COUNTS: 001
AND HAVE YOU THEN AND THERE THIS WRIT WITH YOUR RETURN  THEREON.

YOU WILL RECEIVE UNTO YOUR CUSTODY AND DETAIN HIM/HER UNTIL THE
_____ DAY OF _____ _____, OR UNTIL LEGALLY DISCHARGED.

DATED THIS 23 DAY OF JANUARY, 2007.

BOND SET AT: (1)      $3,500.00  BOND TYPE:
             (2) _____
             (3) _____

KATHY COULTER
CLERK OF CIRCUIT COURT

---

CHARGES: FORGERY 2ND          13A-009-003              F  FELONY

---

NAME: DANNY WAYNE PICKARD               ALIAS:
ADDRESS: 50 NORMAN DRIVE                 ALIAS:
ADDRESS:
CITY: SEALE                STATE: AL      ZIP: 36875 0000
                                          PHONE: 000 000 0000 EXT: 000

EMPLOYMENT:
DOB: 05/04/1957    RACE: W    SEX: M    HAIR: BLK
EYE: BRO  HEIGHT: 6'00"   WEIGHT: 185
SID: 000000000  SSN: 260923515  DL NUM:

---

                        E X E C U T I O N

        EXECUTED THE WITHIN WARRANT BY ARRESTING THE DEFENDANT AND

        (  )  PLACING DEFENDANT IN THE RUSSELL COUNTY JAIL

        (  )  RELEASING DEFENDANT ON APPEARANCE BOND

_____

_____

THIS _____ DAY OF _____ _____

                         _____
                         SHERIFF

                         _____
                         BY

---

COMPLAINANT:  JUDY FLOWERS
              CB&T BANK
              910 13TH STREET
              PHENIX CITY  AL  36867

OPERATOR: DEB        DATE: 01/23/2007

ALABAMA JUDICIAL INFORMATION SYSTEM

* * * IN THE DISTRICT COURT OF RUSSELL COUNTY * * *

AGENCY NUMBER:                          WARRANT NUMBER: WR 2007 000241.00
                                        OTHER CASE NBR:

C O M P L A I N T

BEFORE ME THE UNDERSIGNED JUDGE/CLERK/MAGISTRATE OF THE DISTRICT  COURT OF
RUSSELL COUNTY, ALABAMA, PERSONALLY APPEARED    JUDY FLOWERS
WHO BEING DULY SWORN DEPOSES AND SAYS THAT HE/SHE HAS PROBABLE CAUSE FOR
BELIEVING, AND DOES BELIEVE THAT       DANNY WAYNE PICKARD        DEFENDANT,
WHOSE NAME IS OTHERWISE UNKNOWN TO THE COMPLAINANT, DID WITHIN THE ABOVE
NAMED COUNTY AND

DID ON OR ABOUT JANUARY 2, 2007, WITH INTENT TO DEFRAUD,    FALSELY MAKE,
COMPLETE OR ALTER A WRITTEN INSTRUMENT, IN SUBSTANCE AS FOLLOWS: CHECK
NUMBER 141 DRAWN ON THE ACCOUNT OF JERRY L STARLING AT CB&T BANK OF
EAST ALABAMA, MADE PAYALE TO DANNY PICKARD IN THE AMOUNT OF $900.00,
AND SIGNED BY JERRY L STARLING, WHICH IS, PURPORTS TO BE, IS CALCULATED
TO BECOME, OR REPRESENTS, IF COMPLETED, A GENIUNE INSTRUMENT,
IN VIOLATION OF 13A-009-003                   OF THE CODE OF ALABAMA,
AGAINST THE PEACE AND DIGNITY OF THE STATE OF ALABAMA.

COMPLAINANT'S SIGNATURE

**ORIGINAL**

SWORN TO AND SUBSCRIBED BEFORE ME THIS THE 23 DAY OF JANUARY, 2007.

JUDGE/CLERK/MAGISTRATE OF DISTRICT  COURT

CHARGES: FORGERY 2ND        13A-009-003        F  FELONY

WITNESS FOR THE STATE

JUDY FLOWERS/CB&T BANK/910 13TH STREET/PHENIX CITY/36867

INV STANLEY KING/R.C.S.O./PHENIX CITY/36867

OPERATOR: DEB      DATE: 01/23/2007

STATE OF ALABAMA      RUSSELL COUNTY      DISTRICT COURT

AGENCY NUMBER:      WARRANT NUMBER: WR 2007 000241.00
OTHER CASE NBR:      .

TO ANY LAWFUL OFFICER OF THE STATE OF ALABAMA:

YOU ARE HEREBY COMMANDED TO ARREST      DANNY WAYNE PICKARD    AND BRING HIM/HER BEFORE THE DISTRICT COURT OF RUSSELL COUNTY TO ANSWER THE STATE ON A CHARGE(S) OF:
     FORGERY 2ND    CLASS: C   TYPE: F   COUNTS: 001
AND HAVE YOU THEN AND THERE THIS WRIT WITH YOUR RETURN THEREON.

YOU WILL RECEIVE UNTO YOUR CUSTODY AND DETAIN HIM/HER UNTIL THE
_____ DAY OF _____ _____, OR UNTIL LEGALLY DISCHARGED.

DATED THIS 23 DAY OF JANUARY, 2007.

BOND SET AT: (1)     $3,500.00   BOND TYPE:
         (2) _____
         (3) _____

KATHY COULTER
CLERK OF CIRCUIT COURT

CHARGES: FORGERY 2ND      13A-009-003      F   FELONY

NAME: DANNY WAYNE PICKARD      ALIAS:
ADDRESS: 50 NORMAN DRIVE      ALIAS:
ADDRESS:
CITY: SEALE      STATE: AL      ZIP: 36875 0000
     PHONE: 000 000 0000 EXT: 000

EMPLOYMENT:
DOB: 05/04/1957    RACE: W    SEX: M    HAIR: BLK
EYE: BRO   HEIGHT: 6'00"   WEIGHT: 185
SID: 000000000   SSN: 260923515   DL NUM:

E X E C U T I O N

EXECUTED THE WITHIN WARRANT BY ARRESTING THE DEFENDANT AND

( ) PLACING DEFENDANT IN THE RUSSELL COUNTY JAIL

( ) RELEASING DEFENDANT ON APPEARANCE BOND

_____

_____

THIS _____ DAY OF _____ _____

              SHERIFF _____

              BY _____

COMPLAINANT:   JUDY FLOWERS
           CB&T BANK
           910 13TH STREET
           PHENIX CITY AL   36867

OPERATOR: DEB      DATE: 01/23/2007

ALABAMA JUDICIAL INFORMATION SYSTEM

\* \* \* IN THE DISTRICT COURT OF RUSSELL COUNTY \* \* \*

AGENCY NUMBER:

WARRANT NUMBER: WR 2007 000240.00
OTHER CASE NBR:

C O M P L A I N T

BEFORE ME THE UNDERSIGNED JUDGE/CLERK/MAGISTRATE OF THE DISTRICT COURT OF RUSSELL COUNTY, ALABAMA, PERSONALLY APPEARED   JUDY FLOWERS WHO BEING DULY SWORN DEPOSES AND SAYS THAT HE/SHE HAS PROBABLE CAUSE FOR BELIEVING, AND DOES BELIEVE THAT    DANNY WAYNE PICKARD            DEFENDANT, WHOSE NAME IS OTHERWISE UNKNOWN TO THE COMPLAINANT, DID WITHIN THE ABOVE NAMED COUNTY AND

DID ON OR ABOUT DECEMBER 18, 2006, WITH INTENT TO DEFRAUD,  FALSELY MAKE, COMPLETE OR ALTER A WRITTEN INSTRUMENT, IN SUBSTANCE AS FOLLOWS: CHECK NUMBER 110 DRAWN ON THE ACCOUNT OF JERRY L STARLING AT CB&T BANK OF EAST ALABAMA, MADE PAYALE TO DANNY PICKARD IN THE AMOUNT OF $400.00, AND SIGNED BY JERRY L STARLING, WHICH IS, PURPORTS TO BE, IS CALCULATED TO BECOME, OR REPRESENTS, IF COMPLETED, A GENIUNE INSTRUMENT, IN VIOLATION OF 13A-009-003                 OF THE CODE OF ALABAMA, AGAINST THE PEACE AND DIGNITY OF THE STATE OF ALABAMA.

COMPLAINANT'S SIGNATURE

**ORIGINAL**

SWORN TO AND SUBSCRIBED BEFORE ME THIS THE 23 DAY OF JANUARY, 2007.

JUDGE/CLERK/MAGISTRATE OF DISTRICT COURT

CHARGES: FORGERY 2ND          13A-009-003        F  FELONY

WITNESS FOR THE STATE

JUDY FLOWERS/CB&T BANK/910 13TH STREET/PHENIX CITY/36867

INV STANLEY KING/R.C.S.O./PHENIX CITY/36867

OPERATOR: DEB    DATE: 01/23/2007

| STATE OF ALABAMA | RUSSELL COUNTY | DISTRICT COURT |

AGENCY NUMBER:                    WARRANT NUMBER: WR 2007 000240.00
                                  OTHER CASE NBR:

TO ANY LAWFUL OFFICER OF THE STATE OF ALABAMA:

YOU ARE HEREBY COMMANDED TO ARREST    DANNY WAYNE PICKARD    AND BRING
HIM/HER BEFORE THE DISTRICT   COURT OF RUSSELL COUNTY TO ANSWER THE STATE
ON A CHARGE(S) OF:
            FORGERY 2ND   CLASS: C  TYPE: F  COUNTS: 001
AND HAVE YOU THEN AND THERE THIS WRIT WITH YOUR RETURN   THEREON.

YOU WILL RECEIVE UNTO YOUR CUSTODY AND DETAIN HIM/HER UNTIL THE
_____ DAY OF _____ _____, OR UNTIL LEGALLY DISCHARGED.

DATED THIS 23 DAY OF JANUARY, 2007.

BOND SET AT: (1)     $3,500.00  BOND TYPE:
             (2) _____
             (3) _____


KATHY COULTER
CLERK OF CIRCUIT COURT

---

| CHARGES: FORGERY 2ND | 13A-009-003 | F  FELONY |

---

NAME: DANNY WAYNE PICKARD              ALIAS:
ADDRESS: 50 NORMAN DRIVE                ALIAS:
ADDRESS:
CITY: SEALE              STATE: AL      ZIP: 36875 0000
                                        PHONE: 000 000 0000 EXT: 000


EMPLOYMENT:
DOB: 05/04/1957   RACE: W    SEX: M    HAIR: BLK
EYE: BRO  HEIGHT: 6'00"   WEIGHT: 185
SID: 000000000  SSN: 260923515  DL NUM:

---

### E X E C U T I O N

EXECUTED THE WITHIN WARRANT BY ARRESTING THE DEFENDANT AND

(  )  PLACING DEFENDANT IN THE RUSSELL COUNTY JAIL

(  )  RELEASING DEFENDANT ON APPEARANCE BOND

_____

_____

THIS _____ DAY OF _____ _____

                        _____
                        SHERIFF

                        _____
                        BY

---

COMPLAINANT:  JUDY FLOWERS
              CB&T BANK
              910 13TH STREET
              PHENIX CITY  AL  36867

OPERATOR: DEB      DATE: 01/23/2007

ALABAMA JUDICIAL INFORMATION SYSTEM

* * * IN THE DISTRICT COURT OF RUSSELL COUNTY * * *

AGENCY NUMBER:

WARRANT NUMBER: WR 2007 000243.00
OTHER CASE NBR:

C O M P L A I N T

BEFORE ME THE UNDERSIGNED JUDGE/CLERK/MAGISTRATE OF THE DISTRICT COURT OF
RUSSELL COUNTY, ALABAMA, PERSONALLY APPEARED    JUDY FLOWERS
WHO BEING DULY SWORN DEPOSES AND SAYS THAT HE/SHE HAS PROBABLE CAUSE FOR
BELIEVING, AND DOES BELIEVE THAT    DANNY WAYNE PICKARD         DEFENDANT,
WHOSE NAME IS OTHERWISE UNKNOWN TO THE COMPLAINANT, DID WITHIN THE ABOVE
NAMED COUNTY AND

DID ON OR ABOUT DECEMBER 27, 2006, WITH INTENT TO DEFRAUD, FALSELY MAKE,
COMPLETE OR ALTER A WRITTEN INSTRUMENT, IN SUBSTANCE AS FOLLOWS: CHECK
NUMBER 147 DRAWN ON THE ACCOUNT OF JERRY L STARLING AT CB&T BANK OF
EAST ALABAMA, MADE PAYALE TO DANNY PICKARD IN THE AMOUNT OF $800.00,
AND SIGNED BY JERRY L STARLING, WHICH IS, PURPORTS TO BE, IS CALCULATED
TO BECOME, OR REPRESENTS, IF COMPLETED, A GENIUNE INSTRUMENT,
IN VIOLATION OF 13A-009-003                  OF THE CODE OF ALABAMA,
AGAINST THE PEACE AND DIGNITY OF THE STATE OF ALABAMA.

_Judy Flower Security Office_
COMPLAINANT'S SIGNATURE

**ORIGINAL**

SWORN TO AND SUBSCRIBED BEFORE ME THIS THE 23 DAY OF JANUARY, 2007.

JUDGE/CLERK/MAGISTRATE OF DISTRICT COURT

CHARGES: FORGERY 2ND          13A-009-003          F  FELONY
---------------------------------------------------------------
WITNESS FOR THE STATE

JUDY FLOWERS/CB&T BANK/910 13TH STREET/PHENIX CITY/36867

INV STANLEY KING/R.C.S.O./PHENIX CITY/36867

OPERATOR: DEB    DATE: 01/23/2007

STATE OF ALABAMA  RUSSELL COUNTY  DISTRICT COURT

AGENCY NUMBER:  WARRANT NUMBER: WR 2007 000243.00
OTHER CASE NBR:

TO ANY LAWFUL OFFICER OF THE STATE OF ALABAMA:

YOU ARE HEREBY COMMANDED TO ARREST  DANNY WAYNE PICKARD  AND BRING
HIM/HER BEFORE THE DISTRICT COURT OF RUSSELL COUNTY TO ANSWER THE STATE
ON A CHARGE(S) OF:
          FORGERY 2ND  CLASS: C  TYPE: F  COUNTS: 001
AND HAVE YOU THEN AND THERE THIS WRIT WITH YOUR RETURN  THEREON.

YOU WILL RECEIVE UNTO YOUR CUSTODY AND DETAIN HIM/HER UNTIL THE
_____ DAY OF _____ _____, OR UNTIL LEGALLY DISCHARGED.

DATED THIS 23 DAY OF JANUARY, 2007.

BOND SET AT: (1)     $3,500.00  BOND TYPE:
             (2) _____
             (3) _____


KATHY COULTER
CLERK OF CIRCUIT COURT

---

CHARGES: FORGERY 2ND       13A-009-003       F  FELONY

---

NAME: DANNY WAYNE PICKARD       ALIAS:
ADDRESS: 50 NORMAN DRIVE         ALIAS:
ADDRESS:
CITY: SEALE          STATE: AL   ZIP: 36875 0000
                                  PHONE: 000 000 0000 EXT: 000


EMPLOYMENT:
DOB: 05/04/1957   RACE: W   SEX: M   HAIR: BLK
EYE: BRO  HEIGHT: 6'00"  WEIGHT: 185
SID: 000000000  SSN: 260923515  DL NUM:

---

E X E C U T I O N

     EXECUTED THE WITHIN WARRANT BY ARRESTING THE DEFENDANT AND

     (  )  PLACING DEFENDANT IN THE RUSSELL COUNTY JAIL

     (  )  RELEASING DEFENDANT ON APPEARANCE BOND


_____

_____

THIS _____ DAY OF _____ _____

                    _____
                    SHERIFF

                    _____
                    BY

---

COMPLAINANT:  JUDY FLOWERS
              CB&T BANK
              910 13TH STREET
              PHENIX CITY  AL  36867

OPERATOR: DEB      DATE: 01/23/2007

| IN THE DISTRICT COURT OF RUSSELL COUNTY Russell County Courthouse Phenix City, Alabama 36868-0818 | AFFIDAVIT and ARREST WARRANT | CASE NUMBER DC ___ _____ |
|---|---|---|

## THE STATE OF ALABAMA

v.

Danny Pickard

50 Norman Drive

Phenix City, Alabama 36869

Before me the undersigned authority of THE DISTRICT COURT OF RUSSELL COUNTY, ALABAMA, personally appeared

Stanley King

who being duly sworn, deposes and says, on oath, that in said County, on or about (date)  January 18th, 2007

Is a Fugitive from Justice from the County of Okaloosa, Florida for the original charge of Violation of Probation.

Sworn to and Subscribed before me this the    18th

day of    January    20 2006 .

Magistrate, District Court

Signature of Affiant

Address

Telephone Number

| THE STATE OF ALABAMA RUSSELL COUNTY | WARRANT OF ARREST | WARRANT NUMBER WA ___ _____ |
|---|---|---|

TO ANY LAWFUL OFFICER OF THE STATE OF ALABAMA:

YOU ARE HEREBY ORDERED TO ARREST

Danny Pickard

and bring him/her before the DISTRICT COURT OF RUSSELL COUNTY, to answer the State of Alabama on a charge of

Fugitive From Justice

and have you then and there this writ with your return thereon.

The arresting officer may admit the Defendant to bail upon him/her entering into bond in the amount of $  0

Dated this    18th    day of

Affidavit and Arrest Warrant (back)

## WITNESSES FOR STATE

| Name, Address, and Telephone Number | Name, Address, and Telephone Number |
|---|---|
| | |

## ACKNOWLEDGEMENT BY AFFIANT

I hereby acknowledge that the magistrate preparing the within warrant and affidavit has explained to me that I cannot withdraw, or drop, the charges made against the defendant in said warrant. It has further been explained to me and I fully understand that I must appear at the trial of the defendant and testify as to the facts stated in the foregoing affidavit and that if I fail to do so, I may be found in contempt of court for such failure.

_____                    _____
Date                                          Signature of Affiant

## CERTIFICATE OF EXECUTION

I, the undersigned law enforcement officer, certify that I executed the foregoing ARREST WARRANT by arresting the named Defendant therein at __4__ o'clock _P_ m., on the _18_ day of _January_, 19 _2007_, in

**RUSSELL COUNTY, ALABAMA.**

After arrest, the accused person was:

☐ Released as authorized at _____ o'clock ___m., _____, 19____,

☐ Taken before _____                              ☐ Judge ☐ Magistrate at

_____ o'clock ___m., _____, 19____.

_____                    _____
Date                                          Signature/Title

## ACKNOWLEDGEMENT BY DEFENDANT

☐ I hereby acknowledge that at the time of my release from custody I was directed to appear in person before the court, as follows:

Place: _____

Date: _____, 19____,

Time: _____ o'clock ___m., and as thereafter needed until discharge.

☐ I promise to appear as directed before the court, as follows:

Place: _____

Date: _____, 19____,

_____ o'clock ___m., and as thereafter needed until discharge.

**Summit Hospital**
PHENIX CITY, ALABAMA

# Fax Cover Page

| | | | |
|---|---|---|---|
| To | Tina Riley, dPN | From | Karin / HM |
| Company | Russell County Jail | No. of Pages | 18 incl cover |
| Fax Number | 334-291-5130 | Date | 3/23/07 |
| Re: | Med. Rec. | | |

| ☐ Urgent | ☐ For Your Review | ☐ Reply ASAP | ☐ Please Comment |
|---|---|---|---|

attached see requested records

Confidentiality Notice
This facsimile, and any files transmitted with it, may contain confidential and/or proprietary information in the possession of Summit Hospital and is intended only for the individual or entity to whom addressed. This facsimile may contain information that is held to be privileged, confidential, and exempt from disclosure under applicable law. This information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any unauthorized access, dissemination, distribution, or copying of any information from this facsimile is strictly prohibited and may subject you to criminal and/or civil liability. If you have received this facsimile in error, please call 334-732-3000.
Thank You.

If you have problems receiving this message, please call _____

## SUMMIT HOSPITAL

## DISCHARGE SUMMARY

**Patient Name:** PICKARD, DANNY
**Medical Record Number:** 7331
**Date of Birth:** 05/04/1957
**Account Number:** 9789
**Attending Physician:** Lloyd Harrington MD
**Room Number:** 001

Revised to include medical record number by BAlexander  19 January 2007

**Date Of Admission:**
January 16, 2007

**Date Of Discharge:**
January 18, 2007

**Reason For Admission:**
He was admitted with DTs.  Apparently he recently started drinking.

**Course In Hospital:**
While in the hospital he seemed to improve on the DT treatments, but last night he broke his mirror, threatened one of the staff with a shard of glass, and tried to cut his own wrist.  He has what sounds like 16 outstanding warrants for his arrest, and according to the police officers he does this kind of behavior and is known to do that in the past to get out of going to jail and facing the music.  He was a lot more lucid this morning.  We have given him a lot of thorazine and Haldol, just to protect the staff from his violent outrages.  The officer has assured me that Dr. Were and a nurse at the jail are adequately able to take care of any medical problems that he has, which in my opinion he is basically over 90% of his DTs and I think it would be safe to transmit him to the care of Dr. Were, whom I know and have been associated with for many years, and feel he is a competent physician.

**Final Diagnosis:**
Alcoholic withdrawal syndrome.

Richard A Valentine, MD

D: 01/18/07 14:48
T: 01/18/07 18:54
SJN: SMT16387660
DJN: 2564

# SUMMIT HOSPITAL

## DISCHARGE SUMMARY

20428

# SUMMIT HOSPITAL

## HISTORY AND PHYSICAL

**Patient Name:** PICKARD, DANNY
**Medical Record Number:** 7331
**Date of Birth:** 5/4/1957
**Account Number:** 9789
**Attending Physician:** Lloyd Harrington MD
**Room Number:** 312

Revised by BAlexander  16 January 2007

**Date Of Admission:**
January 16, 2007

**Present Illness:**
He is a 35-year-old white male who had quit drinking until 2 weeks ago, when he took everything he had, and he started drinking again. He hurts all over. He has the shakes. He came to the emergency room, where he has had abdominal pain and was found to have pancreatitis. He does not smoke or do drugs, but he has been drinking 2 bottles of tequila a day and wants help. He is also drinking mouth_____.

He was seen by a representative of the Bradley Center, while she was investigating somebody else in the emergency room, and he may be accepted if he is free of the DTs.

He has had no abnormal bleeding.

**Physical Examination:**
    **General:** He is tremulous. He is alert.
    **Vital Signs:** Blood pressure 150/78, respiratory rate is 24, pulse is 110, temperature 99.3.
    **HEENT:** Otherwise normal.
    **Chest:** Clinically clear.
    **Cardiovascular System:** S1 and S2 are normal. There are no murmurs, clicks, or rubs.
    **Abdomen:** Tender in his epigastrium, but no guarding or rebound. Bowel sounds are present. Femorals are present.
    **Extremities:** There is no peripheral edema. Distal pulses are palpable. He can move all limbs.

**Admitting Assessment:**
1.  Alcoholic withdrawal syndrome with delirium tremens.

## SUMMIT HOSPITAL

### HISTORY AND PHYSICAL

**PATIENT NAME:  PICKARD, DANNY**

2.  Alcohol excess.
3.  Recent separation from his wife/girlfriend.
4.  Past history of alcohol excess.
5.  Acute pancreatitis.

Richard A Valentine, MD

D:  01/16/07 07:51
T:  01/16/07 08:13
SJN:  SMT16366784
DJN:  2490
20428

24

## Summit Hospital
### EMERGENCY PHYSICIAN RECORD
General Adult   (5)

TIME SEEN: 1900 □ on arrival   ROOM: 10 __ EMS Arrival

HISTORIAN: patient spouse paramedics_____
__HX?__EXAM LIMITED BY:_____

## HPI

**chief complaint:** Meth withdrawals

**started:** Today

**time course:**
still present
better
gone now
worse

**severity:**
mild
moderate
severe

**modifying factors:**
none

**context:** Pt. B going though withdrawl from Meth. Pt drank

**quality:** bottles of Meth wash on yesterday afternoon

**location:**

Recent trauma history: Ø

Similar symptoms previously: Yes

Recently seen / treated by doctor: Ø

## ROS
**CONST**
fever
____ subjective / to ____ °F
chills
generalized weakness
weight loss
**ENT**
sore throat
nasal drainage / congestion
**CVS / PULMONARY**
cough
sputum
trouble breathing
chest pain
**GI**
abdominal pain
nausea / vomiting
diarrhea
black / bloody stools
**URINARY**
problems urinating
frequent urination

**PAST HX** ____ negative
neurological problems
CVA   seizure disorder
high blood pressure
cardiac disease
heart attack (MI)   angina
heart failure
DVT / PE risk factors
clot   cancer   recent surgery
leg swelling   bedridden   paralysis

Dementia
ETOH Abuse
Psych DCO

Surgeries / Procedures ____ none
cardiac bypass / stent
endoscopy
indwelling lines ports / catheter / dialysis line

**Medications** ____ none ___ see nurses note
ASA   NSAID   acetaminophen

**SOCIAL HX** smoker
recent ETOH
**FAMILY HX**

**FEMALE GENITAL**
abnormal bleeding / discharge
LNMP____
postmenopausal / hysterectomy
**SKIN / MS**
rash
back pain
leg pain
foot swelling
**NEURO / EYES**
headache
blackout / dizzy
loss feeling / power
in arm   leg   face   R / L
difficulty walking
difficulty with speech
double vision
confusion
□ all systems neg except as marked

lung disease
asthma   emphysema
diabetes   Type 1   Type 2
diet / oral / insulin
renal disease
high cholesterol
HIV / AIDS

dialysis graft
pacemaker

**Allergies** / NKDA
see nurses note   Demerol

drug use / abuse
nursing home resident

Page 1 of 2

☑ Nursing Assessment Reviewed   ☑ Vitals Reviewed

## PHYSICAL EXAM
### General Appearance
__ no acute distress
__ alert

mild / moderate / severe distress
acute / lethargic

### EENT
__ atraumatic inspection
__ EOM inspection nml
__ pharynx nml
__ no signs of dehydration

__ scleral icterus / pale conjunctivae
__ EOM palsy / anisocoria
__ purulent nasal drainage
__ pharyngeal erythema / exudate
__ oral lesions / dry mucous membranes
__ trauma

### NECK
__ thyroid inspection
__ thyroid nml

__ thyromegaly
__ lymphadenopathy ( R / L )
__ stiff neck / Kernig's / Brudzinski's sign
__ carotid bruit

### RESPIRATORY
__ chest non-tender
__ no resp. distress
__ breath sounds nml

__ see diagram
__ wheezes / rales / rhonchi

### CVS
__ regular rate, rhythm
__ no murmur
__ no gallop

__ irregularly irregular rhythm
__ extrasystoles ( occasional / frequent )
__ tachycardia / bradycardia
__ PMI displaced laterally
__ JVD present
__ murmur grade __ /6 sys / dias
__ gallop ( S3 / S4 )
__ friction rub

__ decreased pulse(s)
   R carotid ___ fem ___ dors ped
   L carotid ___ fem ___ dors ped

### ABDOMEN
__ soft, tender
__ organomegaly
__ nml bowel sounds
__ no distension

__ tenderness
__ guarding / rebound
__ abnormal bowel sounds
   increased / decreased / absent
__ hepatomegaly / splenomegaly / mass
__ bruit

### RECTAL
__ non-tender
__ heme neg stool

__ black / bloody / heme pos. stool
__ tenderness / mass / nodule

### BACK
__ nml inspection

__ CVA tenderness ( R / L )

### SKIN
__ no embolic lesions
__ color nml, no rash
__ warm, dry

__ cyanosis / diaphoresis / pallor
__ skin rash

### EXTREMITIES
__ non-tender
__ nml ROM
__ nml appearance
__ no pedal edema

__ pedal edema
__ calf tenderness
__ joint swelling
__ Homan's sign

### NEURO / PSYCH
__ oriented x3
__ mood / affect nml
__ CN's nml (2-12)
__ no motor/
__ sensory deficit

__ disoriented to person / place / time
__ depressed affect
__ facial droop
__ weakness / sensory loss
__ slurred / abnormal speech

General Adult-24   Page 2 of 3

Tremors

① Visual hallucinations
② Several delusions

## LABS, EKG & XRAYS

| CBC | Chemistries | | UA |
|---|---|---|---|
| normal except | normal except | CK ___ | normal except |
| WBC ___ | Na ___ | CKMB ___ | WBC ___ |
| Hgb ___ | K ___ | Troponin ___ | RBC ___ |
| Hct ___ | Cl ___ | | bacteria ___ |
| Platelets ___ | CO2 18 | | dip ___ |
| segs ___ | Gluc ___ | PT ___ | |
| bands ___ | BUN 27 | PTT ___ mg = 1.7 | |
| lymphs ___ | Creat 4.5 | | |
| monos ___ | | Amylase ___ | |
| eos ___ | | Lipase ___ | |

EKG MONITOR STRIP    __ NSR    Rate ___

EKG  __ NML  ☐ Interp. by me  ☐ Reviewed by me  Rate ___
__ NSR  __ nml intervals  __ nml axis  __ nml QRS  __ nml ST/T

not / changed from ___

CXR  ☐ Interp. by me  ☑ Reviewed by me  ☐ Disc'd w/ radiologist
__ nml/NAD  __ no infiltrates  __ nml heart size  __ nml mediastinum

chronic interstitial ___

not / changed from ___

## PROGRESS
Time ___  unchanged  improved  re-examined

WBS = Neg

Rx given
Discussed with Dr. Valentine ___  Time: 2305
will see patient in: office / ED / home

Counseled patient / family regarding:   Additional history from:
lab / red. results diagnosis need for follow-up   family caretaker paramedics
   prior records ordered
CRIT CARE TIME  (excluding separately billable procedures)
   30-74 min   75-104 min   ___ min

## CLINICAL IMPRESSION

Cellulitis
Pancreatitis

DISPOSITION  ☐ home  ☑ admitted  ☐ transferred
CONDITION  ☐ unchanged  ☐ improved  ☑ stable

PHYSICIAN SIGNATURE ___
☐ Dictated Addendum

**Emergency Department Record**
**Physician Order Sheet**

01/15/07 17:57    05/04/1957    35

## Labs

- H/H
- (CBC with Diff)
- BMP
- (CMP)
- (Mg)
- UHCG
- SHCG - qualitative
- SHCG - quantitative
- Strep Screen
- (Amylase)
- S. Ketones
- (Lipase)
- CK
- CK-MB
- Troponin I
- BNP
- PT / PTT
- Sed Rate
- H. Pylori
- (UA)
  clean cath  dip  (ketones)
- CSF Protocol
- (Toxin Screen)
- (Urine blood)
- Drug Levels:
  Digoxin  Dilantin  (ETOH)
  Tylenol  ASA  Tegretol
  Depakote  Phenobarbital

P. 26

## Standard Panel

- Thyroid
  T₄
  T₃
  TSH

## X Rays

- (CXR)
- Extremity  R  L
- Sonogram: pelvic  abd
  biliary  renal
- KUB: flat  upright
- CT: head  abdomen/pelvis
  with  without contrast
- IVP
- C-Spine 2 View
- C-Spine 3 View
- Acute Abdominal Series

## Cardiorespiratory

- EKG
- HFN with _____
- ABG: RA  O₂

- Culture: urine
  blood x ___
  stool
- Stool Leukocytes
- Stool Hemoccult

## Please call Doctor

| Time Ordered Call: | Doctor: | |
|---|---|---|
| | | |
| | | |

## Allergies

## Home Medications

## Discharge Instructions

Follow up with Dr: _____

**RETURN IMMEDIATELY FOR WORSENING SYMPTOMS!**

## ED / Nursing Orders

- ☐ Cardiac Monitor
- ☐ Pulse Oximeter
- ☐ Oxygen _____ L NC
  - ☐ Titrate to keep sat greater than 95%
- ☐ Fully disrobe / Gown
- ☐ Postural Vitals
- ☐ Neuro checks q _____
- ☑ IV  ☐ Saline Lock  NS / ____ Bolus ___ ml/hr
- ☐ Phenergan _____
- ☐ Toradol _____
- ☐ Tylenol _____
- ☐ Motrin _____
- ☐ Morphine sulfate _____
- ☐ Demerol _____
- ☐ Nubain _____
- ☐ Rocephin _____ IM mix w/1% Lidocaine plain
- ☐ Rocephin _____ IV
- ☐ Zofran _____

## Subsequent Nursing Orders

- ☐ Please repeat: BP  HR  RR  Temp
- ☐ May be off cardiac monitor for radiology studies or transport

1915  Thiamine 100mg IV
1915  Ativan 2mg IM
1915  Haldol 5 mg IM
2050  Ativan 1mg IV

## Disposition

- ☑ Admit  ☐ OBS  ☐ Discharge
- ☑ Med/Surg  ☐ Telemetry  ☐ ICU  ☐ L&D
  Dr. Vallentine
- ☐ Transfer to: _____
  Care of Doctor: _____
  Condition: ☐ Improved ☑ Stable ☐ Other: _____
  (1) Physician Signature: _____
  (2) Physician Signature: _____
  (3) Nurse Signature: _____

Case 3:07-cv-00270-MHT-WC    Document 9-3    Filed 05/14/2007    Page 9 of 50

**Care Ambulance**

| | | | | | | |
|---|---|---|---|---|---|---|
| Name: Last | First | Mid | DOB | Sex | SVC Date | PKUP Time |
| Pickard | Danny | W | 05-04-57 | M | 01-15-07 | ASAP |

Patient Address: 8377 Co. 50 Norman Dr
Ft Mitchell, AL

Origin Name: Residence
Origin Address: 50 Norman Dr Ft. Mitchell, AL

Destination Name: Summit BC
Destination Address: 4401 Crutchase Dr Phenix City, AL 36867

Phone: 
S.S. 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
Sending MD:
Receiving MD:

**Signs & Symptoms**
- Anxiety
- Vomiting
- Dehydrated
- Diaphoretic
- Hemorrhage
- Syncope
- Lacerations
- Hypertension
- Atropchale
- Nausea
- Paralysis
- Resp Distress
- Other

Reason for Transport / Chief Complaint (Why is the patient being transported today?): Alcoholic

What Specific Service is required but not avail at orig facility? med eval

Pertinent Medical Hx:

## Observations / Narrative

Current Medications: Ambien

Medical Necessity: A: found 49 y/o w/m sitting on sofa
Alcoholic needs help, drunk mouthwash last night
& having hallucinations

Narrative: It is wanting help for his alcoholism
A: CAOx3 & v/s slightly constricted, Airway patent, & JVD
trach midline, Chest: equal rise & fall Abdomen un-
remarkable, Pelvis stable Extremities: PMS= good, CRT
normal, skin warm + dry
R: v/s below, ECG= S/tach
T: Tbins CR to Summit BC & turned care over to staff

Allergies: unknown

Physician Order's Verification
Physician Signature:

| | | | | | | |
|---|---|---|---|---|---|---|
| 2 | 706 | 151/91 | 122 | 24 | 97% | 96 |
| 2 | 728 | 136/9 | 112 | 24 | 97% | 97 |

Prov: 1 Driver: J.L.
Prov: 2 Tech:
M. Dempsey
C. Lawrence
EMT
P
P
0600177

Level of Care Provided: 038

Summit Hospital
Multidisciplinary Progress Note

312/A
RICKARD DANNY                    0009709
UA VALENTINE RICHARD             M23
M           05/04/1957
01/16/07 00:45                   : 35
                                 000007311

| Date & Time | Problem / Focus | Progress Note | Signature & Title |
|---|---|---|---|
| 1-16 | | Pt *body odor* & threated *staff* & *other* *friend* — *tried to cut own wrists* | |
| | | *Police here* — pt has *jaggery cont* *against* apparently — *ripped off a bleach spray* *atsempting to repair from staff* | |
| | | No apparent *ambulatory wounded* | |
| | | Pt agitated will *(refer to unit)* *monitor him more closely* | |
| | | Add Thorazine for *sedation* | |
| | | Clt d/c Trilisis & *ambulatory wounded* R 93  198  131/68  add *comp* BP 26    *[signature]*    *Mavendd Uh* | |
| | | A/P ale *withdrawn* *Suicidal gesture* *Violent* | *[signature]* |

**Summit Hospital**
*Multidisciplinary Progress Note*

312/A
PICKARD DANNY
UA VALENTINE RICHARD
M          05/04/1957
03/16/07 00:45

0008789
M82

35
000007331

## Case Management

| Date & Time | Problem / Focus | Progress Note | Signature & Title |
|---|---|---|---|
| 1/19/07 0830 to 0847 | | Transfer Needs - Calls to West Central, East Alabama Medical Center, Brookwood, Meadow Haven & UAB West - no psych beds. Call to Trinity. Per Kelly we had Instructed to call Dr. Harvey at 205·444·0420 n page 205·940·1698. Spoke to Tyler - will discuss ē Dr. Harvey for possible acceptance at Trinity. ——— J. Mykush | |

20 0070 3-16

Summit Hospital
*Medication Administration Record - Blank*

PICKARD DANNY
HARRINGTON LLOYD
M          05/04/1957
01/15/07 17:57

0009789
EMS
35
000007331

**Diagnosis:**
Alcoholism

**Allergies:**

**Weight:**

| Administration Period: 1/16 @ 0701 thru 1/17 @ 0700 | | | Days | Evenings | Nights |
|---|---|---|---|---|---|
| **Medication** | **Start** | **Stop** | 0701 - 1500 | 1501 - 2300 | 2301 - 0700 |
| Protonix 40mg IV QD | 1/16/07 | | 0900 ✓ | Chris dector dt | |
| Darvocet N 100 ī - īī Q4H PO PRN pain. | | | | 2330 dt 0930 dt | 0500 dt |
| Valium 10mg IM or PO q2h PRN agitation | | | | 2030 dt 0130 dt 2230 dt 0230 dt 0430 dt | 0500 dt |
| Haldol 10mg P.O. X 1 now | 1/17/07 | 1/17/07 | | | 0150 yk |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| Response | Meds Not Given | Injection Sites | | Signature | Initials | Signature | Initials |
|---|---|---|---|---|---|---|---|
| A. Relief in 30 minutes | P. Patient Asleep | I. Right Deltoid Area | | D Shams RN | sh | Y. Kwon RN | yk |
| B. Relief in 60 minutes | Q. Off of Unit | II. Left Deltoid Area | | | | D Tukeley | dt |
| C. No Relief | R. Refused | III. Right Gluteal Area | | | | | |
| | S. NPO / Studies | IV. Left Gluteal Area | | | | | |
| | T. NPO / Surgery | V. Right Abdomen | | | | | |
| | | VI. Left Abdomen | | | | | |
| | | VII. Right Thigh | | | | | |
| | | VIII. Left Thigh | | | | | |
| | | IX. Right Ventrogluteal | | | | | |
| | | X. Left Ventrogluteal | | | | | |

PRN - Routine

Patient : PICKARD DANNY          0009789  Sex  : M      Admit Date: 1/16/07   Location: MS3 312-A
Physician: UA VALENTINE RICHARD  99997  Height: 5 ft 10 in  Weight  : 180 lb 0 oz

| No: | Medication | Start/Stop | Adm |07:00 to 14:59 | 15:00 to 22:59 | 23:00 to 06:59 |
|-----|-----------|-----------|-----|-----|-----|-----|
| | | **Scheduled Orders** | | | | |
| 0049492 | POTASSIUM CHL 20MEQ 20 MEQ PO EACH DAY | 01/17/2007 | | 0900 | | |
| | ONE DOSE = 20 MEQ = 1 TABLET | AT 0900 | | | | |
| | K-DUR 20MEQ TAB | 03/17/2007 | | | | |
| | ** SOUND-ALIKE/LOOK-ALIKE MEDICATION ** | AT 0900 | | | | |
| | ****FLOOR STOCK**** | | | | | |
| | Sign 1:           Sign 2: | | | | | |
| 0049688 | PROTONIX 40MG INJ 40 MG IV EACH DAY | 01/16/2007 | | 0900 | | |
| | ONE DOSE = 40 MG | AT 0900 | | | | |
| | PANTOPRAZOLE 40MG INJ | 03/16/2007 | | | | |
| | ****FLOOR STOCK**** | AT 0900 | | | | |
| | Sign 1:           Sign 2: | | | | | |

| One time only medications-dose/strength | Time | Init | Signatures | Init | Shift |
|---|---|---|---|---|---|

Patient   : PICKARD DANNY          0009789      Diagnosis: ALCOHOLISM
Admitted  : 1/16/07 00:45                       Discharge: 0/00/00  00:00
Admit Physician: UA VALENTINE RICHARD           Note   :
Age       : 49 Y   Date of Birth: 05/04/1957
Sex       : Male      Hist.#: 7331               Location : MS3  312-A
Allergies: No Known Drug Allergy
Patient : 0009789 PICKARD DANNY        Room/Bed: 312-A        Verified By:

Patient : PICKARD DANNY          0009789  Sex  : M        Admit Date: 1/16/07   Location: MS3 312-A
Physician: UA VALENTINE RICHARD  99997  Height: 5 ft 10 in  Weight  : 180 lb 0 oz

| No: | Medication | Start/Stop | Adm 07:00 to 14:59 | 15:00 to 22:59 | 23:00 to 06:59 |
|-----|------------|------------|---------------------|----------------|-----------------|
| | | | 1/18  1/18 | 1/18  1/18 | 1/18  1/19 |
| | | Scheduled Orders | | | |
| 0049011 | Bags 7, 8, 9 | 01/16/2007 | 1130 | 1930 | 0330 |
| | Dextrose 5%NS 0.45% KCL 10mEQ 1000 ML | AT 1130 | | | |
| | IV CONT 1000 ML | 03/17/2007 | | | |
| | ONE DOSE = 1000 ML | AT 1129 | | | |
| | THIAMINE HCL 100 MG IV CONT 2 ML | | | | |
| | ONE DOSE = 100 MG = 1 ML | | | | |
| | D5NS1/2 + KCL 10MEQ 1000ML | | | | |
| | VIT B1 (THIAMINE) 100MG/ML INJ | | | | |
| | RATE: 125 ML /HR | | | | |
| | ****FLOOR STOCK**** | | | | |
| | Sign 1:        Sign 2: | | | | |

| One time only medications-dose/strength | Time | Init | Signatures | | Init | Shift |
|------------------------------------------|------|------|-----------|---|------|-------|
| | | | | | | |
| | | | | | | |
| | | | | | | |

Patient  :    PICKARD DANNY          0009789      Diagnosis: ALCOHOLISM
Admitted :    1/16/07 00:45                       Discharge: 0/00/00 00:00
Admit Physician: UA VALENTINE RICHARD             Note
Age      :   49 Y   Date of Birth: 05/04/1957
Sex      :   Male      Hist.#: 7331               Location : MS3 312-A
Allergies: No Known Drug Allergy
Patient:  0009789 PICKARD DANNY                   Room/Bed: 312-A          Verified By: _____

SUMMIT HOSPITAL                                                    LABORATORY
4401 RIVER CHASE DRIVE                                       JOHN STICH, M.D.
PHENIX CITY   AL  36867

---

NAME: PICKARD DANNY              DOB:  5/04/57              PCP:
MR# : 000007331                  AGE: 49   SEX: M

***URINALYSIS***

SPECIMEN YR  2007
           DT 01/15                                        REFERENCE
           TM 18:40                                  LOW - HIGH    UNITS

COLOR    . YELLOW                                          .
APPEAR     CLEAR                                           .
SP GR      1.020                                           .
PH         6.0                                             .
PROTEIN    30                                      TRACE -
GLUC     NEGATIVE                                    NEG -
KET      >=80                                        NEG -
BILI     NEGATIVE                                    NEG -
OCCBLOOD   LARGE                                     NEG -
UROBIL     0.2                                       0.2 -    1.0
NITRITE  NEGATIVE
LEUKOCYT NEGATIVE                                    NEG -
WBC        0-3                                             .
RBC        10-25                                           .
EPITH      OCC                                             .
MUCUS      FEW                                             .
ACETEST    LARGE                                           .

TECHNOLOGIST   DAC
   VERIFIED DT 01/15/07
           TM 19:02

COMMENTS:
15/07/01 19:00 UA       SOURCE:: VOIDED

RXOR02
RX Location PHARMACY

SUMMIT HOSPITAL
MEDICATION ADMINISTRATION RECORD
01/18/2007 07:00:00 through 01/19/2007 06:59:00

Page: 3 of
Date: 1/19/2007
Time: 16:12:01

User : JACDAVIS

Patient : PICKARD DANNY 0009789 Sex : M Admit Date: 1/16/07 Location: MS3 312-A
Physician: UA VALENTINE RICHARD 99997 Height: 5 ft 10 in Weight : 180 lb 0 oz

| No: | Medication | Start/Stop | Adm | 1/18 07:00 to 14:59 | 1/18 15:00 to 22:59 | 1/18 | 1/18 | 1/18 | 1/19 23:00 to 06:59 |
|-----|-----------|-----------|-----|-----|-----|-----|-----|-----|-----|
| | | PRN Orders | | | | | | | |
| 0049493 | PROPOXYPHENE N-APAP 2 TABLET PO THREE TIMES A DAY AS NEEDED ONE DOSE = 2 TABLET Darvocet N-100 TAB PRN PAIN ****FLOOR STOCK**** Sign 1:_____ Sign 2:_____ | 01/17/2007 AT 0859 03/18/2007 AT 0859 | | 1045 ST | | | | | |
| 0049494 | CHLORDIAZEPOXIDE HCL 25 MG PO EVERY THREE HOURS AS NEEDED ONE DOSE = 25 MG = 1 CAPSULE LIBRIUM 25MG CAP ****FLOOR STOCK**** Sign 1:_____ Sign 2:_____ | 01/17/2007 AT 0901 03/18/2007 AT 0900 | | | | | | | |

| One time only medications-dose/strength | Time | Init | Signatures | | Init | Shift |
|-----|-----|-----|-----|-----|-----|-----|
| | | | | | | |
| | | | | | | |
| | | | | | | |

Patient : PICKARD DANNY 0009789
Admitted : 1/16/07 00:45
Admit Physician: UA VALENTINE RICHARD
Age : 49 Y Date of Birth: 05/04/1957
Sex : Male Hist.#: 7331

Diagnosis: ALCOHOLISM
Discharge: 0/00/00 00:00
Note :

Location : MS3 312-A

Allergies: No Known Drug Allergy
Patient: 0009789 PICKARD DANNY Room/Bed: 312-A Verified By: _____

**SUMMIT HOSPITAL**

Page of 1

| | |
|---|---|
| Patient Name: PICKARD, DANNY | Date of Birth: 5/4/1957 |
| MRN: 7331 | Observation Date/Time: 01/15/2007 19:57:00 |
| Order Control: NW | Order Number: 1500 |
| Accession #: 00097890001500 | Ordering Provider: DARIUS BROWN |
| Exam Code: XRPCHEST | Clinical Indication:etoh withdrawel |

C:.dot
**Exam Title:**
Chest, AP portable, 01/15/2007.

**History:**
ETOH withdrawal.

**Findings:**
The heart diameter and mediastinum are normal. The lungs are clear. There are no pleural effusions.

**Impression:**
Normal.


Fernando Bayo, III, MD

  :This document is electronically signed by  Fernando  Bayo, III MD on 01/16/2007 at 10:42:24 AM (CST) Verification: 16366898200070116104224



D: 01/16/07 08:47
T: 01/16/2007 08:12
SJN: SMT16366898
DJN: 6534
  /

*Legally authenticated by BAYO III FERNANDO 2007-01-16 08:12:01*

USER: KRANES

SUMMIT HOSPITAL
4401 RIVER CHASE DRIVE
PHENIX CITY  AL  36867

LABORATORY
JOHN STICH, M.D.

---

NAME: PICKARD DANNY                DOB:  5/04/57              PCP:
MR# : 000007331                    AGE: 49   SEX: M

### ***URINE CHEMISTRY***

==============================================================================

| SPECIMEN YR  2007 | | REFERENCE |
|---|---|---|
| DT 01/15 | | |
| TM 18:40 | | LOW - HIGH   UNITS |

--------------------------------------------------------------------------------

| | | | |
|---|---|---|---|
| PCP | NEGATIVE | | NEG - |
| THC | NEGATIVE | | NEG - |
| BARBIT | NEGATIVE | | NEG - |
| BENZO | NEGATIVE | | NEG - |
| COCAINE | NEGATIVE | | NEG - |
| OPIATE | NEGATIVE | | NEG - |
| TRICYC | NEGATIVE | | NEG - |

TECHNOLOGIST  DAC
VERIFIED DT 01/15/07
          TM 19:01

        ****FOR SCREENING PURPOSES ONLY****
    Confirmation testing recommended for positives.

| NAME: Pickard, Danny | D.O.B. 050457 RACE: W SEX: M |
|---|---|
| PRESENT MEDICATION: | SSN: 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 |
| ALLERGIES: | |
| PPD: | HGT: 6'00" WGT: 185# LBS. |
| HIV/VDRL: | |

| DATE/TIME | | NURSE SIGNATURE |
|---|---|---|
| 011807 1535 | S: 50 y/o W/m escorted to infirmary by thr. S. King. Just released from Summit Hosp. for ETOH poisoning. Admitted on 1/15/07. D/c instructions show no special orders or medications noted. Incident this AM @ hospital, +3 acted out - breaking mirrors, etc. Advised to place on suicide observation. Very poor hygiene, law mated Monitor closely. F/u c Dr. Warr on 1/19/07. — | Jeffrey Love RN |
| 01/18/07 2040 | S. C/o hearing voices. Conts to ext. dirty clothing, hair long matted et bits, scrambled eggs in hair Shackles Shackles on feet + barefooted. Pers Elabail and special ___ ordered in hospital. Reports 2 pills earlier OA Unkept P. Haircut + Shampoo c Shower Suicide Watch Detox per protocol Contacted nurse Jeffrey by phone + she reports Ø meds given et Ømeds ordered. Reports investigator told her that he has been exaggerating AH+ VH ___ Schizo dx 8 yrs ago. HR 133 115/76 NHM Non smoker Pulse OX 99% O2 Attempted to Contact Dr Warr to further approve Detox. Contact unsuccessful. Librium 50mg po given @ 2120 Brother lives Columbus no phone # | |

Pickard Danny

| Date/Time | | Nurse Signature |
|---|---|---|
| 01/18/07 2300 | In holding cell, quiet & clean. ṗ shower, shampoo & hair cut. Very appreciative for hygiene assistance — _JME Ennis RN_ V/s: ᴬᴮ 98-132 - 20 96⁴ | |
| 011907 1250 | F/u: Hospital release (? detox). Procardia 10mg s/l given STAT. **HEENT:** ∅ **LUNGS:** clear          Detox protocol x 3 days. **HEART:** tachycardia c̄ ∅ murmurs **AB:** NT / BS x 4 **EXT:** ∅ edema noted **NEURO:** A/m, oriented — states dialed. _Mm_ **SKIN:** normal. Noted-011907 2kp | |
| 01/21/07 | 10Pm Benadryl 100 mg po x0 ṗ sleep ṗ adm. Agitated ṗ Librium avail.  _JME Ennis RN_ | |
| 01/22/07 0358 | Transported to Summit ER per amb. x0 ṗ face head lac. 1½ 2" long 1½ 3/16" deep. Pressure dsg ṗ other injuries noted. Prob DTs. Was restrained et c̄ strick to L thigh post. ∅ evidence seen ṗ same _JME Ennis RN_ | |
| 012207 0845 | F/u: ER visit V/s:ᴬᴮ¹⁴² 86-136-18 - 98¹ 98.7. laceration to R-side of head. tachycardia ∅ murmurs head. - dressing removed c̄ antibiotic ointment applied. - 12 staples staples intact. - Am Librium 25mg given Motrin 800 mg ṗ 1 tab given | |

_A m_

| Date/ Time | | Nurse Signature |
|---|---|---|
| 1005 | Due to aggitation and beating on cell door. | |
| 012207 | Geodon 20mg IM given DG. | |
| | | |
| | *NWmgt* | |
| 012407 | F/U: unable to explain reason for banging | |
| 1430 | head on door on 1/22/07. Laceration cleaned | |
| | and covered c band-aid. ———— | *Kelsey Lowe CRN* |
| | | |
| 012507 | F/U: laceration to R eyebrow. - Clean band-aid given | |
| 1130 | F/U on Monday 1/29/07 | |
| | Motrin 800mg given for pain. | |
| | | |
| | *NWcon* | 100% |
| 012907 | F/U: Laceration to R eyebrow. V/S: 149/95 - 101-18 | — 972 |
| 1135 | 1/2 staples removed | |
| BS: 123 | area cleaned c betadine swab. | |
| | Covered area c clean bandaid. — | |
| | Naproxen 500mg qHS x 7 days | |
| | Motrin 340 | |
| | V/S: 155/98 - 92 - 16 - 975 | 100% |
| 013107 | F/U: Remove remaining staples on 2/5/07. | |
| 1040 | Healing well. | |
| | *Nmob* | |
| 020606 | All remaining staples removed. Area healing | |
| 1025 | well. Also spoke c pharmacy in Dacula, Ga | |
| | to obtain info reference to Rx. Hasn't filled Rx | |
| | since 2002. Contacted EAMH Outreach to set-up | |
| | intake. ———— | *Kelsey Lowe CRN* |
| | | |
| 1115 | Karen c Outreach ret'd call. Information | |
| | given - to call back c appt. ———— | *Kelsey Lowe CRN* |
| | | |
| 2/7/07 | Transported to EAMH for intake. | *Kelsey Lowe CRN* |
| 0915 | | |
| 2/17/07 | phlet evans for Nurse Scott Az | |
| 0930 | Transported to EAMH. | |

*Richard Dering*

| Date/ Time | | Nurse Signature |
|---|---|---|
| 03/07/07 | C/o passing kidney stone / PRN Benhace 50 mg / po IBU 800 mg flu Dr Wart @ next visit | |
| | *MRS Innes RN* | |
| | V/S 154/97 - 101 - 18 - 97' 100% | |
| 030807 1010 | ? kidney stones UA Chemstrip — trace pus" 0RBC seen *Pyridium* Keflex 500mg bid x 7days Naproxen 500mg qHS x 7days Flu appt @ EAMH scheduled for 3/14/07 *noted 030807 SRN* | |
| 031407 0930 | Transported to EAMH appt. | *Jeffrey Barcelo* |
| 032307 0730 | Rec'd request c C/o tooth pain & discomfort Placed on dental list. | *Jeffrey Barcelo* |

280

# RUSSELL COUNTY SHERIFF'S DEPARTMENT
## CORRECTIONAL UNIT 5750
### DAILY SHIFT LOG

FROM 1900 TO 700 THE 21 DAY OF Jan 20 07 SHIFT Night D

SHIFT SUPERVISOR Sgt Moore          CENTRAL CIO Chadwick

BOOKING OFFICER CIO Walden          1st MALE POD CIO Brown

2nd MALE POD CIO Wurst              FEMALE POD CIO Kite
CIO Andrews - Smith

| ITEM | TIME | INCIDENT / MESSAGE / ACTION TAKEN |
|------|------|-----------------------------------|
| 1. | 1900 | CIO Walden resumed duties of booking (280) |
| 2 | 1901 | Booked in Timmie Holloway (281) |
| 3 | 1905 | Booked in Anthony melvoid (282) |
| 4 | 1945 | Released Shelby Griffin (281) |
| 5 | 1956 | released Kevin Smith (280) |
| 6. | 2015 | Booked in Willie Parish (281) |
| 7 | 2100 | Booked in Ronald Johnson (282) |
| 8 | 0005 | Booked in Ayhenone Thomas (283) |
| 9. | 0300 | Sgt. P. Moore reviewed the daily log. |
| 10. | 305 | Booked in Ronald Easly (284) |
| 11. | 357 | Booked in Damarino Dy (285) |
| 12. | 401 | Donny Pickard escorted to ER returned 615 |
| 13. | 530 | Signed out Lovfield 284 + 1 = 285 |
| 14 | 0700 | night shift relieved by day shift |
|  |  | end of report |
|  |  | Juice Walden |

| ITEM | TIME | INCIDENT / MESSAGE / ACTION TAKEN |
|------|------|-----------------------------------|
|      |      |                                   |
|      |      |                                   |
|      |      |                                   |
|      |      |                                   |
|      |      |                                   |
|      |      |                                   |
|      |      |                                   |
|      |      |                                   |
|      |      |                                   |
|      |      |                                   |
|      |      |                                   |
|      |      |                                   |
|      |      |                                   |
|      |      |                                   |
|      |      |                                   |
|      |      |                                   |
|      |      |                                   |
|      |      |                                   |
|      |      |                                   |
|      |      |                                   |
|      |      |                                   |
|      |      |                                   |

| NUMBER IF INMATES BEGINNING | NUMBER IF INMATES ENDING | |
|-----------------------------|--------------------------|---|
| PREPARED BY | SIGNATURE | REVIEWED BY | SIGNATURE |
| | | | 0380 |

# RUSSELL COUNTY SHERIFF'S DEPARTMENT
## CORRECTIONAL UNIT _5750_
### DAILY SHIFT LOG

FROM 1900 TO 0100 THE 21ST DAY OF January 20 07 SHIFT D-NIGHT

SHIFT SUPERVISOR SGT. MOORE             CENTRAL Chadwick

BOOKING OFFICER Walden                  1st MALE POD N. BROWN

2nd MALE POD Andrews                    FEMALE POD Kitti

| ITEM | TIME | INCIDENT / MESSAGE / ACTION TAKEN |
|------|------|-----------------------------------|
| 1. | 1900 | C/o Chadwick relieved C/o Holmes from a u Central Control duties ; lamp test checked all secure. — |
| 2. | 1959 | Phenix City Car enter big gate. — |
| 3. | 2025 | Phenix City exit Vehicle Sally port. — |
| 4. | 2031 | C/o Wurst and 4 J3's out for trash Run. — |
| 5. | 2033 | C/o Wurst and 4 J3's Back inside from trash R. |
| 6. | 2041 | Phenix City enter big gate. — |
| 7. | 2103 | Phenix City P.D. Car exit Vehicle sally port. — |
| 8. | 2158 | Nurse McGinnis exits Lobby. — |
| 9. | 2300 | Nothing to Report at this time. — |
| 10. | 2305 | Perimeter check by C/o Wurst Begins. — |
| 11. | 2315 | Perimeter Check complete by C/o Wurst ; all secure. — |
| 12. | 23:23 | Phenix City P.D. Car enter big gate. — |
| 13. | 23:49 | One city unit exit sallypod. |
| 14. | 01:18 | C/o Smith Conducted Outside perimeter Check. |
| 15. | 01:25 | C/o Smith Completed Outside perimeter Check, all secure. — Back Gate All secure. — |
| 16. | 02:24 | Phenix City P.D. Car enter big gate. — |
| 17. | 02:49 | Phenix City P.D. Car exit Vehicle Sally port. — |
| 18. | 03:05 | SGT. Moore Reviewed C/o Chadwick's Log. — |

PAGE ___1___ OF _____ PAGES

PLG-001

| ITEM | TIME | INCIDENT / MESSAGE / ACTION TAKEN |
|------|------|-----------------------------------|
| 19. | 0327 | Phenix City P.D Car enter Big gate. — |
| 20. | 0341 | Phenix City P.D Car exit Vehicle Sally port. — |
| 21. | 0332 | Nurse McGinnis enter front Lobby. |
| 22. | 0347 | 1 Ambulance for J3 Pickard (HI) arrived through big gate. — |
| 23. | 0400 | 1 Ambulance exit Vehicle Sally port. — |
| 24. | 0520 | C/o Smith & 4 J3's out for trash Run. — |
| 25. | 0525 | C/o Smith & 4 J3's back in from trash run. — |
| 26. | 0549 | Phenix City P.D enter big gate. — |
| 27. | 0600 | Phenix City PD exit Vehicle Sally port |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| NUMBER IF INMATES BEGINNING | NUMBER IF INMATES ENDING | | |
|---|---|---|---|
| PREPARED BY | SIGNATURE | REVIEWED BY | SIGNATURE |
| A. Chadwick #23 | A. Chadwick | | 0305 |

# RUSSELL COUNTY SHERIFF'S DEPARTMENT
## CORRECTIONAL UNIT ___5750___

### DAILY SHIFT LOG

FROM __19:00__ TO __07:00__ THE __31__ DAY OF __Jan__ 20 _07_ SHIFT __D-Night__

SHIFT SUPERVISOR __Sgt Moore__    CENTRAL __Chadwick__

BOOKING OFFICER __Holder__    1st MALE POD __Brown D__

2nd MALE POD __Adams__    FEMALE POD __Kitt__

Cover: Yo Smith, Yo Richard Wint

| ITEM | TIME | INCIDENT / MESSAGE / ACTION TAKEN |
|------|------|-----------------------------------|
| 1 | 19:00 | Yo Kitt relieved Yo Powell from female pod duties, lamp test now secure, The female unit head count x=18, y=7-1, z=16 total =38, All females are out of lock down at this time. |
| 2 | 19:12 | J-3 McFough Tiah returned from S.O. to the unit |
| 3 | 20:28 | Yo Smith escorted Ellis Debra, Buington Tracy and Singletary Jennifer up to infirmary |
| 4 | 20:44 | Yo Smith escorted Ellis Debra, Livingston Tracy and Singletary Jennifer returned to the unit. |
| 5 | 21:01 | Yo Kitt passed out med. |
| 6 | 21:13 | Yo Brown D. escorted Osgood Shelly up to infirmary |
| 7 | 21:24 | Yo Brown D. escorted Osgood, Shelly returned to the unit |
| 8 | 21:25 | Yo Brown D. drop off med. for Resita Dives. at front door female. |
| 9 | 22:00 | All secure, nothing to report at this time |
| 10 | 23:00 | All females are lock down at this time. |
| 11 | 24:00 | All secure, nothing to report at this time. |
| 12 | 01:00 | All secure, nothing to report at this time. |
| 13 | 02:00 | All secure, nothing to report at this time. |
| 14 | 03:00 | All secure, nothing to report at this time. |
| 15 | 04:06 | Yo Chadwick arrived breakfast tray run |
| 16 | 04:18 | Yo Chadwick female feed complete. |
| 17 | 04:26 | All females are finish with breakfast tray, returned to lock down |
| 18 | 06:49 | Yo Chadwick escorted McFough Tiah up to S.O. for work detail |

PAGE ___1___ OF _____ PAGES

PLG-001

| ITEM | TIME | INCIDENT / MESSAGE / ACTION TAKEN |
|------|------|-----------------------------------|
| 19 | 06:00 | All secure nothing to report at this time |
| 20 | 07:00 | C/o relieved C/o Kitti from all female pod duties |
|    |       | Ingersoll (B5)    End of log — |
|    |       | |
|    |       | |
|    |       | |
|    |       | |
|    |       | |
|    |       | |
|    |       | |
|    |       | |
|    |       | |
|    |       | |
|    |       | |
|    |       | |
|    |       | |
|    |       | |
|    |       | |
|    |       | |
|    |       | |
|    |       | |
|    |       | |
|    |       | |

| NUMBER IF INMATES BEGINNING | NUMBER IF INMATES ENDING | | |
|-----------------------------|--------------------------|---|---|
| 38 | 38 | | |
| PREPARED BY | SIGNATURE | REVIEWED BY | SIGNATURE |
| C/o Kitti  S. 10 43 | C/o Kitti  S. 10 43 | Sgt. Li Son | Sgt. Li Son |

0323

*Smith*
*Wurst*

# RUSSELL COUNTY SHERIFF'S DEPARTMENT
## CORRECTIONAL UNIT 5750
### DAILY SHIFT LOG

FROM 1900 TO 700 THE 21 DAY OF Jan 20 07 SHIFT D-Night

SHIFT SUPERVISOR SGT. Moore _____ CENTRAL Chadwick

BOOKING OFFICER Walden _____ 1st MALE POD Brown

2nd MALE POD Andrew _____ FEMALE POD Kitts

| ITEM | TIME | INCIDENT / MESSAGE / ACTION TAKEN |
|------|------|-----------------------------------|
| 1. | 1855 | C/o Brown n relieved C/o Campbell of all duties in male pod 1. Lights Show Secure. |
| 2. | 1905 | C/o Wurst Came back to get slips and mail. |
| 3. | 1907 | C/o Smith ran headcount. |
| 4. | 2014 | All mops and Clean Stuff are out |
| 5. | 2137 | C/o Wurst Came back with 2 J3s for Male pod 2. |
| 6. | 2246 | C/o Wurst Came back with J3 Billy Pitzen to D-14 from D13. |
| 7. | 2300 | C/o Brown put all J3s back in lockdown |
| 8. | 2305 | C/o Smith ran headcount and C/o Wurst ran outside Check. |
| 9. | 1:07 | C/o Wurst ran headcount |
| 10. | 1:19 | C/o Smith ran Outside Check. |
| 11. | 2:30 | All J3s Still in lockdown all Clear. |
| 12. | 3:06 | C/o Smith Came back to give Shots. |
| 13. | 3:24 | Sgt. Moore came back to Sign log. |
| 14. | 4:08 | C/o Walden Called for J3 |

PAGE ___ 1 ___ OF _____ PAGES

| ITEM | TIME | INCIDENT / MESSAGE / ACTION TAKEN |
|------|------|-----------------------------------|
| 15. | 4.10 | C/o Smith ran trays to MPl. |
| 16. | 4:56 | Trays out and J3's back in |
|  |  | lockdown. |
| 17. | 623 | SGT. Thomas and C/o Wurst van |
|  |  | headcount . |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

| NUMBER IF INMATES BEGINNING | NUMBER IF INMATES ENDING | |
|---|---|---|
| PREPARED BY | SIGNATURE | REVIEWED BY | SIGNATURE |
|  |  |  | 0325 |

# RUSSELL COUNTY SHERIFF DEPARTMENT

## USE OF FORCE REPORT

DATE: 1-22-07 _____ TIME: 0325 _____ CASE # _____

LOCATION OF INCIDENT: Holding Cell One

SUSPECT'S NAME: Danny Wayne Pickard _____ SEX M _ RACE W _ DOB 5-4-57

ADDRESS: # 50 Norman, Seale AL 36856

CHARGE(S): Fugitive from Justice.

TYPE OF INCIDENT: Disorderly Conduct

TYPE OF FORCE USED: (✓) CHEMICAL WEAPON       ( ) HANDS ON
( ) OTHER RESULTING IN INJURY

IF CHEMICAL EFFECT: ( ) IMMOBILIZED SUSPECT   (✓) NO EFFECT

WAS SUSPECT INSTRUCTED HOW TO REMOVE THE CHEMICAL (✓) YES   ( ) NO   ( ) REFUSED

INJURY TYPE TO SUSPECT: N/A

HOSPITAL: Yes _____ DOCTOR: Yes

INJURY TYPE TO OFFICER: N/A

WITNESSES:

N/A
NAME _____ ADDRESS _____ PHONE

N/A
NAME _____ ADDRESS _____ PHONE

ANY RELATED REPORTS: ( ) I/O REPORT   ( ) ARREST REPORT

OFFICER USING FORCE:

NAME: Sgt. P. Moore _____ ID # 15

SUMMARY OF INCIDENT TO BE COMPLETED BY OFFICER USING FORCE: On 1-22-07 approx., 0315 HR. Sgt. P. Moore was posted in the Sgt. Pod conducting paperwork. R/O then heard inmate Danny Wayne Pickard hitting his head against the steel door. R/O exited Sgt. Pod in route to holding cell one. Upon arrival R/O observed inmate Pickard hitting his head against the door. R/O ordered inmate Pickard several times to stop hitting his head against the door, but he refused. R/O then called C/O Wayne Smith for backup. R/O ordered C/O Smith to open the door, and R/O applied a one second

Moments later, inmate Pickard started hitting his head against the steel door again.

R/O arrived to holding cell one and observed inmate hitting his head against the door again.

R/O observed inmate Pickard head was bleeding. R/O called for backup several times, but R/O couldn't wait, because inmate Pickard was bleding very bad.

SUPERVISORS NAME:  SSG. DANNY BUSSEY                              ID#  9011

SUPERVISORS REPORT OF INCIDENT:  UPON REVIEW OF THIS INCIDENT, I FIND SGT. MOORE USED MINIMAL NECESSARY FORCE TO GAIN CONTROL OF INMATE DANNY PICKARD. SGT. MOORE UTILIZED HIS CHEMICAL SPRAY IN AN ATTEMPT TO PREVENT INMATE PICKARD FROM FURTHER INJURING HIMSELF. THE CHEMICAL SPRAY BEING INEFFECTIVE, SGT. MOORE RESORTED TO USING HIS EXPANDABLE STICK WHEN INMATE PICKARD FAILED TO FOLLOW VERBAL COMMANDS. INMATE PICKARD COMPLIED AFTER BEING STRUCK ONCE WITH THE STICK. THERE WERE NO SERIOUS INJURIES TO INMATE PICKARD AS A RESULT OF THIS INCIDENT. INMATE PICKARD WAS TREATED AT SUMMIT HOSPITAL FOR A SELF INFLICTED INJURY. END REPORT.

NOTE TO SUPERVISOR:           This report must be completed and copies placed on the desk of the Sheriff and Chief Deputy immediately.  A report must be filed by each officer involved in the Use of Force incident.

R/O then open the door and let inmate Pickard out to prevent him from further injuring himself. Inmate Pickard then exit out of holding cell one, and ran into the property room screaming, "I'm going to kill myself." R/O then grab inmate Pickard right arm an attempted to place him on the ground, but he refused to comply. R/O then struck inmate Pickard one time with his stick on his lower leg and he complied. C/O Steve wurst arrived and assisted R/O with handcuffing inmate Pickard and escorting him to hold cell one. End of report

15

**EXHIBIT A – PART TWO**
**INMATE FILE OF DANNY WAYNE PICKARD**

| VICTIM | CELL # | DATE | TIME | SHIFT SUPERVISOR |
|---|---|---|---|---|
| R C J | | 1-22-07 | 0325 | Sgt. P. Moore |

| OFFENDER | CELL # | TYPE OF INCIDENT/OFFENSE |
|---|---|---|
| Danny W. Pickard | Holding (1) | Disorderly Conduct |

| WITNESSES | CELL # | WITNESSES ( OFFICERS) |
|---|---|---|
| **1.** | | N/A |
| **2.** | | |
| **3.** | | |

**NARRATIVE:**

On 1-22-07 approximately, 0315 HR. Sgt. P. Moore was posted in the Sgt. Pod conducting paperwork. R/O then heard inmate Danny Wayne Pickard hitting his head against the steel door. R/O exited Sgt. Pod in route to holding cell one. Upon arrival R/O observed inmate Pickard hitting his head against the door. R/O observed inmate Pickard hitting his head against the door. R/O ordered inmate Pickard    times to stop hitting his head against the door, but he refused. R/O then called C/O Wayne Smith for backup. R/O ordered C/O Smith to open the door, and R/O applied a one second of stream of (Freeze Plus P) chemical spray to prevent inmate Pickard from injuring himself. Momments later inmate Pickard started hitting his head against the door again. R/O arrived to holding cell one and observed inmate Pickard hitting his head against the door again. R/O observed inmate Pickard head was bleeding. R/O called for backup several times but R/O couldn't wait because inmate Pickard was bleeding very bad. R/O then open the door and let inmate Pickard out to prevent him from further injuring

*Continued*

| VICTIM | CELL # | DATE | TIME | SHIFT SUPERVISOR |
|--------|--------|------|------|------------------|
| | | | | |

| OFFENDER | CELL # | TYPE OF INCIDENT/OFFENSE | |
|----------|--------|--------------------------|--|
| | | | |

| WITNESSES | CELL # | WITNESSES ( OFFICERS) |
|-----------|--------|------------------------|
| 1. | | |
| 2. | | |
| 3. | | |

**NARRATIVE:**

injuring himself. Inmate "Pickard then exit out of holding cell one, and ran into the property room screaming I'm going to kill my self." R/O then grab inmate Pickard right arm an attempted to place him on the ground, but he refused to comply. R/O then pulled his stick and struck inmate Pickard one time on his lower thigh and he complied. C/O Steve Wurst arrived and assisted R/O with handcuffing inmate Pickard and escorting him to holding cell one. R/O the notified R/N McInnis and advised her to report the jail ASAP. R/N McInnis arrived, R/O and C/O Wurst escorted inmate Pickard to the infirmary for treatment R/N McInnis then advised inmate Pickard needed to be transported to the hospital for his injuries to his head. R/O dispatched EMS to the jail. Upon arrival EMS placed inmate Pickard on a bed   and transported him to Summit hospital for treatment. End of report

Sgt. _____ 15

| I.D. NO. 245939 | | | PRISONER'S JAIL RECORD | | | NO. 42 | |
|---|---|---|---|---|---|---|---|
| NAME Danny Wayne Pickard | | | | ALIAS OR NICKNAME | | DATE 1-18-07 | TIME 2:23V ☐AM ☑PM |
| ADDRESS #50 Norman, Seale, AC 36856 | | | | ARRESTING OFFICER Kin), S | | | |
| DATE OF BIRTH 5-4-57 | PLACE OF BIRTH Wuleshoe, TX | | | SCARS OR MARKS | | | |
| AGE 49 | RACE W | EYES Bro | HAIR Blk | SEX M | HEIGHT 6'0 | WEIGHT 185 | COMPLEXION |
| OFFENSE Fugitive from Fugitive (Okaloosa, FL) | | | | STATUS Dist | | | |
| | | | | HOLD FOR | | | |
| HOW RELEASED | DATE | TIME | RELEASING OFFICER | | | | |
| S.S. NO. 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 | | | OCCUPATION | | | | |
| CTOT | BOND | F / P | | PHOTO | | B/O | |
| | NB | | | | | Russell | |
| | | | | | | | |
| | | | FAX 850 609-2086 waiver | | | | |
| NCIC- Clen | | | 850-651-7400 | | | | |

Leave message. Debbie Nichols

BOOKING #: 0701/3507



# RUSSELL COUNTY SHERIFF'S DEPARTMENT
## CORRECTIONS DIVISION
### INMATE GRIEVANCE FORM

NOTE: All grievances must be completed in ink. If additional pages are needed, plain lined paper may be used

| Submitted By: | | Received By: |
|---|---|---|
| Inmate's Name (last name first) Pickard Danny W. | CO's Name & ID Number C/O Tarver  37 | |
| Housing Assignment C-22 | Shift Assignment | |

### PART "A" INMATE REQUEST

Grievance Explained on Next 5 pages

numbered I - V

If I Dont get A Response/ can I Appeal

Grievant (Inmate) Signature: *Danny Pickard*

### PART "B" - RESPONSE

Date of Response _____ Divisional Grievance Officer _____ ID Number _____

NOTE: If you are dissatisfied with this response, you may appeal directly to the Administrator of Corrections. Your appeal must be filed within 72 hours, excluding Saturdays, Sundays, and legal holidays, of the time/date you acknowledge receipt of this response.

### PART "C" - RECEIPT

Return To _____    Date _____ Time _____

Submitting Inmate _____    Receiving Shift Supervisor _____

### PART "D" - RETURN RECEIPT

Returned To _____    Date _____ Time _____

Witness _____    Submitting Inmate _____

### APPEAL NOTIFICATION

I hereby give notice of appeal of the findings of the Divisional grievance Officer. I have attached to this notice of appeal a statement of the basis for my appeal.

Appeal Received By _____    Date _____ Time _____

Submitted By _____    Copy Received By _____

Danny Pickard
C92
Russell County                    I

Continued Grievo

Date 1-22-07,

*    I HAD BEEN DRUNK for about 4 week, I
WAS beginning to sober up & started going into
DTs. I CALLED AN AMBULANCE out to my self. They
Sent the Russell Co. police out first, then the Ambul-
ance, I WAS tAKEN to Summit Hospital, I'm sure
the Doctors there hadnt had to much experience
with DTs, they were not giving me enough
medication & I went into DTs and got Rowdy
Scared them & they called Russell Co. BACK out
there. They found AN OLD WARRANT probation VioLATION
From FLA. on me, So I Ended up in Russell County
JAiL rather thaw Summit HOspital.
        This is what Happened starting 1/22/07
*    I went into DTs right before we got BACK to the JAiL,
I Dont know what I could of been Imagining. but
when we got inside I remember being Kicked, Kneed
Hit, pulled & sLAmmed around, while my cloths were
being torn off. I GOT 2 Front teeth during this
beating Broke off. I WAS drug around nAKED in Front
of the Female stAff, and thrown in a cold Holding
Cell NAKED. EvenTually after I settled Down, I
went into DTs AGAIN, I thought I heard sirens &
went to see what it was, I pushed on the door
& IT SLID open, I wAlked outside of it & there
WAS Sgt. moore! I Turned & wAlked toward him
I Thought He WAS there to help me.

Continued Grievance

* ALL of A sudden I get saturated in Mace.
Then I feel A deadening PAIN Across my
eye, He HAS Hit me with his Steal Club,
in All the Blood, Mace, slobber, I cant see or
hear Anything! The cut is 3/4 inch wide & 6
inches Long, around My Right eye. I
Immidiately Hit the floor begging him, not to hit
me any more. But it wasn't enough as FAR As he was
concerned, He kept spraying & swinging his bar. I
kept backing away, Cryin, couldn't see or hear hardly
anything. Blood steady flowing, He backed me in a
closet of some kind. I grabbed at the door, trying to
close it but he kept sticking that bar in between
it, STILL spraying Trying To hit me again. I found
some kind of Handle, kept poking at his club trying to
get him to go away. I guess with All the Bleadi[ng]
Mace, and fear I passed out. I CAN remember
thinking there going to kill me now, and started
praying. the whole time moore was on my back
still trying to spray me again with his mace.

Then the sheriff came in I Believe. they
thru me down on the floor & Hand cuffed Me
from the back, Toting me Like a suit case they
Almost Tore my Arms Loose. Kept banging my
knees Trying To get me to walk. Like I could After
these 2 Beatings. They continued to tote me out
of the JAIL & was thrown in a VAN.

Continued Grievance

I was then hauled off to another jail, was toted in there to the nurse on duty. The sheriff asked her about sewing it up, & she told him she couldnt do anything with it, the cut was to wide & deep, so she was told to call another ambulance out to me. So we went back to the hospital. We went in & out the back door. Im not sure if I even signed in. They put about 25 staples in my head & around my eye. They dident even take time to scan to see if there were other problems. I guess the van was sent for a cleaning because when we left the hospital we were in the sheriffs car. When we got to the jail the sheriff jerked me out of the car drug me across his trunk & told me if I said anything he would take off the other side of my head. As we entered the jail I was stripped again & put in the holding cell, sick, cold, naked & sore. I was left this way for 6 days. the nurse & the other officiers that cleaned me up at the other jail, held me down & cut my hair all off for no particular reason. Washed most of the blood off put a piece of a bandage on me, gave me clean pants & we waited on the ambulance. I have no idea why all this happened, Im not violent in any way & dont fight.

Pictured
IV

Continued Grievance.

\* Since all this has happened, I have been put in the back in Cell C. I have continued to try to get medical attention to no avail. I just keep getting the run around, Can't get no help.

Since the beating I have servere Headacks Dizziness. My memory is slipping more & more each day, My speech is slowed from the difficulty in remembering simple words to complete a sentence with. My nerves are ruined, Im always shaking, Quick & jumpy - I dont sleep hardly any. Anxiety & Fear are over whelming. I broke off the other piece of my tooth, that was Left From the other beating, while eating dinner the other nite. Now I have an extreme tooth ach, I cant get to the dentist to get it pulled either.

My Right eye brow is ¼ inch Lower than the Left. When ever I see Sgt. moore or hear him call my name I can see or hear the animosity in his tone, I am scared of having a Replay of this happening again. This is the only way I know of protecting my self, is Letting someone know what they done. & try to make sure it doesnt happen again. Also to get the medical attn. I still need.

LAST of Grievance

* Chief ALEXANDER, I WANT TO personnally appeal to your Professionalism and on you being a compansanite MAN, I WAS BEATEN unGODly For no reason.

Every Time I hear Sgt-Moore's voice, I shake in Fear, Him and some of the other officier's seem to be holding a grudge.

I think that appropriate Actions to be taken would be for Sgt-Moore & all Accomplishing Officiers be suspended with out Pay until Futher Investigation can be made. I ALSO know they were trying very hard to cover all this up.

I ALSO SIR INTEND ON SELF Gradification thru A 1983 Federal Law suit Form, I would also be grateful For your help with this of Coarse not to Exceed your duty & obligations to the sheriFF and to your Jail.

Thank you For your help
and your time to read
this griveance

D&N, Pickard
C22
2/24/07

## INMATE REQUEST SLIP

_C 2N_

LOCATION

Name Danny Pickard    Date 2/27/07

☐ Telephone Call        ☐ Time Sheet

☐ Special Visit         ☐ Personal Problem        ☒ Other

Briefly Outline Your Request.  Give to Jailer

I wrote a Request Yesterday for A 1983 Federal Law Suit Form, also with a grievance could you let me know if they got to where they were suppose to get. & could I get a signed copy.

(Do Not Write Below This Line – For Reply Only)

CONTACT YOUR ATTORNEY

SGT. _____

Approved _____ Denied _____ Collect Call _____

All request Will Be Routed Through The Sergeant Over The Jail, Then Forwarded To Those The Request Is Directed.

☐ Lieutenant        ☐ Chief Deputy        ☐ Sheriff

Date 2/27/7    Time Received 1900

Jailer _____

# INMATE REQUEST SLIP

Name _Danny Pickard_    Date _3/10/07_    LOCATION

☐ Telephone Call    ☐ Time Sheet

☐ Special Visit    ☐ Personal Problem    ☑ Other

Briefly Outline Your Request.  <u>Give to Jailer</u>

_Im still wondering what is the correct procedure to get a 1983 Federal Law suit form! Ive tried ever option available to me. Would you be so kind to let me know what I need to do to acquire one of these forms Thanks D. Pickard_

<u>(Do Not Write Below This Line</u> – For Reply Only)

_CONTACT YOUR ATTORNEY_

_SGS_

Approved _____    Denied _____    Collect Call _____

All request Will Be Routed Through The Sergeant Over The Jail, Then Forwarded To Those The Request Is Directed.

☐ Lieutenant    ☑ Chief Deputy    ☐ Sheriff

Date _____    Time Received _____

# INMATE REQUEST SLIP

_C 22_
LOCATION

Name _Danny Pickard_    Date _02/26/07_

☐ Telephone Call    ☐ Time Sheet

☐ Special Visit    ☐ Personal Problem    ☑ Other

=================================================

Briefly Outline Your Request.  _Give to Jailer_

I WANT TO REQUEST A 1983
FEDERAL LAW SUIT FORM &
ID LIKE TO get one this week
please.

(Do Not Write Below This Line – For Reply Only)

3/1/07- Referred to S. Sgt. Bussey -
Sgt. Ogland -

CONTACT YOUR ATTORNEY.

SGS

=================================================

Approved _____  Denied _____  Collect Call _____

=================================================

All request Will Be Routed Through The Sergeant Over The Jail, Then
Forwarded To Those The Request Is Directed.

☐ Lieutenant    ☐ Chief Deputy    ☐ Sheriff

Date _2-25-07_    Time Received _2000_

Jailer _K/Ninh_

2-25-07

# RUSSELL COUNTY SHERIFF'S DEPARTMENT
## CORRECTIONS DIVISION
### INMATE GRIEVANCE FORM

NOTE: All grievances must be completed in ink. If additional pages are needed, plain lined paper may be used

16

| Submitted By: | Received By |
|---|---|
| Inmate's Name (last name first) PICKARD, Danny W. | CO's Name & ID Number C/O Kline 40 |
| Housing Assignment C-22 | Shift Assignment B-Night 2-25-07 2000 |

### PART "A" INMATE REQUEST

I have Tried over & over to get Medical treatment for these miagrain HeadAcks, Lost of memory, anxiety, neverousness & especially Lost of sleep Because of these things. I need to see a Medical Doctor, I need help with all these Problems

Grievant (Inmate) Signature Danny W Pickard

### PART "B" - RESPONSE

3/1/07- Referred to Staff Sgt. Bussey for Investigation Lt. Haread -

Date of Response _____ Divisional Grievance Officer _____ ID Number _____

NOTE: If you are dissatisfied with this response, you may appeal directly to the Administrator of Corrections. Your appeal must be filed within 72 hours, excluding Saturdays, Sundays, and legal holidays, of the time/date you acknowledge receipt of this response.

### PART "C" - RECEIPT

Return To _____ Date _____ Time _____

Submitting Inmate _____ Receiving Shift Supervisor _____

### PART "D" - RETURN RECEIPT

Returned To _____ Date _____ Time _____

Witness _____ Submitting Inmate _____

### APPEAL NOTIFICATION

I hereby give notice of appeal of the findings of the Divisional grievance Officer  I have attached to this notice of appeal a statement of the basis for my appeal.

Appeal Received By _____ Date _____ Time _____

Submitted By _____ Copy Received By _____

To Brogdon

1420

# RUSSELL COUNTY SHERIFF'S DEPARTMENT
## CORRECTIONS DIVISION
### INMATE GRIEVANCE FORM

NOTE: All grievances must be completed in ink. If additional pages are needed, plain lined paper may be used

| Submitted By: | Received By: |
|---|---|
| Inmate's Name (last name first)<br>PICKARD, DANNY, WAYNE | CO's Name & ID Number |
| Housing Assignment C-22 | Shift Assignment |

### PART "A" INMATE REQUEST

ACCOMPANING Pages I—V will Explain the Extent of This Grievance - 02/26/07

Grievant (Inmate) Signature Danny Pickard

### PART "B" - RESPONSE

Date of Response _____ Divisional Grievance Officer _____ ID Number _____

NOTE: If you are dissatisfied with this response, you may appeal directly to the Administrator of Corrections. Your appeal must be filed within 72 hours, excluding Saturdays, Sundays, and legal holidays, of the time/date you acknowledge receipt of this response.

### PART "C" - RECEIPT

Return To _____  Date _____ Time _____

Submitting Inmate _____  Receiving Shift Supervisor _____

### PART "D" - RETURN RECEIPT

Returned To _____  Date _____ Time _____

Witness _____  Submitting Inmate _____

### APPEAL NOTIFICATION

I hereby give notice of appeal of the findings of the Divisional grievance Officer. I have attached to this notice of appeal a statement of the basis for my appeal.

Appeal Received By _____  Date _____ Time _____

Submitted By _____  Copy Received By _____

Danny Pickard
Russell Co. C.22

APPEALANCE
Continance

Date - 1/22/07 I had been drunk for a week or so, I was beginning to sober up & started going into DT's I called an Ambulance out to my self, They sent Russell Co Police out First, then the Ambulance. I was take to the Hospital "Summit". The doctors were not Familiar A person going into DT's They were not giving me enough Medication, so I went into DT's Had one of those Fits & scared them. The doctors called Russell co. back out there. They found an old probation vio. warrant on me in FLA, I ended up having this other Lil episode in Russell County Jail instead of Summit Hospital.

### After Leaving Hospital

\* I went back into DT's right before we got to the Jail. I Dont Remember what episode I was seeing this time.

But I Remember being kicked, kneed, Beaten, pulled & slammed, around while my cloths were being torn off of me. I Lost 2 of my Front teeth during this beating. Naked & not understanding what they wanted, they drug me around naked in Front of all the female staff, Drug & thrown on a cold concrete Floor. Eventually after I got settled a bit, I went into DT's again. I thought I heard sirens & was going to see what it was about.

I pushed opened the cell door, I Dont know now why it wasnt Locked, But It opened easily, I walked out side the door & there was Sgt. Moore, I turned & started toward him, thinking He was there to save me. All of a sudden he slings out his mace, & His steal night club.

Pickard
02/26/07

"Grivance continued"

* He sprays my eye's & mouth full of mace, & then the
next thing I know he knocks fire from my Rt eye.
Theres blood, mace, slobber, & I cant see or hear any
thing. The cut is probably 3/4 inch wide & 6 inch around
my right eye. I immediately hit the floor on
my knee's begging him not to hit me any more.
      But it wasnt enough for him, He kept spraying
& swinging & I kept backing away & crying, couldnt
breath, see or hear. Just spots here & there.
Blood steady flowing, backed me in some kind of
closet. I grabbed the door & tried to close it. but
he kept pulling on the door & sticking that bar in
it to keep me from closing it, I found a short Booom
handle & was pushing at his bar & trying to close the
door,
      I guess all the bleeding, mace, and fear I
shut down, passed complete out. I can remember
thinking there going to kill me now for sure. While
I was praying.
      When I came to Sgt Moore was still on my back
trying to spray more mace in my face. Then I
believe it was the sheriff that came in, they thru
me on my back in the floor, Flipped me & Hand
cuffed me from behind,
      Toting me like a suitcase they about tore my arms
loose. Kept hitting my knee's, Trying to get me to walk.

* Like I could walk after such a beating. They escorted me out of the jail and thru me in the back of a van, I was then hauled off to another jail, was toted in there, & the other nurse. The sheriff wanted her to sew my head up, but she told him it was to deep & to wide, so the sheriff told her to call an ambulance out there. So off to summit I go again, we went in and out the back door I dont even know if it was recorded or not.

They put about 25 staples across my eye. They dident even scan it to see if there was any other damage. When we left the hospital I guess the van had to be cleaned because we left the hospital in the sheriffs car. When we got back to the jail I was stripped & shaved in the holding cell again left this way for six days, cold, naked, SICK/SORE!!

The nurse at the second jail, the one the nurse cleaned me up & called an ambulance to me

While she & the officers held me down to clean me, they also cut off all my hair, trying to cover up how bad I had been beaten, also the sheriff insinuated I had this deep ass gash over & around my eye because I'D done it beating my head aginst the door, which is total bull I tried to tell the doctors & they dident believe me at all, they just let me go.

Pickard          C 22                                    Grivance Continuau

\* Since all of this has happened, I have been
placed in the back in Cell C. I have desperately
tried to get medical atten. but to no avail
I just continue to get the run around. Cant
get any relief.

I now have miagrain head acks, Dizziness
and my memory is worse Day By Day. My speech
is geting worse due to nerves and anxiety and
the lost memory of words to use in sentewses.

almost studdaring because of this. I dont sleep
hardly any. the anxiety and fear are over whelming

I lost 2 teeth in the first Beating, last
nite I Broke off the lil stub + cant drink
hardly anything, or breath thru my mouth.

Theres a terrible scar above my right eye
but I have to admit it doesn't look near as bad
as the cut did. My right eye brow is $\frac{1}{4}$ inch
lower than my left all my hair is gone,

They are letting Sgt Moore do count at nite
+ everytime, I see him or hear him call my
name, I get sickly at my stomack. you can
hear how he has it in for me, This is the only
way I know how to protect my self or try
to get some medical attn. before its
irreversble. I dont know How bad this could get
or how long it could last.      D.W. Pickard

Pickard
C22

Grievance

\* Chief Alexander, I want to personnally appeal to your professionalism and on you being a compasonite man. I was beaten ungodly, For no reason. Every time I Either see or hear Sgt. Moore, I Tremble in Fear He & other officers seem to still have it in for me.

Please remember all this happened for a old Probation violation in FIA. I hadent at this time even been accused of a crime in your state.

I think that there suspension with out pay would be Appropiate I also wanted to inForm you I Intend to get self Gradification thru a 1983 Federal Law Suit Form! I will Be grateful for your help, Knowing you have obligations to the SHERIFF and your JAIL.

Thank you
JW Pickard

**EXHIBIT A – PART THREE**
**INMATE FILE OF DANNY WAYNE PICKARD**

# INMATE REQUEST SLIP

C 22

LOCATION

Name _Danny Pickard_    Date _2/28/07_

☐ Telephone Call    ☐ Time Sheet

☐ Special Visit    ☐ Personal Problem    ☑ Other

Briefly Outline Your Request. __Give to Jailer__

I have sent in 3 request forms for
a federal law suit form 1983.
I cant get an answer, & also sent
in an Grievance with attachable
5 sheets could you see if it get to
you also.         Thank you _D.W. Pickard_

---

(Do Not Write Below This Line – For Reply Only)

INMATE PICKARD GIVEN THE ADDRESS TO THE CLERK

FOR THE US DISTRICT COURT OF MIDDLE ALABAMA.

_SRB_

Approved _____    Denied _____    Collect Call _____

All request Will Be Routed Through The Sergeant Over The Jail, Then
Forwarded To Those The Request Is Directed.

☐ Lieutenant    ☑ Chief Deputy    ☐ Sheriff

Date _3-1-07_    Time Received _2015_

Incident Number: SL0700289     Nature: Forgery          Incident Date: 02/27/07

Name:                      Date: **:**:** **/**/**

Contact Supplement

SL0700289

01/17/07

1200 hours

Report by: Investigator Stanley King

On 01/17/07, a Monday, at around 1200 hours, Investigator King was contacted by Judy Flowers (investigator) with the CB&T of Columbus (East Alabama). Flowers indicated that Jeff Starling signed four Affidavit of Forgery on checks that was endorsed and cashed on his CB&T checking account at CB&T Bank of Russell branch located at 1413 280 By Pass, Phenix City, Alabama.

The Affidavit of Forgery indicated that he didn't received no part of the proceeds of the said checks or benefited in any way by having the check negotiated.

Flowers indicated that that Starling filed an incident report with our agency on 01/15/07 regarding the forgery. Flowers stated that Starling reported that between 12/16/06 and 12/30/06, Danny Wayne Pickard stayed at the Starlings residence of 25 Pine Valley Court, Ft. Mitchell, Alabama to care for Starlings brother who was blind in a wheel-chair. Starling had left the checks on the coffee table in the living room. Checks were taken from the check book. Pickard had wrote each checks and forged Starling signature, totalling up to $3,570.00. Account# 062201591 538744.

Flowers indicated that she has video of Pickard presenting and endorsing the checks at CB&T at 1413 280 By Pass and his thumb print on the checks.

Flowers indicated that she wanted to sign warrant against Pickard for the offense.

Inv. King later met with Flowers at her office located down town Columbus. Inv. King collected four original checks with a thumb print on each made payable to Danny Pickard and endorsed Jerry L. Starling. Check numbered 110 was written on 12/18/07 in the amount of $400.00; # 147 written on 12/27/06, in the amount of $800.00; #141 written on 01/02/07, in the amount of $900.00 and #145 written on 01/05/07, in the amount 4870.60.

Inv. King collected each video clip of the suspect presenting the check at CB&T of Russell County.
------------------------------------------------------------------------
Incident Number: SL0700289     Nature: Forgery          Incident Date: 02/27/07

Name: King, Stanley     Date: 11:06:45 01/29/07

Locating Pickard and discovering that he had an outstanding warrant

SL0700289

02/18/07

0900 hours

Report by: Investigator Stanley King

On 02/18/07, Investigator King search the emergency 911 cad system to discover that Danny Pickard was taken to Summit Hospital on 01/15/07, for alcohol poisinous.

Inv. King had dispatch to run a criminal history on Pickard and upon returning it showed that Pickard had a outstanding arrest warrant out Okaloosa County, Florida for Violation of Probation, charges: during state of emergency, count.2: Fraud Swindle-Obtain Property Under 20000; Fraud Impersonating Contractor during state of emergency.

Inv. King contacted Okaloosa County Sheriff's Department via telephone (850) 651-7432 and spoke with Nina Hill concerning Pickard. Hill confirmed that Pickard has an active probation violation warrant for the above said charges and they would extradite.

Inv. King type a Fugitive from Justice Affidavit and Arrest Warrant against Danny Pickard for original charge of Violation of Probation from the County of Okaloosa, Florida.

Inv. King then met with Judge Eric Funderburk, district court Judge of Russell County where Inv. King swear to this arrest warrant.

Inv. King then went to the Summit Hospital and met with Register Nurse, Syevia Thomas on the third floor of the hospital. Thomas stated that Pickard was admitted in the hospital on 02/15/07 for alcohol piosinous and was in stable condition. Administration contacted Pickard Physician, Valentine who released Pickard in the care of Inv. King. The hospital provided Inv. King with the Georgia driver's license of Pickard in which the driver's license number and signature was a match on the checks that were forged. Pickard photograph from his license match the person presenting the checks at CB& Bank of Russell County.

Pickard was that he was under arrest for charge of violation of probation from Okaloosa, Florida as well for questioning in a forgery investigation. Pickard appeared confused and noded his head. Inv. King didn't interview Pickard at this time due to his condition. Pickard was processed on the warrant and released to booking where he was placed on medical observation.

Incident Number: SL0700289     Nature: Forgery          Incident Date: 02/27/07

Name: King, Stanley     Date: 17:03:48 02/27/07

Interview of Danny Wayne Pickard

SL0700289

01/24/07

1317 hours

Report by: Investigator Stanley King

On 01/24/07, Investigator King escorted Danny W. Pickard from the Russell County Jail and placed him in Inv. King office where he was interviewed concerning the investigation of a forgery (4-counts).

Danny W. Pickard was advised of his Adult Advice of Rights by means of a standard waiver of rights form in which he acknowledge and signed the form indicating the same.

The following relevant pertinent information was obtained during the interview of Pickard:

Pickard admitted that he cashed all the checks on Starling's CB&T East Alabama checking account. The CB&T branch in Columbus, Georgia and the branch on Hwy 431 North. Pickard admitted that the person in the video surveillance at the CB&T bank at Hwy 431 was him presenting and endorsing the check. Pickard stated that Starling paid him for remolding work he did on his residence and to care for Starling's brother who was parallelized from the waist down and blind. Pickard stated that he gotten Starling's brother out of bed and bath him.

Pickard further admitted that he Starling wrote and singed every check that he cashed. Pickard stated that he endorsed the back of check and placed his thumb print on the checks.

For further details of interview refer to cassette tape which will be placed in this case file.

------------------------------------------------------------------------------

--------------------------------------------
Responsible LEO:


--------------------------------------------
Approved by:


--------------------------
Date

```
 03/20/07                    Russell County Jail                        424
 12:55                         Deputy Report                  Page:     1

 Incident Number:  SL0700289
 Nature:  Forgery                      Case Numbers:

   Addr:  25 Pinevalley Circle              Area:  SOUTH  Sheriff's Patrol - Sou
   City:  Ft. Mitchell   St: AL  Zip:  36856    Contact:  Deputy Smith

 Complainant:     115279      Alert Codes:

   Lst:  Smith                       Fst: Alfonso       Mid:
   DOB:  **/**/**  SSN:     -   -   Adr:  Russell County Sheriff's Dept.
   Rac:     Sx: M Tel: (   )   -    Cty:  Phenix City     St: AL Zip: 36867


 Reported:  FORG    Forgery/Counterfeiting
 Observed:
  Offense
    Codes:  2501    Forgery-Checks

 Circumstances:

 Responding Officers:  Smith,Alfonso    5714
                       Williford, Jody   5709
 Rspnsbl Officer:  King, Stanley    Agency:  RCSO
     Received By:  Ralston, Pamela  Last RadLog: 17:43:56 01/15/07    CMPLT
     How Received:  R   Radio              Clearance:  S5   Incident Report Take

   When Reported:  16:51:51 01/15/07      Disposition: CAA  Disp Date: 01/25/07

 Occurrd between:  16:51:51 01/15/07      Judicial Sts:
             and:  16:51:51 01/15/07       Misc Entry:  INV

 Modus Operandi:
       Factor          Description              Method

 INVOLVEMENTS:
 Date      Description                        Relationship
 --------- ----------------------------------- -------------------------
 01/24/07   Booking#: 070119003                Arrest/Offense
```

```
03/20/07                    Russell County Jail                        424
12:55                        Deputy Report                    Page:     2

                            Narrative Section
--------------------------------------------------------------------------------
                SL0700289
```

          On 01-15-07 Deputy A. Smith made contact with Jerry Starling who
advised Danny Pickard, a tenant of his living at 50 Norman Drive, stole
six checks from his house. Starling advised between 12-16-06 and
12-30-06 Pickard stayed at Starlings residence at 25 Pine Valley Circle
and took care of Starlings elderly brother for several days. Starling
advised he left his checkbook on the coffee table in the livingroom and
checks were taken from the checkbook from the back. Starling advised
Pickard wrote each check and signed Starling's name. All the checks
total up to $3,570.00. Starling advised he would notify the CB&T bank
tomorrow. The account number is 062201591 538744. No further action
taken at this time.


```
----------------------------------------------
Responsible LEO:


----------------------------------------------
Approved by:


---------------------------
Date
```

```
03/20/07                        Russell County Jail                          424
12:55                             Deputy Report                     Page:     3

                                 Booking Section
----------------------------------------------------------------------------
Booking Number: 070119003
   Name Number:    245939       Alert Codes:
Lst: Pickard                        Fst: Danny           Mid: Wayne
Addr: 50 Norman Dr                              Phone: (706)289-6439
City: Seale            ST: AL  Zip: 36856   DOB: 05/04/57   SSN: 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

     Location: JAIL-JAIL-JAIL-BLKC-22
Tmp Location: JAIL-JAIL-JAIL-BLKC-22
Booking Date: 01/19/07

Inmate Property Taken:
Item       Description                  Qty In  Date Rcvd   Loctn  Csh  Receipt #
---------- ------------------------- ------ ---------- ----- --- ---------
```

```
03/20/07                    Russell County Jail                        424
12:55                         Deputy Report              Page:    4

                          Arrest and Offense Section
--------------------------------------------------------------------------------
Arrest Number: 1
        Time/Date: 02:49:56 01/19/07     Agency: RCSO          Age at Arst: 49
        Location: 4401 River chase      Officer: King, Stanley  Arrest Type: CCRT
            Area: CITY                 Reference:               Disposition: ADH

Offense Information:  BFfRO:          Sentenced: No   Offense Number: 070000871
            Statute: 13A-9-3    2589                       NCIC:  2589
            Offense: 2589  Forgery 1,2,3      Offense Reference:  WR07-242
       Offense Type: STAT               Offense Area Code:  CITY
        Crime Class: CF                  Related Incident:  SL0700289
   Law Jurisdiction: ALL                       Entry Code:  CRIM
   Offense Location: 4401 River chase         Court Code:  RCD1
  Offense Time/Date: 02:49:56 01/19/07   Off Judicial Status:  PRP
     Billing Agency: RCSO              Offense Disposition:  PSP
  Billing Beg Tm/Dt: 23:43:29 01/23/07     Disposition Date:  **/**/**
          End Tm/Dt: **:**:** **/**/**  Sentencing Judge:
   Alcohol/Drug Invl:                   Sent. Time/Date: **:**:** **/**/**
                                        Sent. Components:


Comments: added on 1-23-07
```

```
03/20/07                    Russell County Jail                        424
12:55                         Deputy Report                  Page:     5


Offense Information:   BFfRO:         Sentenced: No    Offense Number: 070000872
           Statute:   13A-9-3    2589                         NCIC:    2589
           Offense:   2589  Forgery 1,2,3       Offense Reference:    Wr07-241
      Offense Type:   STAT                       Offense Area Code:   CITY
       Crime Class:   CF                          Related Incident:   SL0700289
   Law Jurisdiction:  ALL                               Entry Code:   CRIM
  Offense Location:   4401 River chase               Court Code:      RCD1
  Offense Time/Date:  02:49:56 01/19/07      Off Judicial Status:     PRP
     Billing Agency:  RCSO                    Offense Disposition:     PSP
 Billing Beg Tm/Dt:   23:43:29 01/23/07          Disposition Date:    **/**/**
        End Tm/Dt:    **:**:** **/**/**        Sentencing Judge:
  Alcohol/Drug Invl:                         Sent. Time/Date: **:**:** **/**/**
                                             Sent. Components:


Comments: added on 1-23-07
```

```
03/20/07                     Russell County Jail                         424
12:55                         Deputy Report                    Page:      6


Offense Information:  BFfRO:            Sentenced: No    Offense Number: 070000873
            Statute:  13A-9-3    2589                           NCIC:  2589
            Offense:  2589  Forgery 1,2,3          Offense Reference:  WR07-240
       Offense Type:  STAT                         Offense Area Code:  CITY
        Crime Class:  CF                            Related Incident:  SL0700289
   Law Jurisdiction:  ALL                                 Entry Code:  CRIM
   Offense Location:  4401 River chase                     Court Code:  RCD1
  Offense Time/Date:  02:49:56 01/19/07        Off Judicial Status:  PRP
      Billing Agency:  RCSO                     Offense Disposition:  PSP
  Billing Beg Tm/Dt:  23:43:29 01/23/07          Disposition Date:  **/**/**
         End Tm/Dt:  **:**:** **/**/**          Sentencing Judge:
   Alcohol/Drug Invl:                        Sent. Time/Date:  **:**:** **/**/**
                                             Sent. Components:


Comments: added on 1-23-07
```

```
03/20/07                      Russell County Jail                          424
12:55                          Deputy Report                    Page:      7


  Offense Information:   BFfRO:          Sentenced: No    Offense Number: 070000874
            Statute:     13A-9-3    2589                         NCIC:   2589
            Offense:     2589   Forgery 1,2,3         Offense Reference:  WR07-243
       Offense Type:     STAT                         Offense Area Code:  CITY
         Crime Class:    CF                             Related Incident:
    Law Jurisdiction:    ALL                                 Entry Code:  CRIM
   Offense Location:     4401 River chase                    Court Code:  RCD1
  Offense Time/Date:     02:49:56 01/19/07          Off Judicial Status:  PRP
      Billing Agency:    RCSO                       Offense Disposition:  PSP
   Billing Beg Tm/Dt:    23:43:29 01/23/07            Disposition Date:   **/**/**
         End Tm/Dt:      **:**:** **/**/**          Sentencing Judge:
    Alcohol/Drug Invl:                              Sent. Time/Date: **:**:** **/**/**
                                                    Sent. Components:


  Comments: added on 1-23-07
```

```
03/20/07                    Russell County Jail                         424
12:55                         Deputy Report                   Page:     8


Offense Information:  BFfRO:           Sentenced: No    Offense Number: 070000647
          Statute:  Fugitive                            NCIC:
          Offense:  FUGI   Fugitive From Justi Offense Reference:
     Offense Type:  STAT                      Offense Area Code:  CITY
      Crime Class:  OT                        Related Incident:
  Law Jurisdiction:  ALL                          Entry Code:  CRIM
 Offense Location:  4401 River chase               Court Code:  RCD1
Offense Time/Date:  02:49:56 01/19/07      Off Judicial Status:  PRP
    Billing Agency:  RCSO                   Offense Disposition:  PSP
 Billing Beg Tm/Dt:  02:50:52 01/19/07         Disposition Date:  **/**/**
        End Tm/Dt:  **:**:** **/**/**       Sentencing Judge:
  Alcohol/Drug Invl:                        Sent. Time/Date: **:**:** **/**/**
                                            Sent. Components:
```

Comments: oklaloosa, fl







03.20.2007

# INMATE REQUEST FORM

Prentiss Griffith Detention Facility

C-22
LOCATION

Name _Danny Pickard_ Date _3/22/07_

# MEDICAL

Nature of complaint or illness:

Mrs Riley, I have asked about getting something to keep the Elavil & the other Medicine I take from making me sick. Please answer this

Sign here for consent to be treated by health staff: _D Pickard_

## (Do Not Write Below This Line – For Reply Only)

Referred to Mrs. Pelfrey 3/23/07 If meds are making you sick then EAMH needs to be contacted and told and possibly change your medications.

DOCTOR ☐    DENTIST ☐    OTHER ☐

Date _03/22/07_ Time Received _20:30_

Officer _M.E. Ennis RN_

# INMATE REQUEST FORM
### Prentiss Griffith Detention Facility

C-22

LOCATION

Name_Danny Pickard_    Date_3/22/07_

## MEDICAL

Nature of complaint or illness:

I've sent request to get my tooth pueled its nerves are showing & cant drik cold drinks or breath thru my mouth ewithout pain, how long dois it take to go to the dentist here I told you about this a month ago I've been patient but enough is Enoug

Sign here for consent
to be treated by health staff:_Danny Pickard_

---

**(Do Not Write Below This Line** – For Reply Only)

Refered to Mrs. Pelfrey

3/23/07  This is the first written request recieved from you in regards to a tooth problem. You are placed on dental list

DOCTOR ☐        DENTIST ☐        OTHER ☐

Date_03/22/07_  Time Received_2030_

Officer_M E Davis RN_

# EXHIBIT A – PART FOUR
## INMATE FILE OF DANNY WAYNE PICKARD

*CO WURST*
*03/21/07*

# RUSSELL COUNTY SHERIFF'S DEPARTMENT
## CORRECTIONS DIVISION
### INMATE GRIEVANCE FORM

NOTE: All grievances must be completed in ink. If additional pages are needed, plain lined paper may be used

| Submitted By: | Received By: |
|---|---|
| Inmate's Name (last name first) PICKARD DANNY WAYNE | CO's Name & ID Number C/O T. Brown 8/42 |
| Housing Assignment C-22 | Shift Assignment C-DAY 0700 03-22-07 |

### PART "A" INMATE REQUEST

I have many times tried to get the NURSE Mrs. Riley (pelfREy) to sign my request forms & all she does is stick them in a draw. Meaning I don't get a copy as I should, she has a real Bad Bed side Manner.

Grievant (Inmate) Signature *Danny Pickard*

### PART "B" - RESPONSE

3/22/07  Per Inmate Handbook page 13 — Requests slips are to be picked up and submitted for pick-up at 7am and 7pm unless it is a medical emergency. Request slips are not picked up (unless emergency) during the dispensing of prescription medications. — *Shelley Smith HP*

Date of Response _____ Divisional Grievance Officer _____ ID Number _____

NOTE: If you are dissatisfied with this response, you may appeal directly to the Administrator of Corrections. Your appeal must be filed within 72 hours, excluding Saturdays, Sundays, and legal holidays, of the time/date you acknowledge receipt of this response.

### PART "C" - RECEIPT

Return To _____   Date _____ Time _____

Submitting Inmate _____   Receiving Shift Supervisor _____

### PART "D" - RETURN RECEIPT

Returned To _____   Date _____ Time _____

Witness _____   Submitting Inmate _____

### APPEAL NOTIFICATION

I hereby give notice of appeal of the findings of the Divisional grievance Officer  I have attached to this notice of appeal a statement of the basis for my appeal.

Appeal Received By. _____   Date _____ Time _____

**Patient's Name:** pickard, danny

/
PICKARD DANNY                    0010298
ELLIS MILES                          EMS
M          05/04/1957        49
01/22/07 04:34              000007331

**Special Instructions:**

1. ice and motrin for pain

## LACERATION

### WHAT YOU SHOULD KNOW:

- A laceration (las-e-RAY-shun) is a cut in the skin. A laceration can happen anywhere on the body. It may be large or small. It may hurt, feel numb, look swollen, and may bleed. The edges of the cut may be wide open or close together. Lacerations are usually caused by being struck or by hitting something sharp. You may get a laceration if you fall or are in an accident.

- Lacerations need to be stitched if they are very deep or are bleeding a lot. Stitches may help to keep the wound from getting infected. A stitched wound usually causes less scarring when healed. If you wait too long to be seen by caregivers and the wound is too old, it may not be stitched. Some lacerations may heal better without stitches. The healing time for a laceration depends on where it is on the body. It may take a laceration longer to heal if it is over a joint, such as your knee or elbow.

### AFTER YOU LEAVE:

**Your medicines are:** _____

- **Keep a list of your medicines:** Keep a written list of the medicines you take, the amounts, and when and why you take them. Bring the list of your medicines or the pill bottles when you see your caregivers. Do not take any medicines, over-the-counter drugs, vitamins, herbs, or food supplements without first talking to caregivers.

- **Take your medicine as directed:** Always take your medicine as directed by caregivers. Call your caregiver if you think your medicines are not helping or if you feel you are having side effects. Do not quit taking your medicines until you discuss it with your caregiver.

- **Antibiotics:** This medicine is given to fight or prevent an infection caused by bacteria. Always take your antibiotics exactly as ordered by your caregiver. Keep taking this medicine until it is completely gone, even if you feel better. Stopping antibiotics without your caregiver's OK may make the medicine unable to kill all of the germs. **Never** "save" antibiotics or take leftover antibiotics that were given to you for another illness.

- **Over-the-counter pain medicine:** You may use over-the-counter (OTC) pain medicines, such as ibuprofen or acetaminophen, for pain or swelling. These medicines may be bought without a caregiver's order. These medicines are safe for most people to use. However, they can cause serious problems when they are not used correctly. People with certain medical conditions, or using certain other medicines are at a higher risk for problems. Using too much, or using these medicines for longer than the label says can also cause problems. Follow directions on the label carefully. If you have questions, talk to your caregiver.

- **Pain medicine:** You may be given medicine to take at home to take away or decrease

pain. Your caregiver will tell you how much to take and how often to take it. Take the medicine exactly as directed by your caregiver. Do not wait until the pain is too bad before taking your medicine. The medicine may not work as well at controlling your pain if you wait too long to take it. Tell caregivers if the pain medicine does not help, or if your pain comes back too soon.

- **If a medicine makes you drowsy:** Some medicines may make you drowsy (tired) or less able to think clearly. Avoid driving, signing legal papers, operating heavy equipment or other activities that you must be alert to do. Never drink alcohol while you are taking medicines that make you feel drowsy or less alert.

**Follow-up visit information:** _____ Keep all appointments. Write down any questions you may have. This way you will remember to ask these questions during your next visit.

**Home care:**

- **Rest, ice, and elevation:** Avoid using or moving the injured area. If possible, raise the wound up on pillows, above the level of your heart. This helps to decrease pain and swelling. Ice may also help to decrease your pain and swelling. It is best to start using ice right after an injury and up to 24 to 48 hours afterwards. Do not use ice directly on the skin, or for longer than 20 minutes at a time. If ice is not covered or is put on one area for too long, it may cause frostbite.

- **Caring for your wound:** Always follow your caregiver's instructions for wound care. Wash your hands with soap and warm water before and after caring for your wound. Your caregiver may want you to keep the wound dry for the first 24 to 48 hours. After that, gently clean the wound once or twice a day with cool water. Use soap to clean around the wound, but try not to get any on the wound edges. Do **not** use alcohol or hydrogen peroxide to clean your wound unless your caregiver tells you to. Ask your caregiver if you should apply antibiotic ointment to the wound after cleaning it. The following are general tips for wound care.

  ○ **If the wound is on your hand, lip, mouth, or scalp:** If your wound is on your hand, do not do dishes or any activity that causes your hand to soak in water. If the wound is on your scalp, ask your caregiver when you can start washing your hair again. If the wound is on your lip or in your mouth, rinse your mouth after eating or drinking. Ask your caregiver if you should rinse your mouth with germ-killing mouthwash. Eat soft foods that are easy to chew. Avoid foods that may sting, such as orange juice or hot, spicy foods.

  ○ **If you need to keep a dressing in place:** Your caregiver may put a dressing (bandage) over the wound before you leave. You may need to keep the dressing on for 24 to 48 hours, or until your follow-up visit. Ask your caregiver if it is OK to change your dressing if it becomes soaked with blood. If you must leave a blood-soaked dressing in place, add clean bandages on top of it. If your wound bleeds more than your caregiver told you to expect, call your caregiver.

  ○ **If you need to change your bandage yourself:** Your caregiver may want you to change your bandage one or more times a day. If the bandage sticks to your wound, use warm water on the bandage and lift it off slowly. Always lift toward the center of your wound, not away from it. Clean the wound and dry the area with a clean towel or gauze before placing a bandage back over it. Then, keep the area as

dry and clean as possible.

- ○ **Keeping your wound uncovered:** Many lacerations can be kept uncovered, or "open to air". This allows the wound to stay dry and heal faster. If your caregiver did not tell you to keep a dressing or bandage on your wound, you may leave it uncovered. Use a bandage or dressing over the wound if it is bleeding or has drainage (fluid coming from it). You should also cover the wound if it is in an area where it may get dirty, or where clothes may rub on it.

- ○ **If your wound was closed with wound tape:** Your caregiver may use wound tape or special adhesive strips to hold your wound closed. Examples include butterfly tape or Steri-Strips™. Keep the area clean and dry. The strips will fall off on their own after several days. Sometimes only half of the strip falls off, and you will need to remove the rest of it. If you have to remove a strip, gently pull the edge towards the center of the wound. If only a small part of the tape strip starts to come off, trim the loose part off with blunt-edge scissors. Take care not to cut your skin with the scissors.

- ○ **If your wound was closed with a tissue adhesive:** Caregivers may use a special tissue adhesive to close your wound. This adhesive is a special kind of "glue" that is made to be safely used on skin. Do not use any ointments or lotions on the area. You may shower, but do not swim or soak in a bathtub. Gently pat-dry the area after showering. Do not pick at or scrub the adhesive area. If the adhesive comes off too soon, call your caregiver. **Never** use your own adhesive to try and re-glue the wound back together.

- ○ **If your caregiver wants to wait before closing your wound:** Sometimes a wound has to be left open for a few days before it is sutured (sewn) shut by your caregiver. This is called delayed closure. Ask your caregiver for more information about wound care for an open wound, or a wound that is packed with gauze.

- ○ **If you have sutures (stitches) or staples:**

  - ■ Most wounds may be kept covered with a non-stick, sterile dressing for the first 24 to 48 hours after treatment. After that, you should gently clean the area as described above. Then, keep the area as dry and clean as possible. Your caregiver may want you to apply antibiotic ointment to the sutures or staples. Ask your caregiver if you should re-cover the area with a clean dressing, or leave it open to air.

  - ■ Ask your caregiver when you should have your sutures or staples removed. They may need to stay in for five days to three weeks or longer, depending on where the wound is. Sutures on your face may need to be removed sooner. A caregiver will need to check your wound before the sutures or staples are removed. Some sutures will be absorbed by your body and do not need to be removed.

- • **Decrease your chance of scarring:** A scar is the mark that stays on your skin after a wound heals. Using antibiotic or other ointment on your wound may decrease the amount of scarring that you have. Ask your caregiver what ointment to buy, and how often to use it. The skin of your wound area may turn a different color if it is exposed to direct sunlight. After your wound is healed, use sunscreen over the area when you are out in the sun. You should do this for at least six months to one year after your injury.

Some wounds scar less if they are covered while they heal. Ask your caregiver if your wound should be covered with a clean bandage, or left open to air.

---

**CALL _____ IF:**

- You have a shaking, chills, fever, or any other signs of infection. Signs of infection may include increasing redness, swelling, or warmth around the wound. Other signs that your wound may be infected include a bad smell, red streaks, or pus coming from the wound. Pus is fluid that is milky (not clear), and may be white, yellow, green, or brown.

- You have pain in the injured area that does not go away or is getting worse.

- Your wound does not heal.

- You have skin tearing around your stitches or staples, or if your wound gapes open.

- The skin around your wound feels numb.

- You have numbness or swelling below the wound.

- You cannot move the joint below the wound.

- You think you may have problems from your tetanus shot. After a tetanus shot, the shot site may get sore, swollen, red, and warm to touch. This is a normal response to the medicine in the shot. Call your caregiver if these signs last for more than a few days. Call your caregiver if you have severe (very bad) pain in the area where you had your shot.

**SEEK CARE IMMEDIATELY IF:**

- Your symptoms (redness, pain, fever) get worse very quickly.

- You have heavy bleeding or bleeding that does not stop after 10 minutes of holding firm, direct pressure over the wound.

⊞ © 1974-2007  Thomson MICROMEDEX. All rights reserved.

**LACERATION - Discharge Care,  English**
**Monday, January 22, 2007 5:14:40 AM**

# RUSSELL COUNTY SHERIFF'S DEPARTMENT
## CORRECTIONS DIVISION
### INMATE GRIEVANCE FORM

NOTE: All grievances must be completed in ink. If additional pages are needed, plain lined paper may be used

| Submitted By: | | Received By: | |
|---|---|---|---|
| Inmate's Name (last name first) Pickard, Danny Wayne | CO's Name & ID Number Breadon   52 | 3-28-07   0700 | |
| Housing Assignment | Shift Assignment A-Day | | |

## PART "A" INMATE REQUEST

On Count today 3/27/07 Sgt Moore called me out off my cell for no reason making mocking remark such as, I just wanted to look at this mother fucker, you take that crazy fucking medicine dont you, & so on Ect intimidations

Grievant (Inmate) Signature _____

## PART "B" - RESPONSE

3/28/07 - Recieved I will get S.Sgt. Bussey to look into your complaint. Lt. Faulend -

04-02-07 - Received Grievance  SSG ____

Date of Response _____ Divisional Grievance Officer _____ ID Number _____

NOTE: If you are dissatisfied with this response, you may appeal directly to the Administrator of Corrections. Your appeal must be filed within 72 hours, excluding Saturdays, Sundays, and legal holidays, of the time/date you acknowledge receipt of this response.

## PART "C" - RECEIPT

Return To _____    Date _____ Time _____

Submitting Inmate _____    Receiving Shift Supervisor _____

## PART "D" - RETURN RECEIPT

Returned To _____    Date _____ Time _____

Witness _____    Submitting Inmate _____

## APPEAL NOTIFICATION

I hereby give notice of appeal of the findings of the Divisional grievance Officer I have attached to this notice of appeal a statement of the basis for my appeal.

Appeal Received By _____    Date _____ Time _____

Submitted By _____    Copy Received By _____

Dear Sgt Bussey                    3/27/07
   This isnt the first time he has
singled me out during count. I have
a great fear If you dont do something
about Sgt. Moore, The beating I TOOK the
First time will look to of been minor.
   I have called my family & I have sent
in the Lawsuit to montgomery, Which
will be aginst Sgt Moore & the Russell
Co Jail. I am also sending another Letter
to the courts to complain, Somthing
HAS to be done, Sgt Bussey I am really
scared, I Dont know whats gona happen
I wrote request to speak with you &
there's no responce, If this dont work
this time, Writing you I will Have to
try another way, I am running out
of options, I beg of you to do something
about this & if you cant, Please tell
me who to notifie about my problem.
   Here are wittnesses who watched
& heard all of It.
                              Thanks
wittness                      DW Rickard
  ①
  ②
  ③
  ④

3/21/07

Dear Sgt. Bussey
    I have gathered information on four wittnesses that will come forth on my behalf & testifie to the truth.
    Id also like to challenge sgt Moore to a lie dectors test, from a company that isn't bias.
    Sgt. Bussey you seem to be a man of integrity as I know you have a responibility to your Jail & the Sheriff. But by now seems to me you would be a lil suspicious by now.
    I dident do anything to deserve the treatment I recieved while being incarassated in your Jail.
    Mrs Riley is a liar & a trouble maker I am writing a grievance on her again today, she will not sign my request & I cant make her.
    I know you realize if we want to court at least half the people that saw what happend will tell the truth while on stand sworn to tell the truth.
    Sir dont you want to know the truth, Next time this happens he may kill someone.

He looks at me as if he could kill me, when he calls now or count he uses my whole name, loud & more aggressive, of all the others he just uses there last name, I wonder if I'm safe here or not, I feel I could disappear & no one would care.

I thank you for your help which you have already done, I ask only for fare treatment I am also human.

After I talk to my lawyer I will find out if I need to give you the wittnesses names now or later okay.

I know I'm one man aginst a large System who finances are unaccountable & I have none, but I do still believe in Miracles & that there still good & honest people still out there.

I appolgize for my writing for the nerves ars shot today,

Thanks Again

DW Rickard

To: SSG. Bussey
From: Sgt. P. Moore
Date: 03-29-2007
Re: Statement on Grievance Submitted by Inmate Danny Pickard

On 01-22-2007 approximately 0315HR. Sgt. P. Moore was posted in the Sgt. POD conducting paperwork. Moments later R/O heard Inmate Danny Wayne Pickard hitting his head against the steel door in holding cell one.R/O then exits the Sgt. POD en route to holding cell one. Upon arrival R/O observed Inmate Pickard hitting his head against the steel door. R/O ordered Inmate Pickard several times to stop hitting his against the steel door, but he refused. R/O called C/O Wayne Smith for backup. R/O ordered C/O Smith to open the door. R/O applied a one second stream of (Freeze Plus P) chemical spray to the face area of Inmate Pickard to prevent him from injuring himself , and he complied.

Moments later Inmate Pickard started hitting his head against  the steel door again. R/O started en route to holding cell one again. Upon arrival R/O observed Inmate Pickard head was bleeding. R/O called for backup several times , but R/O could not Waite because Inmate Pickard head was bleeding badly. R/O opens the door and let Inmate Pickard out to prevent him from further injuring himself." Then Inmate Pickard ran into the property room stating I'm going to kill myself several times!!". R/O started pursuit after Inmate Pickard in the property room.Upon arrival Inmate Pickard picked up a broom.R/O ordered Inmate Pickard to drop it, but he refused. R/O grab Inmate Pickard right arm and attempted to place him on the ground, but he refused. R/O pulled the stick and struck Inmate Pickard on his lower thigh and he complied.

C/O Steven Wurst arrived and assisted R/O with handcuffing Inmate Pickard and escorting him back to holding cell one. R/O notified R/N McInnis and advised her to report to the jail (ASAP).When R/N McInnis arrived, R/O and C/O Wurst entered holding cell one and escorted Inmate Pickard to the infirmary for treatment. R/N McInnis conducted treatment on Inmate Pickard head and advised R/O to call EMS (ASAP)!!.R/N McInnis advised R/O Inmate Pickard needs to be transported to the Summit Hospital for injuries to the head. R/O called dispatch and advised them to dispatch EMS to the jail( ASAP)!!. Upon arrival EMS conducted medical treatment on Inmate Pickard head and placed him on a bed. EMS transported Inmate Pickard to the Summit Hospital for further medical treatment. C/O Wurst assisted EMS with Inmate Pickard an accompanied him to the Summit Hospital. R/O advised C/O Wurst to call the jail and keep Sgt. Moore up dated about Inmate Pickard condition . R/O notified SSGT. Bussey and Lt. Holland about the Inmate Pickard incident and advised them what happen.

Moments later C/O Wurst called the jail and reported to Sgt. Moore about Inmate Pickard condition.. C/O Wurst stated the Summit Hospital conducted several test on Inmate Pickard and after they completed the stitches on his head ,Inmate Pickard would be ready to transport back to the jail.  R/O called dispatch and advised them to dispatch a Deputy to the Summit Hospital and transport C/O Wurst and Inmate Pickard back to jail after the Summit Hospital discharged him. Moments later Deputy Tim Watford arrived in the sally port with C/O Wurst and Inmate Pickard. R/O observed C/O Smith and C/O Wurst escorted Inmate Pickard back to holding cell one. R/O then placed Inmate

Pickard back on observation. R/O met with Deputy Watford and stated that Inmate Pickard refused to stop talking about how we were going to kill him during the transporte

In closing Inmate Pickard caused all injuries to himself, because he was going through with-drawls from alcohol abuse and unknown drugs. End of report.

Sgt. P. Moore

To: SSG D. Bussey
From: Deputy Timothy Watford
Date 04-01-07
Re: Inmate Danny Pickard

On 01-22-2007 at approximately 0500 hrs Deputy Watford was dispatched to Summitt Hospital in Phenix City to pickup inmate Danny Pickard and C/O Stephen Wurst and transport them back to the Russell County Jail.

Upon arriving at the hospital Deputy Watford spoke with inmate Danny Pickard who seemed very upset and confused. Pickard stated that he did not want to go with Deputy Watford in fear that he would never be seen or heard from again. Pickard stated that the FBI was watching his every move and they wanted him dead.

Deputy Watford eventually talked Pickard into going with him back to the jail after promising not to kill him or turn him over to the FBI. Deputy Watford wheeled Pickard out of the hospital in a wheel chair and placed him in the back seat of his patrol car along with C/O Wurst.

During transport back to the jail Pickard was advised by Deputy Watford to keep quiet and remain calm. Pickard complied at first but then became increasingly agitated the closer he got to the jail. Deputy Watford finally had to raise his voice and order Pickard to keep quiet. Pickard complied reluctantly but did remain quiet.

At approximately 0540 hrs Deputy Watford arrived at the Russell County Jail sally port and turned Pickard over to jail officials.

Deputy Timothy Watford.

To: SSG. D. Bussey
From: C/O Steven Wurst
Date: 04-01-2007
Re: In mate Danny Pickard/ Disorderly Conduct

On 1-22-2007 approximately 0322HR. C/O Steven Wurst was dispatch to holding cell area by Sgt. P. Moore . Upon arrival R/O observed Sgt. Moore attempting to handcuff Inmate Pickard while he had a broom in his hand. R/O assisted Sgt. Moore by removing the broom away form Inmate Pickard and placing him in handcuffs. R/O assisted Sgt. Moore escorting Inmate Pickard back to holding cell one. R/O observed Inmate Pickard head was bleeding badly. R/O observed the blood all over the holding cell one door also.

Moments later R/N McInnis arrived to conducted medical treatment on inmate Pickard. R/O and Sgt. Moore entered holding cell one and placed Inmate Pickard in handcuffs an shackles. R/O and Sgt Moore escorted Inmate Pickard to the infirmary for medical treatment. R/N McInnis conducted medical treatment on Inmate Pickard head and advised that he be transported to the Summit Hospital.

Moments later EMS arrived and conducted medical treatment on Inmate Pickard head. EMS then placed Inmate Pickard on a bed. R/O assisted EMS with Inmate Pickard an accompanied him to the Summit Hospital. Sgt. Moore advised R/O to call the jail and keep him up dated about Inmate Pickard condition.

"During the transport R/O observed Inmate Pickard state to EMS that Sgt. Moore and myself beat him with tire irons and sprayed him with poison ." Upon arrival to the Summit Hospital Inmate Pickard asked to use the phone several times to call his brother in Rome to come get him , because we were going to kill him,when we get him back to the jail"."Inmate Pickard stated to the hospital nursing staff that we beat him with lug wrenches and sprayed him with a poison." "Inmate Pickard stated that he was a P.O.W", and he was being held against his own will". Inmate Pickard asked to use the phone several times to call the F.B.I.to come get him because we were going to kill him, because he knows about the scam to make money and the corruption goes from the bottom to the top". The Doctor conducted treatment on Inmate Pickard and advised R/O that he was good to go . R/O then called Sgt. Moore and advised him that the Summit Hospital was ready to discharge Inmate Pickard .

Moments later Deputy Tim Watford arrived at the Summit Hospital to transport R/O and Inmate Pickard back to the jail."R/O observed Inmate Pickard state that he was not going back to the jail". Deputy Watford was able to convince Inmate Pickard that he would not be harm. Deputy Watford started en route to the jail, Inmate Pickard started talking about how Sgt. Moore and R/O beat him with a tire irons and sprayed him with poison ."Deputy Watford ordered Inmate Pickard several times to stop talking during the transport, but he refused to comply.

Upon arrival at the jail sally port , Sgt. Moore, C/O Smith, and R/O escorted Inmate Pickard back to holding cell one. C/O Smith ordered Inmate Pickard to sit down, when we removed the handcuffs and shackles and he complied. Then C/O Smith exits holding cell one and placed Inmate pickard back on observation. R/O then observed Inmate Pickard started to sleep. End of report.

Stephen R. WURST

04-01-07

To: SSG. D. Bussey
From: C/O Joyce T. Walden
Date: 4-04-2007
Re: Inmate Danny Pickard


On 01-22-2007 approximately 0318HR., C/O Joyce Walden was posted in the booking area conducting paperwork. R/O heard a loud noise coming from the holding cell area near booking.


R/O observed Inmate Danny Pickard hitting his head against the steel door in holding cell one. R/O observed Sgt. P. Moore respond to Inmate Pickard in holding cell one two different occasions. R/O observed Sgt. Moore order Inmate Pickard to stop hitting his head against the steel door, but he refused. R/O observed Sgt. Moore state to Inmate Pickard he was going to injure himself if he didn't stop hitting his head against the steel door.


R/O observed Sgt. Moore open holding cell door one, and Inmate Pickard ran into the property room. R/O observed inmate Pickard head was bleeding badly. When R/O exits the booking area, R/O observed a trail of blood from Inmate Pickard head injuries.


R/O then called all rovers to come assist Sgt. Moore because Inmate Pickard was refusing to come out of the property room. R/O then started en route to locate a rover to come assist Sgt. Moore with Inmate Pickard. R/O located C/O Steven Wurst and advised him Sgt. Moore needed assistance with Inmate Pickard. End of report.


                                        C/O Joyce T. Walden

                                        Joyce P. Layh Walden

# INMATE REQUEST SLIP

**LOCATION** F MAX

Name Pickard, Danny    Date 4/5/07

☐ Telephone Call    ☐ Time Sheet

☐ Special Visit    ☐ Personal Problem    ☐ Other

**Briefly Outline Your Request.** <u>Give to Jailer</u>

Mr. Bussey, I don't have the money for a
lawyer & your right about needing one.
it says in the handbook not to talk
with the Media, without permission, so
I am asking for permission. I'd at least
like an opinion besides my own.
Thank you    DW Pickard

<u>(Do Not Write Below This Line</u> – For Reply Only)

Rec 04.09.07 SSG.  REQUEST FOR MEDIA ACCESS
DENIED AT THIS TIME. SSG

Approved _____ Denied _____ Collect Call_____

All request Will Be Routed Through The Sergeant Over The Jail, Then
Forwarded To Those The Request Is Directed.

☐ Lieutenant    ☐ Chief Deputy    ☐ Sheriff

Date 4/6/7    Time Received   19.30

My name is James Kenneth Raden III. I am housed in E Block. Well a couple weeks ago the police moved a man by the name of Danny Pickard into my block. Well when they moved him in I became friends with him. One day right after they moved him in we were sitting down having a conversation and I asked him where the scar came from on his forhead. He said, "It was where "Moore" had beat the shit out of him." So then I asked Danny what happened. Thats when he proceeded with telling me that when he first came in he was kinda of drunk and they had him in a holding cell up front. Well he said an officer, who, I don't know, came and opened the door. Well when the door went to shut he said he grabbed it to keep it from locking. When the officer got out of sight he said he ran out of the door into the laundry room down the hall. He then said he hid behind a door with a mop handle in his hand to wait to hear the exit doors click or be opened because he wanted to get out of here. He said then all of the sudden and officer came in and discovered him in this diclosed area. He then said that that was when Sgt. Moore and some other officer came in and tried to spray him with pepper spray but he put his shirt over his face to keep pepperspray off. He also said he was trying to keep them off with the mop handle. Then he said his little beating occurred, Which I really don't know specific details about that because he said he really couldn't remember. Thats all we pretty much discussed about what happened that day.

Date: 4/5/07

# INMATE REQUEST SLIP

E -25

LOCATION

Name _Pickard Danny_    Date _05/5/07_

☐ Telephone Call          ☐ Time Sheet

☐ Special Visit           ☐ Personal Problem          ☑ Other

**Briefly Outline Your Request.** __Give to Jailer__

_Sgt. Bussey, today is the fifth
we had an appointment for
the 1st, I need to talk with you.
real soon if possible._

_DWPickard_

---

**(Do Not Write Below This Line – For Reply Only)**

_Spoke to Inmate Pickard on 04-05-07_

---

Approved _____ Denied _____ Collect Call _____

All request Will Be Routed Through The Sergeant Over The Jail, Then
Forwarded To Those The Request Is Directed.

☐ Lieutenant          ☐ Chief Deputy          ☐ Sheriff

Date _0406_          Time Received _1916_

Jailer _C/O Reynol_

# INMATE REQUEST SLIP

F MAX
LOCATION

Name Pickard Danny    Date 4/5/07

☐ Telephone Call    ☒ Time Sheet

☐ Special Visit    ☒ Personal Problem    ☐ Other

**Briefly Outline Your Request. Give to Jailer**

Mr Bussey, I need to make a local non collect call, could you arrange this for me.

Thank you
DWPickard

**(Do Not Write Below This Line – For Reply Only)**

REC 04-09-07 SRB - REQUEST FOR NON-COLLECT PHONE CALL DENIED. USE THE PHONE IN YOUR CELL BLOCK OR WRITE A LETTER. SRB

Approved _____    Denied _____    Collect Call _____

All request Will Be Routed Through The Sergeant Over The Jail, Then Forwarded To Those The Request Is Directed.

☐ Lieutenant    ☐ Chief Deputy    ☐ Sheriff

Date 4/6/7    Time Received 1930

Jailer c/o Gibbons

# RUSSELL COUNTY SHERIFF'S DEPARTMENT
## CORRECTIONS DIVISION
### INMATE GRIEVANCE FORM

NOTE: All grievances must be completed in ink. If additional pages are needed, plain lined paper may be used

| Submitted By: | Received By: |
|---|---|
| Inmate's Name (last name first) Pickard, Danny W. | CO's Name & ID Number Sgt. Schoff (6) |
| Housing Assignment E-11 | Shift Assignment B  4-8-07  0709 |

## PART "A" INMATE REQUEST

Mr. Bussey, Ive Filed a grievance where Sgt Moore pulled me out of my room, insulted me, drew a good laugh from the other inmates, which is unnerving at the least, then after not hearing back about

Grievant (Inmate) Signature DWPickard

## PART "B" - RESPONSE

4/9/07 - Referred to S. Sgt. Bussey - Lt. Hullard this inmate needs to be placed in a holding cell under Observacation. Lt. Hullard -

Date of Response _____ Divisional Grievance Officer _____ ID Number _____

NOTE: If you are dissatisfied with this response, you may appeal directly to the Administrator of Corrections. Your appeal must be filed within 72 hours, excluding Saturdays, Sundays, and legal holidays, of the time/date you acknowledge receipt of this response.

## PART "C" - RECEIPT

Return To _____ Date _____ Time _____

Submitting Inmate _____ Receiving Shift Supervisor _____

## PART "D" - RETURN RECEIPT

Returned To _____ Date _____ Time _____

Witness _____ Submitting Inmate _____

## APPEAL NOTIFICATION

I hereby give notice of appeal of the findings of the Divisional grievance Officer. I have attached to this notice of appeal a statement of the basis for my appeal.

Appeal Received By _____ Date _____ Time _____

Submitted By _____ Copy Received By _____

4/07/07

Pickard, Danny W.        I

ExTenDED Griveance

about The other griveance, I got snatched out of my cell and was placed in F MAX. Which as you know is 23 Hrs a day Lock Down.

I AM TERRIBLE SCARED, there are Inmates FABRICATING statements about me, I'm scarred now of every officiers that comes to the door, especially Sgt Moore, if By chance you didentt get the other griveance, he pulled me out of Roll call, out of my Cell told the rest of the inmates he just wanted to look at this mother Fucker, + what kind of crazy Pills was I TAKing in cell C. must be crazy.

Then For no reason I was snatched out of my cell + placed in F MAX 23 Hrs a day Lock down, Ive asked you to be considerate of the situtation we have here.

you told me even if you knew Sgt Moore hit me with that bar, you wouldnt consider it being excessive Force or police brutality. SO I got to use what few options I have, so I need to know since it says you cant go to the media without permission, so I AM ASKING.

Im positive before this is thru I'll be hurt badly If NOT Dis appear, If your not gona keep him away or sespend him, I need to get some one to know what happened the whole story not just your side.

Sir, dont you feel or see the amosity in the AIR, Im sorry ALL this happened, but Im still the one that recieved all the stAples + Headacks + physical problems,

DW Pickard

4-8-07

I am the day time Laundry man at
Russell County Jail. At the time of
the incident I was asleep in the
dorm. I have no idea why Mr. Pickard
listed me as a witness because I
was no where around.

Samuel A. Ott

# RUSSELL COUNTY SHERIFF'S DEPARTMENT

TOMMY BOSWELL, SHERIFF

POST OFFICE BOX 640

PHENIX CITY, ALABAMA

36868 - 0640

( 334 ) 298-6535

FAX ( 334 ) 291-7667

To: Inmate Danny Pickard

From: SSG. Danny Bussey

Date: 04-13-2007

Re: Filed Grievance Forms

On 03-01-2007, I received the first of several grievance forms filed by you against Sgt. Moore and the Medical Division. At the time of receipt, I began an investigation into your allegations. Due to the numerous allegations made and the number of persons involved in this incident, the investigation has taken some time. On 03-20-2007, I interviewed you in reference to the information I had obtained at that point. I explained to you that there was at this point no evidence to support your allegation of excessive force or denial of medical care. During this interview you stated you were only struck two times, once in the forehead and once in the thigh with what you described as a tire iron. You also stated two of your teeth were broken as result of this incident. I advised you at this time I would continue to investigate the incident and send you a written response to my final decision. During this conversation you also expressed a desire to file a lawsuit against Sgt. Moore. At your request, I provided you with the address to the United States District Court of Middle Alabama Clerk's office. On 04-04-2007, I was advised you had filed a lawsuit in reference to this incident. On 04-05-2007, I again spoke with you in reference to the grievance forms you have submitted. You offered no explanation as to why you had filed a lawsuit prior to completing the grievance process. Now on 04-09-2007, I have received yet another grievance from you. In this grievance you state you are scared due to inmates fabricating statements. You also state you are now scared of every officer that comes to your cell door. As a result of this grievance the decision has been made to place you on protective custody. You will be placed in a holding cell in the front of the jail. This will greatly limit the access other inmates physically have toward you. As for you being scared of all the officers, I find no reason to justify your claim. As of 01-22-2007, there have been no further incidents involving you and any officers. If your behavior continues as it has of recent, I see no reason why you should have any incidents with any officer.

As to the conclusion of the fore mentioned grievance forms, I find no evidence to support your described series of events. I find your allegations to be unfounded.

SSG. Danny Bussey



# INMATE REQUEST SLIP   17-3

LOCATION

Name Pickard, Danny          Date 4/20/07

☐ Telephone Call          ☐ Time Sheet

☐ Special Visit          ☐ Personal Problem          ☑ Other

Briefly Outline Your Request. <u>Give to Jailer</u> Mr. Bussey, I got your answer on my grievances. I wanted to ask you, since F Block has the same comforts as holding, Could I get you to put me back there? Also if you failed to understand that my problem has been with Sgt. Moore already & his shift of officers, and the Nurse I still haven't seen any one about this tooth ack & I've asked to see my mental health Dr. so you would know. Will you see if you can help me with any of this? Thanks Danny Pickard

<u>(Do Not Write Below This Line</u> – For Reply Only)

YOU ARE ON THE DENTAL LIST. YOU HAVE AN APPT W/ MENTAL HEALTH. SSG

Approved _____ Denied _____ Collect Call _____

All request Will Be Routed Through The Sergeant Over The Jail, Then Forwarded To Those The Request Is Directed.

☐ Lieutenant          ☐ Chief Deputy          ☐ Sheriff

Date 4-20-07          Time Received 1900

Jailer     Breaden

07 01 19003

# INMATE REQUEST SLIP C 22

LOCATION

Name Danny Pickard    Date 3/12/07

☐ Telephone Call    ☐ Time Sheet

☐ Special Visit    ☐ Personal Problem    ☐ Other

Briefly Outline Your Request. **Give to Jailer**

Mrs Hary

Ive exhausted all my request solutions, & was wondering if you could help me with what days can be opend to optain a federal law suit form — a 1983 federal law suit form.

Thank you DW Pickard

**(Do Not Write Below This Line – For Reply Only)**

TAKen to the lAw library

03-13-07    1000

C/o A Brown

4/642

Approved _____ Denied _____ Collect Call_____

**All request Will Be Routed Through The Sergeant Over The Jail, Then Forwarded To Those The Request Is Directed.**

☐ Lieutenant    ☐ Chief Deputy    ☐ Sheriff

Date 3/12/7    Time Received 100

Jailer _____

## PRENTISS L. GRIFFITH DETENTION FACILITY

### PROPERTY RECEIPT

INMATE NAME _Danny  Pickard_

RECEIVING OFFICER _(signature)_

BOOKING # _070119003_

NAME # _245939_

DATE/TIME _1-18·07_

| ITEM # | AMOUNT | ARTICLE DESCRIPTION | BIN |
|--------|--------|--------------------|-----|
| 1 | 1 | Blue Jeans | WOODEN BIN |
| 1 | 1 | Blk underwear | |
| 1 | 1 | GREY Sweat shirt | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | I acknowledge having received a copy of the Russell County Jail Inmate Handbook | |
| | | Name _(signature)_ | |
| | | Date _3/19/07_ | |
| | | | |

### RELEASE INFORMATION

RELEASING OFFICER _____    DATE/TIME _____

RECEIVED BY _____    SIGNATURE _____
                    Print Name

COMMENTS _____

_____

WHITE - Inmate File      CANARY - Attached To Property In Safe      PINK - Attached To Property      GOLD - To Inmate

PLG-006

07011900 3

| | | |
|---|---|---|
| **STATE OF ALABAMA** | ) | **IN THE DISTRICT COURT OF** |
| **VS.** | ) | **RUSSELL COUNTY, ALABAMA** |
| DANNY WAYNE PICKARD | ) | 185-188 |
| **DEFENDANT** | ) | **CASE NUMBER  DC-** 07-186 |

### ORDER

_____  **1.   DEFENDANT ADVISED OF RIGHT TO AN ATTORNEY**

_____  **2.   ENTERED PLEA OF NOT GUILTY**

_____  **3.   REQUESTED PRELIMINARY HEARING**

_____  **4.   RETAINED THE HONORABLE** _____**AS COUNSEL**

**It is hereby ORDERED, ADJUDGED AND DECREED:**

\_\_✓\_\_\_  **(1.)  THAT THIS CAUSE IS WAIVED TO THE NEXT TERM OF THE GRAND JURY**

_____  **2.   AFTER HEARING, THIS CAUSE IS BOUND TO THE NEXT TERM OF THE GRAND JURY**

\_\_X\_\_\_  **(3.)  BOND IS SET AT** \_$2000 w int case\_
        un/par 3/1/07

_____  **4.   THAT THIS CAUSE IS DISMISSED UPON DEFENDANT EXECUTING WAIVER OF EXTRADITION**

\_\_XXX\_\_  **5.   THAT THE HONORABLE** \_APRIL LANCASTER LOGAN\_**IS APPOINTED COUNSEL TO REPRESENT THE DEFENDANT**

_____  **6.   THAT THIS CASE IS CONTINUED TO THE \_\_\_\_DAY OF_____ 20\_\_\_ AT**

_____  **7.**   _____

_____

_____

**DONE, This the** \_28\_ **day of** \_FEBRUARY_____ **,** \_2007\_ **.**

_____
**JUDGE**

Intake Screen

Approx. date of any prior record here: _____

Name: _Danny Pickard_    DOB: _05-09-5_ Date: _1-18-07_

Apparent mental status of the patient (check one):

☐ Normal  ☑ Confused  ☐ Agitated  ☐ Intoxicated  ☐ Drugged  ☑ Strange

Any evidence of injury, active health problems or deformity: _Poor historian 20 Confusion and short term memory_

## Patient Health History (Y or N response)

| | | |
|---|---|---|
| Are you currently sick in any way? **YES** | Do you have heavy sweating at night For no reason when it's not hot? | Do you have HIV infection or think you Might have it? |
| Do you have a fever that won't go away? **No** | Have you lost more than 10 pounds of weight during the last 6 months? | Any symptoms which might indicated sex-related disease? |
| Are you currelty takey any prescribed Medications? (List below) **Yes** | Have you ever had a heart attack or any other heart trouble? | Have you ever intentionally hurt yourself or tried to take your own life? **Yes** |
| Have you ever had any kind of cancer? | Do you have high blood pressure? **YES** | Would you ever try to take your own life? **Yes** |
| Do you have diabetes? | Do you have chest pain with exercise or other chest pain? | Do you feel like you would like to die? |
| Do you have seizures or blackouts? | Have you had bleeding from your stomach, bowels, or kidneys? | Do you see people or things other can't see or hear voices others can't hear? **Yes** |
| Have you ever had a stroke? | Do you have shortness of breath or trouble breathing? | Females: Are you pregnant or could you be pregnant? |
| Do you have any eye problems? (List below) | Do you have asthma? | On how many days of the past month have you consumed alcohol? |
| Do you have a cough that won't clear Up? | Do you hae kidney disease or failure or had kidney dialysis? | On how many days of the past month have you used drugs? |

Comments: _Per Dr. Crooks intake needs to be placed on Suicide Watch. Inmate Admitted on 1-15-07_

Medications: _None_

Allergies: _None_

Reason for any recent physician visits: _Alcohol Poisoning_

List surgeries: _No_

Describe any prior hospitalizations: _1-16-07 Alcohol Poisoning_

Drugs you have used: _____

Recommended housing or activity restrictions: _____

Medical management plans: _____

Health insurance: _____

Booking Officer: _Ofc Freeman_    Inmate _Unable (to sign)_    Medical Staff _ME Ennis RN_

_Prob Homeless_

| STATE OF ALABAMA | ) | IN THE DISTRICT COURT OF |
|---|---|---|
| VS. | ) | RUSSELL COUNTY, ALABAMA |
| Danny W. Pickard | ) | |
| **DEFENDANT** | ) | CASE NUMBER   DC-07 185- / 388 |

Forgery 2nd X 4

#3,500 X 4

## ORDER

__X__   (1.)   **DEFENDANT ADVISED OF RIGHT TO AN ATTORNEY**

__✓__   (2.)   **ENTERED PLEA OF NOT GUILTY**

__X__   (3)   **REQUESTED PRELIMINARY HEARING**

_____   4.   **RETAINED THE HONORABLE** _____**AS COUNSEL**

It is hereby ORDERED, ADJUDGED AND DECREED:

_____   1.   **THAT THIS CAUSE IS WAIVED TO THE NEXT TERM OF THE GRAND JURY**

_____   2.   **AFTER HEARING, THIS CAUSE IS BOUND TO THE NEXT TERM OF THE GRAND JURY**

_____   3.   **BOND IS SET AT** _____

_____   4.   **THAT THIS CAUSE IS DISMISSED UPON DEFENDANT EXECUTING WAIVER OF EXTRADITION**

__X__   (5.)   **THAT THE HONORABLE** _A. Logan_ **IS APPOINTED COUNSEL TO REPRESENT THE DEFENDANT**

__✓__   (6)   **THAT THIS CASE IS CONTINUED TO THE** _28_ **DAY OF** _Feb_ **20** _07_ **AT** ~~3:00~~ **P.M. EST**   1:30

_____   7.   _____

_____

_____

**DONE, This the** _24_ **day of** _Jan_ , _2007_.

_Michael J. Bellamy_
**JUDGE**

# PERSONAL INFORMATION

LAST NAME: _Pickard_

FIRST NAME: _Danny_

MIDDLE NAME: _Wayne_

HOME ADDRESS: _1382 Cananen Dr._

CITY _Col._          STATE _Ga._          ZIP CODE _31904_

PHONE NUMBER ( ) _____ CELL NUMBER ( ) _____

**CIRCLE ONE:    FEMALE OR (MALE)**

BIRTHDAY: _3/4/57_

# EMERGENCY CONTACT INFORMATION

LAST NAME: _Pierson_

FIRST NAME: _Freda_

MIDDLE NAME: _—_

HOME ADDRESS: _882-_

CITY _Rome_          STATE _Ga_          ZIP CODE _30161_

PHONE NUMBER _706-238-8855_    CELL NUMBER ( ) _____

RELATIONSHIP: _Mother_

07 011 9003
07011 9003

| | |
|---|---|
| STATE OF ALABAMA | ) | IN THE DISTRICT COURT OF |
| VS. | ) | RUSSELL COUNTY, ALABAMA |
| _Danny Pickard_ | ) | |
| DEFENDANT | ) | CASE NUMBER    DC-_____ |

F45  Fm  J45  N/B

## ORDER

__✗__    (1.)    DEFENDANT ADVISED OF RIGHT TO AN ATTORNEY

_____    2.    ENTERED PLEA OF NOT GUILTY

_____    3.    REQUESTED PRELIMINARY HEARING

_____    4.    RETAINED THE HONORABLE _____AS COUNSEL


It is hereby ORDERED, ADJUDGED AND DECREED:

_____    1.    THAT THIS CAUSE IS WAIVED TO THE NEXT TERM OF THE GRAND JURY

_____    2.    AFTER HEARING, THIS CAUSE IS BOUND TO THE NEXT TERM OF THE
                 GRAND JURY

~~✗~~    ~~3.~~    BOND IS SET AT _~~No Bond by D.A. agreed~~_

__✗__    (4.)    THAT THIS CAUSE IS DISMISSED UPON DEFENDANT EXECUTING
                 WAIVER OF EXTRADITION

_____    5.    THAT THE HONORABLE_____IS APPOINTED
                 COUNSEL TO REPRESENT THE DEFENDANT

_____    6.    THAT THIS CASE IS CONTINUED TO THE _____DAY OF_____
                 20____ AT ~~3:00~~ 1:30 P.M. EST    (Ms. Riley)

__+__    7.    _Note to Nurse by says he needs medication_

                 _____

                 _____

DONE, This the _19_ day of _____Jan_____, _2007_.

                 _____Michael J. Gilley_____
                 JUDGE

| VICTIM | CELL # | DATE | TIME | SHIFT SUPERVISOR |
|---|---|---|---|---|
| RCJ | | 4-23-07 | 1431 | Sgt. P. Moore |

| OFFENDER | CELL # | TYPE OF INCIDENT/OFFENSE |
|---|---|---|
| Danny Pickard | | Grievance Complaint |

| WITNESSES | CELL # | WITNESSES ( OFFICERS) |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |

**NARRATIVE:**

Statement

In response to the grievance form submitted by Inmate Danny Pickard. Sgt. P. Moore starts tour of duty at the Russell County Jail, R/O and a C/O conducts headcount at 1800 HR, all over the celling roll. R/O enters each unit and advise all Inmates to stand at their door for roll call. R/O entered E-block an called roll. Inmate Danny Pickard refused to speak or stand at his door for roll call. R/O ordered the POD officer to open inmate Pickard door. Inmate Pickard exit his cell and R/O stated why you didn't answer to the call. Inmate Pickard stated that he was sleep and could not here. End of report

Sgt. K. Sm    15

3/27/07
1730

# RUSSELL COUNTY SHERIFF'S DEPARTMENT
## CORRECTIONS DIVISION
### INMATE GRIEVANCE FORM

NOTE: All grievances must be completed in ink. If additional pages are needed, plain lined paper may be used

| Submitted By: | | Received By: |
|---|---|---|
| Inmate's Name (last name first) Pickard, Danny Wayne | CO's Name & ID Number Brogdon 52 | 3/28/07 0700 |
| Housing Assignment | Shift Assignment A.Day | |

Copy

### PART "A" INMATE REQUEST

On Count toDAY 3/27/07 Sgt Moore called me out off my cell for no reason MAKing Mocking Remark such as, I just wanted to look at this mother facken, you take that crazy fucking medicine dont you, & so on $il intimidations

Grievant (Inmate) Signature _____

### PART "B" - RESPONSE

3/28/07 - Recieved I will get S. Sgt. Bussey to work into your complaint. Lt. Fallend -

04-02-07 - RECEIVED GRIEVANCE SSG B

Date of Response _____ Divisional Grievance Officer _____ ID Number _____

NOTE: If you are dissatisfied with this response, you may appeal directly to the Administrator of Corrections. Your appeal must be filed within 72 hours, excluding Saturdays, Sundays, and legal holidays, of the time/date you acknowledge receipt of this response.

### PART "C" - RECEIPT

Return To _____ Date _____ Time _____

Submitting Inmate _____ Receiving Shift Supervisor _____

### PART "D" - RETURN RECEIPT

Returned To _____ Date _____ Time _____

Witness _____ Submitting Inmate _____

### APPEAL NOTIFICATION

I hereby give notice of appeal of the findings of the Divisional grievance Officer. I have attached to this notice of appeal a statement of the basis for my appeal

Appeal Received By _____ Date _____ Time _____

Submitted By _____ Copy Received By _____

Dear Sgt Bussey                    3/27/07

This isn't the first time he has singled me out during count. I have a great fear If you dont do something about Sgt. Moore, The beating I TOOK the First time will Look to of been minor.

I have called my family & I have sent in the Law suit to montgeomery, Which will Be aginst Sgt Moore & The Russell Co Jail. I Am also sending another Letter to the courts to complain, Somthing HAS to be done Sgt Bussey I am really scared, I Dont know whats gonna happen I wrote request to speak with you & there's no response, If this dont WORK this time, Writing you I Will Have to try another way, I Am running out of options, I beg of you to do something about this & if you CAnt, Please tell me who to notifie about my problem.

Here are wittnesses who watched & heard all of IT.

wittness                    Thanks
                            DWRickard
① 
② 
③ 
④

# EXHIBIT B
## AFFIDAVIT OF PIERCE MOORE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| DANNY W. PICKARD, #245939 | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: 3:07-cv-0270-MHT-WC |
| | ) |
| SGT. MOORE, et al., | ) |
| | ) |
|     Defendants. | ) |

## AFFIDAVIT OF PIERCE MOORE

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF RUSSELL | ) |

1. My name is Pierce Moore. I am over the age of nineteen and am competent to execute this affidavit, which is based on my personal knowledge, training and experience.

2. I am a sergeant in the Russell County Jail, Russell County, Alabama (the "Jail") and was employed in that position at all times relevant to Plaintiff's Complaint.

3. I have reviewed the Plaintiff's Complaint filed in this matter. I have some personal knowledge of the facts stated in the Complaint.

4. It is the policy of the Russell County Sheriff's Department that members of the Jail staff receive and answer inmate grievances. Forms on which grievances may be related to the Jail staff are readily available in the Jail. Inmates are furnished these forms at any time they request one. An exception exists for requests of an emergency nature, which may be made orally. Members of the Jail staff are charged with responding to such grievances. Copies of all completed grievances and request forms are placed in an inmate's Jail file.

5. Inmates are made aware of the grievance procedure through an inmate handbook provided at the time the inmates are booked in to the Jail.

6.    To not provide an inmate with a grievance form or address a grievance would be a

violation of the policy of this Jail.

7.    It is the policy of the Russell County Sheriff's Department that the Jail personnel provide timely medical treatment to inmates. Forms on which medical requests may be related to the Jail staff are readily available in the Jail. Inmates are furnished these forms at any time they request one. An exception exists for requests of an emergency nature, which may be made orally. Members of the Jail staff are charged with responding to such requests. Copies of all medical request forms are placed in an inmate's Jail file and medical file. In an emergency situation the Jail personnel have the authority to send inmates to the Jail infirmary immediately.

8.    It is a violation of the policies of the Russell County Correctional Facility to deny necessary medical attention, care or medication to an inmate.

9.    Jail personnel are occasionally required to use physical force in the performance of their duties in order to ensure the orderly administration of the Jail and the safety of Jail staff and inmates. However, the Russell County Jail has a policy forbidding the use of excessive force in pursuit of those goals. It would be a violation of Jail policy for Jail personnel to use excessive or unnecessary force directed towards an inmate.

10.    On or about January 22, 2007, at about 3:15 a.m., I was in the Sergeant's Pod completing paperwork and monitoring the Jail observation cells. At that time, the Plaintiff was housed in an observation cell because he had recently been admitted to the Jail while suffering from withdrawal from alcohol and possibly other drugs. At that time, I heard a banging noise coming from the Plaintiff's cell, and I went to investigate. I witnessed the Plaintiff backing up in his cell, taking several steps forward and ramming his head into the steel cell door. During this

2

time he was repeating in a loud voice that he had to get out of the cell, and that he was going to kill himself. I observed blood on both the Plaintiff's forehead and running down the inside of the cell door. I urged to Plaintiff to stop his behavior to prevent further injury, but he continued his behavior. I called for backup, and opened the cell door and attempted to grab the Plaintiff's arm to secure him. The Plaintiff resisted my attempts to restrain him, and I applied a one-second burst of chemical spray to attempt to incapacitate him. However, the chemical spray appeared to have no affect on the Plaintiff, and he slipped by me, ran down the hall, and barricaded himself in the property room. At this time Correctional Officers Steven Wurst and Joyce Walden responded. The property room door would not completely close, and Officers Wurst, Walden and I managed to force the door open. The Plaintiff exited the room wielding a broom, at which time I grabbed the Plaintiff's right arm and we were able to wrestle the Plaintiff to the ground. The Plaintiff was resisting during this time. After the Plaintiff was on the ground I was able to remove the broom from the Plaintiff's hands, but was unable to apply handcuffs due to the Plaintiff's continued aggressive resistance. I therefore deployed my collapsible baton and struck the Plaintiff in the lower thigh, on the common peronial pressure point, in order to gain compliance. After one strike, the Plaintiff complied and I was able to handcuff him and escort him back to his holding cell. At that time I notified the on-call Jail nurse that she was needed at the Jail immediately. After approximately five (5) to ten (10) minutes, the nurse arrived and I advised her of what had occurred. Officer Wurst and I then re-entered the Plaintiff's holding cell and escorted the Plaintiff to the Jail infirmary for medical treatment. The nurse began treatment on the Plaintiff, and advised me that due to the depth of the cut on his head, the Plaintiff needed to be transported to the hospital for treatment. I then contacted central dispatch and advised them to send Emergency Medical Services to the Jail. A few minutes later EMS arrived, began

conducting medical treatment on the Plaintiff, and loaded the Plaintiff into an ambulance for transport to the hospital.

11.    The force used in the aforementioned incident was restricted to the minimum force necessary to gain and maintain control of the Plaintiff and ensure the protection of the Plaintiff and Jail personnel.  At no time was the Plaintiff struck, hit in the head, or otherwise assaulted beyond the minimum standardized and approved pressure point and joint manipulation control techniques required to subdue the Plaintiff sufficient to place him in handcuffs.

12.    I certify and state that the documents provided to the Court which are attached to the Defendants' Special Report are true and correct copies of the Plaintiff's inmate and health records, kept at the Russell County Correctional Facility in the regular course of business.

13.    I affirm, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements were made by drawing from my personal knowledge of the situation.


_____
Pierce Moore


**SWORN TO** and **SUBSCRIBED** before me this _3 1_ day of May, 2007.



NOTARY PUBLIC

My Commission Expires:____9 (3 0 (0 7)

4

# EXHIBIT C
# AFFIDAVIT OF STEPHEN WURST

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

DANNY W. PICKARD, #245939              )
                                       )
      Plaintiff,              )
                                       )
v.                                     ) CIVIL ACTION NO.: 3:07-cv-0270-MHT-WC
                                       )
SGT. MOORE, et al.,                    )
                                       )
      Defendants.             )

## AFFIDAVIT OF STEPHEN WURST

STATE OF ALABAMA                       )
                                       )
COUNTY OF RUSSELL                      )

    1. My name is Stephen Wurst. I am over the age of nineteen and am competent to execute this affidavit, which is based on my personal knowledge, training and experience.

    2. I am a correctional officer in the Russell County Jail, Russell County, Alabama (the "Jail") and was employed in that position at all times relevant to Plaintiff's Complaint.

    3. I have reviewed the Plaintiff's Complaint filed in this matter. I have some personal knowledge of the facts stated in the Complaint.

4.     It is the policy of the Russell County Sheriff's Department that members of the Jail staff receive and answer inmate grievances. Forms on which grievances may be related to the Jail staff are readily available in the Jail. Inmates are furnished these forms at any time they request one. An exception exists for requests of an emergency nature, which may be made orally. Members of the Jail staff are charged with responding to such grievances. Copies of all completed grievances and request forms are placed in an inmate's Jail file.

    5.     Inmates are made aware of the grievance procedure through an inmate handbook provided at the time the inmates are booked in to the Jail.

6.    To not provide an inmate with a grievance form or address a grievance would be

a

violation of the policy of this Jail.

7.    It is the policy of the Russell County Sheriff's Department that the Jail personnel

provide timely medical treatment to inmates. Forms on which medical requests may be related

to the Jail staff are readily available in the Jail. Inmates are furnished these forms at any time

they request one. An exception exists for requests of an emergency nature, which may be made

orally. Members of the Jail staff are charged with responding to such requests. Copies of all

medical request forms are placed in an inmate's Jail file and medical file. In an emergency

situation the Jail personnel have the authority to send inmates to the Jail infirmary immediately.

8.    It is a violation of the policies of the Russell County Correctional Facility to deny

necessary medical attention, care or medication to an inmate.

9.    Jail personnel are occasionally required to use physical force in the performance

of their duties in order to ensure the orderly administration of the Jail and the safety of Jail staff

and inmates. However, the Russell County Jail has a policy forbidding the use of excessive

force in pursuit of those goals. It would be a violation of Jail policy for Jail personnel to use

excessive or unnecessary force directed towards an inmate.

10.    On or about January 22, 2007, at about 3:15 a.m., I was in the Jail kitchen

preparing for the breakfast feeding. At that time, I heard Sergeant Moore call for assistance. I

initially headed to the front of the jail to assist Sgt. Moore, but was informed that he was at the

Jail Property Room. I went to the Property Room and witnessed Sgt. Moore attempting to open

the door to the Property Room. I assisted Sgt. Moore in opening the door, at which time I

witnessed the Plaintiff in the back corner of the room with a broom in the "baseball bat"

2

position. We instructed the Plaintiff to drop the broom and get on the ground. The Plaintiff did not comply, at which time I witnessed Sgt. Moore deliver one leg strike with his baton, and the Plaintiff fell to the ground. The Plaintiff continued resisting during this time. After the Plaintiff was on the ground we were able to remove the broom from the Plaintiff's hands and apply handcuffs. We then escorted the Plaintiff to his holding cell. I observed that there was blood on the Plaintiff, and on the door of the Plaintiff's holding cell. At that time I heard Sgt. Moore notify the on-call Jail nurse that she was needed at the Jail immediately. After approximately five (5) to ten (10) minutes, the nurse arrived and we advised her of what had occurred. Sgt. Moore and I then re-entered the Plaintiff's holding cell and escorted the Plaintiff to the Jail infirmary for medical treatment. The nurse began treatment on the Plaintiff, and advised us that due to the depth of the cut on his head, the Plaintiff needed to be transported to the hospital for treatment. I then heard Sgt. Moore contact central dispatch and advise them to send Emergency Medical Services to the Jail. A few minutes later EMS arrived, began conducting medical treatment on the Plaintiff, and loaded the Plaintiff into an ambulance for transport to the hospital.

11.    I escorted the Plaintiff to the hospital, riding in the ambulance with him. During the transport, I heard the Plaintiff complaining to the emergency medical technicians that we had beat him with tire irons and sprayed him with poison. I also heard him state that he was a P.O.W. and was being held against his will, and that the medics needed to contact the F.B.I. Upon arrival at the hospital, I heard the Plaintiff continue to complain to the hospital staff that he had been beaten with tire irons and sprayed, and that he was being held against his will. I also heard him inform them that they needed to contact his brother in Rome. I observed that any time I was present with the Plaintiff he would refer to name, rank and serial number as if he was a prisoner of war; however, if I was not within his visual area, I heard him speak to the hospital

3

staff in a normal manner. I also heard him state that he was trying to give us "hell" during the incident at the Jail, that we were going to kill him when he got back to the jail, that he was fearful for his life, and that the Jail is a scam to make money. I observed the hospital medical staff bring a mobile x-ray machine into his room in order to take an x-ray of his head, though I did not personally observe the x-ray. I observed the medical staff put approximately ten (10) to fifteen (15) staples in the Plaintiff's head, and otherwise treat his head injury. I did not observe the Plaintiff complain of any other injuries, nor did I observe the hospital medical staff treat any other injuries. I did not observe any other injuries on the Plaintiff.

12. Upon discharge, I notified the jail that we needed transportation back to the jail. Deputy Tim Watford arrived at the hospital for transport, but the Plaintiff refused to leave the hospital bed. Deputy Watford managed to verbally calm the Plaintiff and convince the Plaintiff to exit the hospital and enter the patrol car. As we were en route to the Jail, the Plaintiff continued to complain that we were going to kill him, etc. Deputy Watford repeatedly instructed the Plaintiff to quiet down, but the Plaintiff did not comply. Upon arrival at the Jail, the Plaintiff was escorted back to his holding cell.

13. The force used in the aforementioned incident was restricted to the minimum force necessary to gain and maintain control of the Plaintiff and ensure the protection of the Plaintiff and Jail personnel. At no time was the Plaintiff struck, hit in the head, or otherwise assaulted beyond the minimum standardized and approved pressure point and joint manipulation control techniques required to subdue the Plaintiff sufficient to place him in handcuffs.

14. I certify and state that the documents provided to the Court which are attached to the Defendants' Special Report are true and correct copies of the Plaintiff's inmate and health records, kept at the Russell County Correctional Facility in the regular course of business.

4

15.    I affirm, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements were made by drawing from my personal knowledge of the situation.

_____
Stephen Wurst

**SWORN TO** and **SUBSCRIBED** before me this $\underline{3\,l}$ day of May, 2007.

_____
NOTARY PUBLIC

My Commission Expires: $\underline{9\,|3\,0\,|\,o\,7}$

5

**EXHIBIT D**
**AFFIDAVIT OF DANNY BUSSEY**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| DANNY W. PICKARD, #245939 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 3:07-cv-0270-MHT-WC |
| | ) | |
| SGT. MOORE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**AFFIDAVIT OF DANNY BUSSEY**

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF RUSSELL | ) |

1. My name is Danny Bussey. I am over the age of nineteen and am competent to execute this affidavit, which is based on my personal knowledge, training and experience.

2. I am a sergeant and the assistant jail administrator with the Russell County Jail, Russell County, Alabama and was a employed in that position at all times relevant to Plaintiff's Complaint.

3. I have reviewed the Plaintiff's Complaint filed in this matter. I have no personal knowledge of the facts stated in the Complaint.

4. It is the policy of the Russell County Sheriff's Department that members of the Jail staff receive and answer inmate grievances. Forms on which grievances may be related to the Jail staff are readily available in the Jail. Inmates are furnished these forms at any time they request one. An exception exists for requests of an emergency nature, which may be made orally. Members of the Jail staff are charged with responding to such grievances. Copies of all completed grievances and request forms are placed in an inmate's Jail file.

5. The Plaintiff filed a series of grievances with respect to the subject matter of this lawsuit. After receiving the initial grievance on March 1, 2007, I began an investigation into the

Plaintiff's complaints. On April 5, 2007, I concluded that investigation, and found that there was no evidence to support the allegations contained in the Plaintiff's grievances. However, due to the Plaintiff's statements indicating that he was scared of other inmates, I placed the Plaintiff in protective custody in the front of the jail. A copy of my investigative report, addressed to the Plaintiff, is included in the Plaintiff's Inmate File.

6.      It is the policy of the Russell County Sheriff's Department that the Jail personnel provide timely medical treatment to inmates. Forms on which medical requests may be related to the Jail staff are readily available in the Jail. Inmates are furnished these forms at any time they request one. An exception exists for requests of an emergency nature, which may be made orally. Members of the Jail staff are charged with responding to such requests. Copies of all medical request forms are placed in an inmate's Jail file and medical file. In an emergency situation the Jail personnel have the authority to send inmates to the jail infirmary immediately.

7.      It is a violation of the policies of the Russell County Jail to deny necessary medical attention, care or medication to an inmate.

8.      Jail personnel are occasionally required to use physical force in the performance of their duties in order to ensure the orderly administration of the Jail and the safety of Jail staff and inmates. However, the Russell County Jail has a policy forbidding the use of excessive force in pursuit of those goals. It would be a violation of Jail policy for Jail personnel to use excessive or unnecessary force directed towards an inmate.

9.      I certify and state that the documents provided to the Court which are attached to the Defendants' Special Report are true and correct copies of the Plaintiff's inmate and health records, kept at the Russell County Jail in the regular course of business.

2

10.    I affirm, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements were made by drawing from my personal knowledge of the situation.

_____
Danny Bussey

**SWORN TO** and **SUBSCRIBED** before me this ⎯31⎯ day of May, 2007.

_____
NOTARY PUBLIC

My Commission Expires: ⎯9|30|0⎯

3

# EXHIBIT E
# AFFIDAVIT OF TINA RILEY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| DANNY W. PICKARD, #245939 | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: 3:07-cv-0270-MHT-WC |
| | ) |
| SGT. MOORE, et al., | ) |
| | ) |
|     Defendants. | ) |

**<u>AFFIDAVIT OF TINA RILEY</u>**

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF RUSSELL** | ) |

1. My name is Tina Riley. I am over the age of nineteen and am competent to execute this affidavit, which is based on my personal knowledge, training and experience.

2. I am a licenced nurse (L.P.N.) at the Russell County Jail, Russell County, Alabama and was employed in that position at all times relevant to Plaintiff's Complaint.

3. I have reviewed the Plaintiff's Complaint filed in this matter. I have no personal knowledge of the facts stated in the Complaint. I work an eight-to-five day shift, and was not on duty during the times relevant to the Plaintiff's Complaint. However, upon the Plaintiff's return from the emergency room that day, I remember observing the Plaintiff being examined by Dr. Warr, the Jail doctor, and assisting in that examination. We cleaned the Plaintiff's wound and provided him with medication for pain at that time.

4. It is the policy of the Russell County Sheriff's Department that the Jail personnel provide timely medical treatment to inmates. Forms on which medical requests may be related to the Jail staff are readily available in the Jail. Inmates are furnished these forms at any time they request one. An exception exists for requests of an emergency nature, which may be made orally. Members of the Jail staff are charged with responding to such requests. Copies of all medical

request forms are placed in an inmate's medical file.   In an emergency situation the Jail personnel have the authority to send inmates to the jail infirmary immediately.

5.      It is a violation of the policies of the Russell County Jail to deny necessary medical attention, care or medication to an inmate.

6.      I have no personal knowledge of the Plaintiff suffering from seizures.   At one time the Plaintiff did complain of kidney stones, and a urinalysis was performed by Dr. Warr. There was a trace of puss, but no indication of blood in his urine, which is indicative of kidney stones.   Nevertheless, out of an abundance of caution, the Plaintiff received an antibiotic and pain reliever as a result of that examination.

7.      I have never thrown away, discarded, or otherwise destroyed medical request forms from the Plaintiff or any other inmate.

8.      I certify and state that the documents provided to the Court which are attached to the Defendants' Special Report are true and correct copies of the Plaintiff's health records, kept at the Russell County Jail in the regular course of business.

9.      I affirm, to the best of my present knowledge and information, that the above statements are true, that I am competent to make this affidavit, and that the above statements were made by drawing from my personal knowledge of the situation.

Tina Riley

**SWORN TO** and **SUBSCRIBED** before me this 31 day of May, 2007.

2

NOTARY PUBLIC

My Commission Expires: 9 30 07

3

**EXHIBIT F – PART ONE**
**MEDICAL FILE OF DANNY WAYNE PICKARD**

## SUMMIT HOSPITAL

## HISTORY AND PHYSICAL

**Patient Name:** PICKARD, DANNY
**Medical Record Number:** 7331
**Date of Birth:** 5/4/1957
**Account Number:** 9789
**Attending Physician:** Lloyd Harrington MD
**Room Number:** 312

Revised by BAlexander 16 January 2007

**Date Of Admission:**
January 16, 2007

**Present Illness:**
He is a 35-year-old white male who had quit drinking until 2 weeks ago, when he took everything he had, and he started drinking again. He hurts all over. He has the shakes. He came to the emergency room, where he has had abdominal pain and was found to have pancreatitis. He does not smoke or do drugs, but he has been drinking 2 bottles of tequila a day and wants help. He is also drinking mouth____.

He was seen by a representative of the Bradley Center, while she was investigating somebody else in the emergency room, and he may be accepted if he is free of the DTs.

He has had no abnormal bleeding.

**Physical Examination:**
    **General:** He is tremulous. He is alert.
    **Vital Signs:** Blood pressure 150/78, respiratory rate is 24, pulse is 110, temperature 99.3.
    **HEENT:** Otherwise normal.
    **Chest:** Clinically clear.
    **Cardiovascular System:** S1 and S2 are normal. There are no murmurs, clicks, or rubs.
    **Abdomen:** Tender in his epigastrium, but no guarding or rebound. Bowel sounds are present. Femorals are present.
    **Extremities:** There is no peripheral edema. Distal pulses are palpable. He can move all limbs.

**Admitting Assessment:**
1. Alcoholic withdrawal syndrome with delirium tremens.

**SUMMIT HOSPITAL**

**HISTORY AND PHYSICAL**

**PATIENT NAME:  PICKARD, DANNY**

2.  Alcohol excess.
3.  Recent separation from his wife/girlfriend.
4.  Past history of alcohol excess.
5.  Acute pancreatitis.

_____

Richard A Valentine, MD

D:  01/16/07 07:51
T:  01/16/07 08:13
SJN:  SMT16366784
DJN:  2490
20428

## SUMMIT HOSPITAL

### DISCHARGE SUMMARY

**Patient Name:** PICKARD, DANNY
**Medical Record Number:** 7331
**Date of Birth:** 05/04/1957
**Account Number:** 9789
**Attending Physician:** Lloyd Harrington MD
**Room Number:** 001

Revised to include medical record number by BAlexander  19 January 2007

**Date Of Admission:**
January 16, 2007

**Date Of Discharge:**
January 18, 2007

**Reason For Admission:**
He was admitted with DTs.  Apparently he recently started drinking.

**Course In Hospital:**
While in the hospital he seemed to improve on the DT treatments, but last night he broke his mirror, threatened one of the staff with a shard of glass, and tried to cut his own wrist.  He has what sounds like 16 outstanding warrants for his arrest, and according to the police officers he does this kind of behavior and is known to do that in the past to get out of going to jail and facing the music.  He was a lot more lucid this morning.  We have given him a lot of thorazine and Haldol, just to protect the staff from his violent outrages.  The officer has assured me that Dr. Were and a nurse at the jail are adequately able to take care of any medical problems that he has, which in my opinion he is basically over 90% of his DTs and I think it would be safe to transmit him to the care of Dr. Were, whom I know and have been associated with for many years, and feel he is a competent physician.

**Final Diagnosis:**
Alcoholic withdrawal syndrome.

---

Richard A Valentine, MD

D: 01/18/07 14:48
T: 01/18/07 18:54
SJN: SMT16387660
DJN: 2564

## SUMMIT HOSPITAL

## DISCHARGE SUMMARY

20428

Intake Screen

Approx. date of any prior record here: _____

Name: _Danny Pickford_   DOB: _05-04-5_   Date: _1-18-07_

Apparent mental status of the patient (check one):
☐ Normal  ☑ Confused  ☐ Agitated  ☐ Intoxicated  ☐ Drugged  ☑ Strange

Any evidence of injury, active health problems or deformity: _Poor historian 20_
_confusion and short term memory_

## Patient Health History (Y or N response)

| | | |
|---|---|---|
| Are you currently sick in any way? _yes_ | Do you have heavy sweating at night For no reason when it's not hot? | Do you have HIV infection or think you Might have it? |
| Do you have a fever that won't go away? _No_ | Have you lost more than 10 pounds of weight during the last 6 months? | Any symptoms which might indicated sex-related disease? |
| Are you curretly takey any prescribed Medications? (List below) _Yes_ | Have you ever had a heart attack or any other heart trouble? | Have you ever intentionally hurt yourself or tried to take your own life? _yes_ |
| Have you ever had any kind of cancer? | Do you have high blood pressure? _YES_ | Would you ever try to take your own life? _yes_ |
| Do you have diabetes? | Do you have chest pain with exercise or other chest pain? | Do you feel like you would like to die? |
| Do you have seizures or blackouts? | Have you had bleeding from your stomach, bowels, or kidneys? | Do you see people or things other can't see or hear voices others can't hear? _yes_ |
| Have you ever had a stroke? | Do you have shortness of breath or trouble breathing? | Females: Are you pregnant or could you be pregnant? |
| Do you have any eye problems? (List below) | Do you have asthma? | On how many days of the past month have you consumed alcohol? |
| Do you have a cough that won't clear Up? | Do you hae kidney disease or failure or had kidney dialysis? | On how many days of the past month have you used drugs? |

Comments: _Per Dr. Crokes intmate needs to be placed on_
_Suicide Watch. Inmate Admitted on 1-15-07_

Medications: _None_

Allergies: _None_

Reason for any recent physician visits: _Alcohol Poisoning_

List surgeries: _No_

Describe any prior hospitalizations: _1-16-07 Alcohol Poisoning_

Drugs you have used: _____

Recommended housing or activity restrictions: _____

Medical management plans: _____

Health insurance: _____

Booking Officer: _A. Freeman_   Inmate _Unable (to sign)_   Medical Staff _M____ ___ RN_

_Prob Homeless_

PLG-041

**INMATE REQUEST FORM**

C-22

MEDICAL

Name: _Rickward Danny_  Date: _02/03/09_

I have constantly been telling you of my head also and my _____ I wanted to tell you that I need some professional help. I think I had foing or Left eye light in my _____ eye _____ the medication is not working _____

(Do Not Write Below This Line — For Reply Only)

DOCTOR ✓    DENTIST ☐    OTHER ✓

Date _____    Time Received _____

Officer _____

# INMATE REQUEST SLIP

Name _Danny Pickard_   Date _2/06/07_   LOCATION

☐ Telephone Call   ☐ Time Sheet

☐ Special Visit   ☐ Personal Problem   ☑ Other

Briefly Outline Your Request. <u>Give to Jailer</u>

I have passed 3 Kidney stones this week I have another Loose in my Back the pain is terrible.
ALSO MY medication isnt working AT ALL, I AM SO stressed, Tense Anxiety, Nerverness, I need to see the nurse Immmen'ately please this pain is beyond Explaining please help me with this.

_D.W. Pickard_

(<u>Do Not Write Below This Line</u> – For Reply Only)

_Benadryl 50 po_

_Tramadol 50mg po_

_Referred to Dr Warr_

3/8/07 PV

Approved _____ Denied _____ Collect Call _____

All request Will Be Routed Through The Sergeant Over The Jail, Then Forwarded To Those The Request Is Directed.

☐ Lieutenant   ☐ Chief Deputy   ☐ Sheriff

Date _2-6-07_   Time Received _1508_

Jailer _SmLs_

**INMATE REQUEST**

Name: Darin Acton Date: 3/ /7

☐ Telephone Call ☐ Time Sheet

☐ Special Visit ☐ Personal Problem ☒ Other

**Briefly Outline Your Request. Give details:**

My request & anxiety are at a
high I get so full up to
pieces. My medication has been
running down seem to get any
sleep with it

*(Do Not Write Below This Line — Staff Reply Only)*

Referred to Dr. Wan

Approved          Denied          Collect Call

All request Will Be Routed Through The Sergeant Over The Jail, Then
Forwared To Those The Request Is Directed:

☐ Lieutenant          ☐ Chief Deputy          ☒ Sheriff

Date 3/3/ 7          Time Received 1900

Jailer

# INMATE REQUEST SLIP

LOCATION

Name _Danny Ackard_   Date _3/1/07_

☐ Telephone Call   ☐ Time Sheet

☐ Special Visit   ☐ Personal Problem   ☐ Other

=====================================================

Briefly Outline Your Request. <u>Give to Jailer</u>

_My nerves & anxiety are at a
high, I feel I am falling to
pieces, My Medication has been
wrong, I can't seem to get any
help with it._

_Need to see the Night Nurse
please_

=====================================================

<u>(Do Not Write Below This Line</u> – For Reply Only)

_Referred to Dr Wan_

=====================================================

Approved _____ Denied _____ Collect Call _____

=====================================================

All request Will Be Routed Through The Sergeant Over The Jail, Then
Forwarded To Those The Request Is Directed.

☐ Lieutenant   ☐ Chief Deputy   ☐ Sheriff

Date _3/3/7_   Time Received _1900_

Jailer _____

# INMATE REQUEST SLIP

LOCATION _____

Name _Danny Pickard_    Date _3/6/07_

☐ Telephone Call    ☐ Time Sheet

☐ Special Visit    ☐ Personal Problem    ☑ Other

Briefly Outline Your Request. <u>Give to Jailer</u>

I STILL diden't get ID see the Doctor
Or the nurse, I was wondering if
the night nurse might help me
igive with this Kidney Stone.
Its moved to the front now so
I should puss it Earlier tomorrow
I sure thank you For All you've
tried to do.    DW Pickard

**(Do Not Write Below This Line – For Reply Only)**

3/7/07 Scheduled to see Dr. Wan on Thusday

_____

Approved _____ Denied _____ Collect Call _____

All request Will Be Routed Through The Sergeant Over The Jail, Then
Forwarded To Those The Request Is Directed.

☐ Lieutenant    ☐ Chief Deputy    ☐ Sheriff

Date _03-07-07_    Time Received _0717_

Jailer _____ C/o F. Su

# INMATE REQUEST SLIP

LOCATION _____

Name _Danny Prichard_ Date _3/7/07_

☐ Telephone Call      ☐ Time Sheet

☐ Special Visit       ☐ Personal Problem      ☒ Other

Briefly Outline Your Request. **Give to Jailer**

Sir, I need terrible to see
my mental heath Doctor.
I've sent in a bunch of re-
quest forms but the nurse
Ms. Riley says them no attn.
Can you please help me
Thank you, Danny Prichard

**(Do Not Write Below This Line – For Reply Only)**

3/8/07 You are already schedule
for an appt with EAMH.

Approved _____ Denied _____ Collect Call _____

All request Will Be Routed Through The Sergeant Over The Jail, Then
Forwared To Those The Request Is Directed.

☒ Lieutenant      ☐ Chief Deputy      ☐ Sheriff

Date _03-07-07_ Time Received _1800_

Jailer _CO Wurst_

## INMATE REQUEST FORM

Prentiss Griffith Detention Facility

LOCATION

Name _Danny Pickard_ Date _03/12/07_

# MEDICAL

Nature of complaint or illness:

_I need my medicine changed
or increased or something
Im falling apart by the
minute in here, My nerves
and anxiety are going crazy
Its hard to breach —_

Sign here for consent
to be treated by health staff: _DW Pickard_

### (Do Not Write Below This Line – For Reply Only)

_Referred to Dr Warr_

3/14/07 Seen by EANH

**DOCTOR** ☐          **DENTIST** ☐          **OTHER** ☐

Date _3/12/7_ Time Received _1800_

Officer _____

# INMATE REQUEST FORM

Prentiss Griffith Detention Facility

C 22

LOCATION

Name Pickard, Danny    Date 2/28/07

# MEDICAL

Nature of complaint or illness: I have given this medicine Amply time to work it is not working the ELAVIL AT TO LOW A DOSAGE WAS working better than this. IF you cant approve my ELAVIL @ 200 ml morning + nite then I need to make a appointment with mental health. I Know you are upset with me, but it shouldnt stop your profess -ional position. I am having a bad time Dont Know what else to do. you can help if you want. R know

Sign here for consent
to be treated by health staff: D. W. Pickard

(<u>Do Not Write Below This Line</u> – For Reply Only)

3/2/07 Spoke with this inmate
in ref. to his medication.

DOCTOR ✓    DENTIST ☐    OTHER ☐

Date 3-1-07 Time Received 2010

Officer C/o Hunter

# INMATE REQUEST FORM

### Prentiss Griffith Detention Facility

C-22
**LOCATION**

Name _Danny Pickard_   Date _3/20/07_

# MEDICAL

**Nature of complaint or illness:**

Mrs Riley, I have asked about getting something to keep the Elavil & the other Medicine I take from making me sick. Please answer this

Sign here for consent
to be treated by health staff: _D Pickard_

**(Do Not Write Below This Line – For Reply Only)**

Referred to Mrs. Pelfrey 3/23/07 If meds are making you sick then EAMH needs to be contacted and told and possibly change your medications.

**DOCTOR** ☐      **DENTIST** ☐      **OTHER** ☐

Date _03/22/07_   Time Received _2030_

Officer _M E Innis RN_

# INMATE REQUEST FORM

Prentiss Griffith Detention Facility

G-22
**LOCATION**

Name: Danny Pickard    Date 3/22/07

# MEDICAL

Nature of complaint or illness:

Ive sent request to get my tooth pulled its nerves are showing & cant drink cold drinks or breath thru my mouth without pain, how long dois it take to go to the dentist here I told you about this a month ago Ive been patient but enough is Enough

Sign here for consent
to be treated by health staff: _Dw Pickard_

---

**(Do Not Write Below This Line – For Reply Only)**

Referred to Mrs. Pelfrey

3/23/07 This is the first written request recieved from you in regards to a tooth problem. You are placed on dental list

DOCTOR ☐          DENTIST ☐          OTHER ☐

Date 03/22/07   Time Received 2030

Officer _JME Jones RN_

# INMATE REQUEST FORM
### Prentiss Griffith Detention Facility

*E-25*

**LOCATION**

Name Danny Pickard    Date 3/23/07

# MEDICAL

**Nature of complaint or illness:**

I need a couple tylenol please —

Thanks Danny

**Sign here for consent
to be treated by health staff:** _Dw Pickard_

**(Do Not Write Below This Line – For Reply Only)**

Reg rec 03/28/07

**DOCTOR** ☐        **DENTIST** ☐        **OTHER** ☐

Date 3-23    Time Received 1953

Officer _Pain_

# INMATE REQUEST FORM
### Prentiss Griffith Detention Facility

E -25

**LOCATION**

Name _Danny Bickard_    Date _3/23/07_

# MEDICAL

Nature of complaint or illness:

_Need some tylenol_

_please_

Sign here for consent
to be treated by health staff: _____

## (Do Not Write Below This Line – For Reply Only)

_Tylenol x2_

**DOCTOR** ☐        **DENTIST** ☐        **OTHER** ☐

Date _3-23_    Time Received _2010_

Officer _____

## INMATE REQUEST FORM

### Prentiss Griffith Detention Facility

LOCATION _____

Name DANNY Pickard    Date 3/30/07

# MEDICAL

Nature of complaint or illness:

Ive wrote about getting this
Bad tooth out of me,
& I wanted to know if I
could get you to okay
the snack to keep medication
from up setting stomach

Sign here for consent
to be treated by health staff: DW Pickard

(Do Not Write Below This Line – For Reply Only)

_____

No Snack
approved
M Dennis RN

DOCTOR ☐    DENTIST ☐    OTHER ☐

Date 03 30 07    Time Received 1900

Officer _____

## INMATE REQUEST FORM      E 25

Prentiss Griffith Detention Facility

LOCATION

Name _Pickard Danny_ Date _4/1/07_

# MEDICAL

**Nature of complaint or illness:**

Wanted to check on & see if you
have aked the snack for me these
pills kinda make me sick at my
stomack.
And the tooth please I cant
chew on that side now

Sign here for consent
to be treated by health staff: _DW Pickard_

**(Do Not Write Below This Line – For Reply Only)**

No Snack!
No reason for one!

DOCTOR ☐      DENTIST ☐      OTHER ☐

Date _4-1-07_     Time Received _1920_

Officer _Klinie_

## INMATE REQUEST FORM
### Prentiss Griffith Detention Facility

E 25

LOCATION

Name _Pickard, Danny_ Date _4/1/07_

# MEDICAL

Nature of complaint or illness:

_Could I get some tylenol please Danny_

Sign here for consent
to be treated by health staff: _W Pickard_

**(Do Not Write Below This Line – For Reply Only)**

_Tylenol X2_

**DOCTOR** ☐        **DENTIST** ☐        **OTHER** ☐

Date _4-4-07_    Time Received _0705_ _1905_

Officer _C/O Reynolds_

# INMATE REQUEST FORM

Prentiss Griffith Detention Facility

LOCATION _____

Name _Pickard Dan__  Date _4/1/07_

# MEDICAL

Nature of complaint or illness: _Could I get tylenol please_

_____

_____

_____

_____

_____

_____

**Sign here for consent
to be treated by health staff:** _____

**(Do Not Write Below This Line** – For Reply Only)

_____

_____

_____ _Tylenol KL_ _____

_____

_____

**DOCTOR** ☐       **DENTIST** ☐       **OTHER** ☐

Date _4-1-07_    Time Received _1920_

Officer _Kline_

# INMATE REQUEST FORM
### Prentiss Griffith Detention Facility

Name _Pickard Darmy_ Date _May 21 – 07_

LOCATION

# MEDICAL

Nature of complaint or illness:

_Could I get some tylenol & something for a sore throat please_

_Thanks_
_DWRichard_

Sign here for consent
to be treated by health staff: _____

**(Do Not Write Below This Line – For Reply Only)**

_Tylenol X2_

_Lozengers X2_

DOCTOR ☐        DENTIST ☐        OTHER ☐

Date _5/21/7_ Time Received _1940_

Officer _Clotarun_

| NAME: Pickard, Danny | D.O.B. 050457 RACE: W  SEX: M |
|---|---|
| PRESENT MEDICATION: | SSN: 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 |
| ALLERGIES: | |
| PPD: | HGT: 6'00"  WGT: 185#  LBS. |
| HIV/VDRL: | |

| DATE/TIME | | NURSE SIGNATURE |
|---|---|---|
| 011807 1535 | 3:50 Y/O W/m escorted to infirmary by Thv. S. King. Just released from Summit Hos. for FTOH poisoning. Admitted on 1/15/07. Dc instructions show no special orders or medications noted. Incident this AM @ hospital, S-3 acted out - breaking mirrors, etc. Advised to place on suicide observation. Very poor hygiene. Hair matted. Monitor closely. F/U c̄ Dr. Warr on 1/19/07. — | [signature] |
| 01/18/07 2040 | S: C/o hearing voices. ___ in ___ ext disheveled clothing, hair long matted et hair scrambled ___ in hair ___ shackles or feet + barefooted. Legs Elavail and special ___ ordered in hospital. Reports 2 pills earlier O: Unkept P: Haircut + Shampoo c̄ Shower Suicide watch Detox per protocol Contacted Nurse Pelfrey by phone + she reports P. meds given et 3 meds ordered. Reports ___ told her that he has been exaggerating AH + VH ___ since he says age HR 133 115/76 ___ NonSmoker RN ___ CX 99% Attempted to contact Dr Warr to further approve Detox. Contact unsuccessful. Librium 50mg po given @ 2120 Prevlor Librax ___ no phone ___ | [signature] |

PICKARD, Henry

| Date/Time | | Nurse Signature |
|---|---|---|
| 01/18/07 2300 | In holding cell quiet & clean ⊙ shower, shampoo + haircut. Very appreciative for hygiene assistance ▬ _____ M.E. Jones RN  V/S %00 132-20-96-4 | |
| 011907 1250 | F/U: Hospital release (? detox) Procardia 10 mg S/L given STAT. HEENT: ⊘ LUNGS: clear   Detox protocol x 3 days. HEART: tachycardia c̄ murmurs AB: NT/BSK↓ EXT: ⊘ edema noted LUNGS: rhonchi and rales   Nurse ___ skin normal noted 011907 2⊘⊘ | |
| 01/21/07 | 10 PM  Benadryl 100 mg PO x⊘ ⊙ sleep ⊙ adm Agitated ⊙ Librium avail  M.E. Jones RN | |
| 01/22/07 0358 | Transported to Summit ER per amb x⊘ ® face heart lac. ℞ 2" long ℞ 3/4" deep. Pressure dsg ⊘ other injuries noted. Prob BTs. Wagon sprayed et ↑ strike strike ℞ ® thigh post. ⊘ evidence seen ⊙ same M.E. Jones RN  V/S 142/86-136-18-98° 98% | |
| 01/22/07 0845 | F/U: ER visit. lacerations to ®-side of head. tachycardia & murmurs heard. - dressing removed c̄ antibiotic ointment applied. - 12 staples staples intacted. - Am Librium 25 mg given Motrin 800 mg 1 tab given  Nurse | |

| Date/ Time | | Nurse Signature |
|---|---|---|
| 1005 | Due to aggatidion and healing on cell desr. | |
| 012207 | Geodon 20mg IM given DG. | |
| | | _(signature)_ |
| 012407 1430 | F/U: unable to explain reason for banging head on door on 1/22/07. Laceration cleansed and covered ā band-aid. ———— | _Serfrey Lowcast_ |
| 012507 1130 | F/U: Laceration to R eyebrow. - Clean band-aid given F/U on Monday 1/29/07 | |
| | Motrin 800 mg given for pain. | |
| | | 100% |
| 012907 1135 BS:123 | F/U. Laceration to R eyebrow. V/S: 149/95 - 101-18 — 97² ½ staples removed area cleansed ā betadine swab. Covered area ā clean band-aid. — | |
| | Naproxen 500mg qHS × 7 days | |
| | | V/S 155/98 — 92 - 16 — 97³ | 100% |
| 013107 1040 | F/U: Remove remaining staples on 2/5/07. Healing well. | |
| 020606 1025 | All remaining staples removed. Area healing well. Also spoke ā pharmacy in Dacula, Ga to obtain info References to RX. Hasn't filled RX since 2002. Contacted EAMH Outreach to set-up intake. ———— | _Serfrey Lowcast_ |
| 1115 | Karen ā Outreach set'd call. Information given – to call back ē appt. ———— | _(signature)_ |
| 2 7 07 0915 | Transported to EAMH for intake. ———— | _Serfrey Lowcast_ |
| 2/17/07 0930 | physicians from Mental Health MD Transported to EAMH. | _(signature)_ |

_Richard Doring_

| Date/Time | | Nurse Signature |
|---|---|---|
| 03/07/07 pm | C/o passing kidney stone / Toradol 60 mg / po TBu 800 mg / fu Dr Wan @ next visit  _J. Mc. Steven RN_  V/S 154/97 - 101 - 18 - 97' 100% | |
| 030807 1010 | ? Kidney Stones  UA Chemstrip - trace "pus" ~RBC seen  _lyn Blu_  Keflex 500mg bid × 7days  Naproxen 500mg qHS × 7days  Flu appt @ EAMH scheduled for 3/14/07  Noted 030807 SW | |
| 031407 0930 | Transported to EAMH appt. — | _Jeffrey Powell_ |
| 032307 0730 | Rec'd request → C/o tooth pain, discomfort.  → Placed on dental list — | |
| | | |
| | | |

CO WORK??

Case 3:07-cv-00270-MHT-WC    Document 9-10    Filed 06/07/2007    Page 28 of 30?

03/21/07

# RUSSELL COUNTY SHERIFF'S DEPARTMENT
## CORRECTIONS DIVISION
### INMATE GRIEVANCE FORM

NOTE: All grievances must be completed in ink. If additional pages are needed, plain lined paper may be used

| Submitted By: | Received By: |
|---|---|
| Inmate's Name (last name first)<br>PicKARD  DANNy  WAyNe | CO's Name & ID Number<br>C/O T. Brown   8/42 |
| Housing Assignment<br>C-22 | Shift Assignment<br>C-DAY    0700   03-22-07 |

### PART "A" INMATE REQUEST

I have many times tried to get the NuRse Mrs. Riley (pelFRey) to sign my request forms + all she does is stick them in a draw. Meaning I dont get A copy as I should, she has a real Bad Bed side manner.

Grievant (Inmate) Signature — Danny Pickard

### PART "B" - RESPONSE

3/22/07  Per Inmate Handbook page 13 — Requests slips are to be picked up and submitted for pick-up at 7ᵃᵐ and 7ᵖᵐ unless it is a medical emergency. Request slips are not picked up (unless emergency) during the dispensing of prescription medications. —

Shelly Lott HP

Date of Response _____ Divisional Grievance Officer _____ ID Number _____

NOTE: If you are dissatisfied with this response, you may appeal directly to the Administrator of Corrections. Your appeal must be filed within 72 hours, excluding Saturdays, Sundays, and legal holidays, of the time/date you acknowledge receipt of this response.

### PART "C" - RECEIPT

Return To _____ Date _____ Time _____

Submitting Inmate _____ Receiving Shift Supervisor _____

### PART "D" - RETURN RECEIPT

Returned To _____ Date _____ Time _____

Witness _____ Submitting Inmate _____

### APPEAL NOTIFICATION

I hereby give notice of appeal of the findings of the Divisional grievance officer. I have attached to this notice of appeal a statement of the basis for my appeal.

Appeal Received By _____ Date _____ Time _____

Submitted By _____ Copy Received By _____

Richard, Danny
Dr Valentine
0000007331

| DIAGNOSIS | | |
| --- | --- | --- |

**DRUG ALLERGIES**

| HEIGHT | WEIGHT | |
| --- | --- | --- |
| | | ( Another brand of drug identical in form and content may be dispensed unless checked. |

| DATE | TIME | ORDERS |
| --- | --- | --- |
| 1/18 | 1500 | Discharge to custody of Russell County Sherrif's Dept. Pt to be followed by Russell Co. Jail Physician |
| | | VORV Dr Valentine/ Byron Thomas RN |

**PHYSICIAN SIGNATURE**

| | DATE |
| --- | --- |
| | |

# OBSERVATION

# COVER

# SHEET

**RUSSELL COUNTY JAIL**

**LOG OF CHECKS ON INMATES REQUIRING OBSERVATION**

INMATE NAME _Danny Pickard_ CELL _H-1_ DATE _1-24-07_

REASON FOR OBSERVATION _Medical_

DOCTOR OR NURSE INSTRUCTIONS _____

| DATE | TIME | OFFICERS INITIALS | REMARKS | DATE | TIME | OFFICERS INITIALS | REMARKS |
|------|------|-------------------|---------|------|------|-------------------|---------|
| 1/24/7 | 2001 | JA | Sleep | 01-25-07 | 1121 | JA | sleep |
| 1/24/07 | 2008 | CP | Meds | 1-25-7 | 1130 | CP | Fed Tray |
| 1/24/7 | 2030 | JA | Sleep | 1-25-07 | 11:47 | JMB | picked up tray |
| 1/24/07 | 2102 | CP | Sleep | 01-25-07 | 1211 | JA | sleep |
| 1/24 | 2136 | JMB | At Door | 01-25-07 | 1414 | JB | sleep |
| 1/24/07 | 2227 | CP | Sleep | 012507 | 1533 | JB | sleep |
| 1/24/07 | 2301 | JB | H.C. | 012507 | 1553 | JB | sleep |
| 1/24/07 | 2357 | JB | Sleep | 012507 | 1626 | JB | Fed |
| 1/25 | 016 | JMB | Sleep | 012507 | 1717 | JA | sleep |
| 012507 | 0127 | JM | headcount | 1-25-07 | 1744 | CP | Sleep |
| 1/25/7 | 0200 | JA | Sleep | 1/25 | 1850 | JMB | Meal Sleep |
| 1/25 | 0232 | JMB | Sleep | 1/25 | 1943 | JMB | Sleep |
| 012507 | 0315 | JM | headcount | 1/25/07 | 2021 | JC | Meds |
| 0326 | | | | 1/25/7 | 2023 | JA | Sleep |
| 1/25/07 | 0355 | AC | Fed | 1/25/07 | 2107 | CP | Sleep |
| 012507 | 0418 | JM | picked up tray | 1/25/07 | 2147 | CP | Sleep |
| 1/25/7 | 0454 | JA | Sleep | 1/25/7 | 2245 | JA | Sleep |
| 1/25 | 0504 | JMB | Sleep | 1/25 | 2302 | JMB | Sleep |
| 1/25 | 0546 | JMB | Sleep | 1/25/07 | 2343 | CP | Sleep |
| 012507 | 0640 | JM | master headcount | 1/26/7 | 0010 | JA | Sleep |
| 012507 | 0812 | JB | sleep | 1/26 | 027 | JMB | sleep |
| 012507 | 0857 | JB | at Door | 126 | 147 | JCV | Sleep HC |
| 012507 | 0918 | JB | Sleep | 1/26 | 026 | JMB | Sleep |
| 012507 | 1002 | JB | Sleep | 1/26 | 0306 | JMB | Sleep |
| 012507 | 1029 | JB | Sleep | 1/26 | 0338 | JMB | Sleep HC |
| 1-25-7 | 1112 | CP | Sleep | 1/26/07 | 0402 | CP | Sleep |

# RUSSELL COUNTY JAIL

## LOG OF CHECKS ON INMATES REQUIRING OBSERVATION

INMATE NAME _____ CELL _____ DATE _____

REASON FOR OBSERVATION _____

DOCTOR OR NURSE INSTRUCTIONS _____

_____

| DATE | TIME | OFFICERS INITIALS | REMARKS | DATE | TIME | OFFICERS INITIALS | REMARKS |
|---|---|---|---|---|---|---|---|
| 1/26 | 0410 | AC | Fed | 1/27/07 | 07:45 | CI | At Door |
| 1/26 | 0450 | AC | Sleep | 1-27-07 | 08:45 | CI | Laying down |
| 1/26 | 0511 | AC | Sleep | 1-27-07 | 0848 | RB | Laying down |
| 1/26 | 0526 | BAM | Sleep | 1/27/07 | 11:50 | CI | Lunch |
| 1-27-07 | 08:07 | BM | appears asleep | 1/27/07 | 12:00 | CI | Pllu Tray |
| 1-26 | 0740 | SG | Sleep | | | | |
| 1-26-07 | 09:18 | BM | Sleep | 1/27/07 | 1400 | RT | Sleeping |
| 1-26 | 1025 | SG | gave meds | 1/27/7 | 1500 | SG | sleep |
| 1-26-07 | 1042 | KWS | Laying down | 1/12/7 | 1600 | SG | Sleep |
| 1-26-07 | 11:23 | BM | Reading | 1/27/07 | 16.28 | CI | Dinner |
| 1-26 | 1200 | SG | pick up tray | 1/27/7 | 17:00 | CI | Pllu Trays |
| 1-26-07 | 4:30 | BM | feeding | 1/27/7 | 1840 | SG | Sleep H/C |
| 1/26 | 1843 | JS | HC/lay Down | 1-27 | 1920 | EK | LAY Down |
| 1-26 | 1900 | JS | laying down | 1-27 | 2035 | EK | LAY Down |
| 1-26 | 2001 | JS | lay down | 1-27 | 2150 | EK | LAY Down |
| 1-26 | 2120 | JS | lay down | 1-27 | 2230 | EK | LAY Down |
| 1/26 | 2158 | JS | lay down | 1-27 | 2310 | EK | LAY Down |
| 1-26 | 2350 | JS | Count | 1-28 | 0110 | EK | LAY Down |
| 1-27 | 0010 | JS | lay down | 1-20 | 0200 | EK | LAY Down |
| 1-27 | 0115 | JS | Count | 1/28 | 0404 | JS | lay Down |
| 1-27 | 0210 | JS | lay down | 1/28 | 0645 | KE | laying on floor |
| 1-27 | 0330 | JS | Count | 28 Jan 07 | 0700 | KWS | Laying down |
| 1-27 | 0400 | JS | Tray | 1-28 | 0728 | SG | Sleep |
| 1-27 | 0455 | JS | Tray up | 28 Jan 07 | 0830 | KWS | Gave Meds |
| 1-27 | 0530 | JS | lay down | 28 Jan 07 | 0930 | KWS | Laying down |
| 1-27 | 0615 | JS | LAY Down/HC | 28 Jan 07 | 1018 | KWS | Laying down |

# RUSSELL COUNTY JAIL

## LOG OF CHECKS ON INMATES REQUIRING OBSERVATION

INMATE NAME _____ CELL _____ DATE _____

REASON FOR OBSERVATION _____

DOCTOR OR NURSE INSTRUCTIONS _____

_____

| DATE | TIME | OFFICERS INITIALS | REMARKS | DATE | TIME | OFFICERS INITIALS | REMARKS |
|---|---|---|---|---|---|---|---|
| 28 Jan07 | 1160 | 1403 | Served Tray | 1-29-07 | 1335 | CP | Sleep |
| 28 Jan07 | 1240 | 1403 | Picked up Tray | 01-29-07 | 1350 | | sleep |
| 28 Jan07 | 1300 | MOS | Laying down | 01-29-07 | 1425 | | sleep |
| 28 Jan07 | 1349 | MMS | Laying down | 1-29-7 | 1445 | CP | Sleep |
| 28 Jan07 | 1428 | MMS | Laying down | 1-29-07 | 1628 | EP | feedin |
| 28 Jan07 | 1530 | KMS | Laying down | 1-29-07 | 16:45 | | picked up tray |
| 28 Jan07 | 1630 | KMS | Served Tray | 1-29-7 | 1700 | CP | Pick-up tray |
| 28 Jan07 | 1709 | MOS | Picked up Tray | 01-29-07 | 1842 | | sleep / me |
| 1/28 | 1841 | SS | HC/lay down | 01/29/07 | 1900 | | Sleep |
| 1-28 | 1955 | EK | LAY Down | 1/29 | 1949 | | Sleep |
| 1-28-07 | 2336 | KBH | Laying down | 1/29 | 2020 | | mes |
| 1-29 | 0159 | RW | Laying down HC | 1/29 | 2042 | | Sleep |
| 1-29 | 0250 | EK | LAYING Down E | 1/29 | 2056 | | Sleep |
| 1/29 | 0431 | SS | Breakfast | 1/29 | 2211 | | Sleep |
| 1/29 | 0506 | RW | Sleep | 1/29 | 2202 | | Se. Sleep |
| 1/29 | 0542 | RW | Sleep | 1/29 | 2346 | | Sleep |
| 1/29 | 0610 | RW | Sleep | 1/30/7 | 0100 | UA | Sleep |
| 1/29 | 0640 | RW | Sleep | 1/30/7 | 0200 | UA | Sleep |
| 1-29 | 0642 | EK | At Door / HC | 1/30/7 | 0315 | UA | Sleep |
| 1-29-7 | 0651 | CP | HC / Laying on Mat | 1/30/07 | 0347 | | Sleep |
| 01-29-07 | 0835 | | laying down w/HC | 1/30/07 | 04.06 | RW | sleep HC |
| 01-29-07 | 0804 | | sleep | 1/30/07 | 0411 | | fed |
| 1-29-7 | 1010 | CP | Sleep | 1/30 | 0424 | | On Mat |
| 1-29-7 | 1100 | CP | sleep | 1/30/7 | 0511 | UA | Sleep |
| 1-29- | 11:12 | | sleep | 1/30/07 | 0643 | RW | sleep HC |
| 012907 | 1154 | | TRAY P/u/laying | 013007 | 0835 | | sleep |

# RUSSELL COUNTY JAIL

## LOG OF CHECKS ON INMATES REQUIRING OBSERVATION

INMATE NAME _____ CELL _____ DATE _____

REASON FOR OBSERVATION _____

DOCTOR OR NURSE INSTRUCTIONS _____

_____

| DATE | TIME | OFFICERS INITIALS | REMARKS | DATE | TIME | OFFICERS INITIALS | REMARKS |
|------|------|-------------------|---------|------|------|-------------------|---------|
| 013007 | 0940 | | slap | | | | |
| 013007 | 1015 | | sleep | | | | |
| 1-30-07 | 11:42 | GT | feeding | | | | |
| 013007 | 1213 | | sleep | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |



# RUSSELL COUNTY SHERIFF OFFICE
## CORRECTIONAL HEALTH
## TINA RILEY-PELFREY, LPN CCHP
### TEL: (334) 298-8621          FAX: (334) 297-5130

# FAX

**TO:** ___SUMMIT HOSPITAL___   **FROM:** ___RUSSELL COUNTY JAIL___

**FAX #:** _____732-3253_____   **PAGES:** ___2___

**PHONE #:** _____   **DATE:** ___011907___

**RE:** ___DANNY PICKARD___   **CC:** _____

___ URGENT  ____ FOR REVIEW  ___ PLEASE COMMENT  _X_ PLEASE REPLY

**NOTES:**

2nd request

Thanks.




TOMMY BOSWELL, SHERIFF
POST OFFICE BOX 640
PHENIX CITY, ALABAMA
36868-0640
(334) 298-6535
FAX (334) 291-7667

## RUSSELL COUNTY SHERIFF'S DEPARTMENT
## CONSENT TO OBTAIN MEDICAL RECORDS

I, ___Danny Pickard_____, hereby give my consent for

___Summit  Hospital/Medical Records___ to release any and all medical information

pertinent to my Medical History to the Prentiss L. Griffith Detention Facility.

PATIENT/INMATE SIGNATURE

DOB: _050457_____

SSN: _260_-_92_-_3515_

DATE: _1/19/07_

WITNESS

ADDRESS:    Russell County Sheriff's Department
ATTN: Lt. Tina Riley, LPN
Post Office Box 640, 307 Prentiss Drive
Phenix City, Alabama 36868-0640
(334) 298-8621    FAX: (334) 291-7667



Log for
Mar 22 2007 10:45a

Last Transaction

| Date | Time | Type | Identification | Duration | Pages | Result |
|------|------|------|----------------|----------|-------|--------|
| Mar 22 | 10:45a | Fax Sent | 7323253 | 0:52 | 2 | OK |

Home · Store Locator · Contact Us · Site Map · My Grocery List

# Publix.

**W H E R E   S H O P P I N G   I S   A   P L E A S U R E.**

Search for _____ in Entire Site [GO] Search Tips

Wellness & Pharmacy   Featured Products   Services   Clubs & Programs   Custom Orders   Aprons   About Publix

## *Store Locator*

*Map*

Here is the map for the store you selected, as well as its hours of operation and any services that are offered. Click **Driving Directions** to get detailed directions to the store.

If you'd like to go back to your list of results again, return to search results. Search again if you'd like to try another address or refine your search.

**Hamilton Mill Village SC**
2463 Hamilton Mill Pkwy
Dacula, GA 30019-4648
Main: (770) 614-1070
Fax: (770) 614-2090
Pharmacy: (770) 614-1076

↓ **Store Hours**
↓ **Pharmacy Hours**
↓ **Store Services**

**See What's on Sale This Week**

Need Help [?]


*10:45 Spoke c pharmacy - have t filled RX since 2002*



*Driving Directions*

**Store Hours**
Sun 7:00 AM - 10:00 PM
Mon 7:00 AM - 10:00 PM
Tues 7:00 AM - 10:00 PM
Wed 7:00 AM - 10:00 PM
Thurs 7:00 AM - 10:00 PM
Fri 7:00 AM - 10:00 PM
Sat 7:00 AM - 10:00 PM

# BAMA UNIFORM ARREST REPO

| | Fingerprinted | R84 Comleted |
|---|---|---|
| | 2 No ☐ Yes | No ☐ Yes |

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

| 1 ORI # 0570000 | 2 AGENCY NAME Russell County Sheriff's Department | 3 CASE # | 4 SFX |
|---|---|---|---|

**IDENTIFICATION**

| 5 LAST, FIRST, MIDDLE NAME Pickard, Danny Wayne | | | | | | | 6 ALIAS AKA | | |
|---|---|---|---|---|---|---|---|---|---|

| 7 SEX M | 8 RACE W | 9 HGT. 5'00" | 10 WGT. 185 | 11 EYE BRN | 12 HAIR BLK | 13 SKIN FAIR | 14 | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | 1 SCARS | 2 MARKS | 3 TATOOS   4 AMPUTATIONS |

| 15 PLACE OF BIRTH (CITY, COUNTY, STATE) Muleshoe, Texas | 16 SSN 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 | 17 DATE OF BIRTH 05/04/57 | 18 AGE 54 | 19 MISCELLANEOUS ID# |
|---|---|---|---|---|

| 20 SID # | 21 FINGERPRINT CLASS    KEY    MAJOR    PRIMARY    SCDV    SUB-SECONDARY    FINAL | 22 DL # 028310898 | 23 ST GA |
|---|---|---|---|

| 24 FBI # | HENRY NCIC | | | | | | | | | 25 IDENTIFICATION COMMENTS |
|---|---|---|---|---|---|---|---|---|---|---|

| 26   1 RESIDENT   2 NON-RESIDENT | 27 HOME ADDRESS (STREET, CITY, STATE, ZIP) 50 Norman Dr., Seale, Alabama 36856 | 28 RESIDENCE PHONE 706-289-6439 Cell | 29 OCCUPATION (BE SPECIFIC) Unemployed |
|---|---|---|---|

| 30 EMPLOYER (NAME OF COMPANY/SCHOOL) none | 31 BUSINESS ADDRESS (STREET, CITY, STATE, ZIP) none | 32 BUSINESS PHONE |
|---|---|---|

**ARREST**

| 33 LOCATION OF ARREST (STREET, CITY, STATE, ZIP) 4401 River Chase Drive, Phenix City, Al 36867 | 34 SECTOR # 0000002 | 35 ARRESTED FOR YOUR JURISDICTION?   YES   NO   IN STATE   OUT OF STATE   AGENCY |
|---|---|---|

| 36 CONDITION OF ARRESTEE   1 DRUNK   2 DRINKING   3 SOBER   4 DRUGS | 37 RESIST ARREST?   1 YES   2 NO | 38 INJURIES?   1 NONE   2 OFFICER   3 ARRESTEE | 39 ARMED?   1 Y   2 N | 40 DESCRIPTION OF WEAPON   1 HANDGUN   2 RIFLE   3 SHOTGUN   4 OTHER FIREARM   5 OTHER WEAPON |
|---|---|---|---|---|

| 41 DATE OF ARREST 01/18/07 | 42 TIME OF ARREST 4:00 p.m. | 43 DAY OF ARREST S M T W T F S 1 2 3 4 5 6 7 | 44 TYPE ARREST   1 ON VIEW   2 CALL   3 WARR | 45 ARRESTED BEFORE?   1 YES   2 NO   3 UNKNOWN |
|---|---|---|---|---|

| 46 CHARGE-1   1 FEL   2 MISD Probation Violation, Okaloosa, Florida | 47 UCR CODE | 48 CHARGE-2   1 FEL   2 MISD | 49 UCR CODE |
|---|---|---|---|
| 50 STATE CODE/LOCAL ORD. | 51 WARRANT # | 52 DATE ISSUED | 53 STATE CODE/LOCAL ORD. | 54 WARRANT # | 55 DATE ISSUED |

| 56 CHARGE-3   1 FEL   2 MISD | 57 UCR CODE | 58 CHARGE-4   1 FEL   2 MISD | 59 UCR CODE |
|---|---|---|---|
| 60 STATE CODE/LOCAL ORD. | 61 WARRANT # | 62 DATE ISSUED | 63 STATE CODE/LOCAL ORD. | 64 WARRANT # | 65 DATE ISSUED |

| 66 ARREST DISPOSITION   1 HELD   4 TOT-LE   2 BAIL   5 OTHER   3 RELEASED | 67 IF OUT ON RELEASE WHAT TYPE? | 68 ARRESTED WITH (1) ACCOMPLICE (FULL NAME) |
|---|---|---|
| | | 69 ARRESTED WITH (2) ACCOMPLICE (FULL NAME) |

**VEHICLE**

| 70 VYR | 71 VMA | 72 VMO | 73 VST | 74 VCO   TOP   BOTTOM | 75 TAG # | 76 LIS | 77 LIY |
|---|---|---|---|---|---|---|---|

| 78 VIN | 79 IMPOUNDED?   1 YES 2 NO | 80 STORAGE LOCATION/IMPOUND # |
|---|---|---|

| 81 OTHER EVIDENCE SEIZED/PROPERTY SEIZED | ☐ CONTINUED IN NARRATIVE |
|---|---|

**JUVENILE**

| 82 JUVENILE DISPOSITION:   1 HANDLED AND RELEASED   2 REF. TO JUVENILE COURT   3 REF. TO WELFARE AGENCY   4 REF. TO OTHER POLICE AGENCY   5 REF. TO ADULT COURT | 83 RELEASED TO |
|---|---|

| 84 PARENT OR GUARDIAN (LAST, FIRST, MIDDLE NAME) | 85 ADDRESS (STREET, CITY, STATE, ZIP) | 86 PHONE |
|---|---|---|

| 87 PARENTS EMPLOYER | 88 OCCUPATION | 89 ADDRESS (STREET, CITY, STATE, ZIP) | 90 PHONE |
|---|---|---|---|

**RELEASE**

| 91 DATE AND TIME OF RELEASE   :   MT | 92 RELEASING OFFICER NAME | 93 AGENCY/DIVISION | 94 ID # |
|---|---|---|---|

| 95 RELEASED TO: | 96 AGENCY/DIVISION | 97 AGENCY ADDRESS |
|---|---|---|

| 98 PERSONAL PROPERTY RELEASED TO ARRESTEE   1 YES   2 NO   3 PARTIAL | 99 PROPERTY NOT RELEASED/HELD AT: | 100 PROPERTY # |
|---|---|---|

| 101 REMARKS (NOTE ANY INJURIES AT TIME OF RELEASE) | |
|---|---|
| | LOCAL USE |
| 102 SIGNATURE OF RECEIVING OFFICER | 103 SIGNATURE OF RELEASING OFFICER | STATE USE |

| MULTIPLE CASES CLOSED | 104 CASE # | 105 | 106 CASE # | 107 SFX | 108 CASE # | 109 SFX | 110 ADDITIONAL CASES CLOSED NARR: Y N |
|---|---|---|---|---|---|---|---|

| 111 ARRESTING OFFICER (LAST, FIRST, M.) King, Stanley | 112 ID# 572 | 113 ARRESTING OFFICER (LAST, FIRST, M.) | 114 ID # | 115 SUPERVISOR   ID # | 116 WATCH CMDR.   ID # |
|---|---|---|---|---|---|

STATE OF ALABAMA )    IN THE DISTRICT COURT OF

VS. )    RUSSELL COUNTY, ALABAMA

_Danny   Pickard_   )

**DEFENDANT** )    CASE NUMBER    DC-_____

_Fug  fm  Jus  N/A_

## ORDER

___  (1.)   **DEFENDANT ADVISED OF RIGHT TO AN ATTORNEY**

___  2.   **ENTERED PLEA OF NOT GUILTY**

___  3.   **REQUESTED PRELIMINARY HEARING**

___  4.   **RETAINED THE HONORABLE** _____**AS COUNSEL**

**It is hereby ORDERED, ADJUDGED AND DECREED:**

___  1.   **THAT THIS CAUSE IS WAIVED TO THE NEXT TERM OF THE GRAND JURY**

___  2.   **AFTER HEARING, THIS CAUSE IS BOUND TO THE NEXT TERM OF THE GRAND JURY**

___  3.   **BOND IS SET AT** _____

___  (4.)   **THAT THIS CAUSE IS DISMISSED UPON DEFENDANT EXECUTING WAIVER OF EXTRADITION**

___  5.   **THAT THE HONORABLE**_____**IS APPOINTED COUNSEL TO REPRESENT THE DEFENDANT**

___  6.   **THAT THIS CASE IS CONTINUED TO THE** ____**DAY OF**_____ **20**___ **AT ~~3:00~~ P.M. EST** _(Ms. Riley)_

___  7.   _Note  to  Nurse  dey say he needs medicate_

_____

_____

**DONE, This the** _19_ **day of** _____*Jan*_____ , _2001_.

_____
**JUDGE**

| MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TRIPTYLIN 100MG TAB<br>...E 1 TABLET BY MOUTH<br>TWICE DAILY. | 0800<br>01/25/07 01/25/08 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 2000 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Naprosen 500mg<br>1 tablet @ bed time<br>(x 7 days) | 2000 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

|  | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| B | | | | | | | | | | |
| L | | | | | | | | | | |
| S | | | | | | | | | | |
| BT | | | | | | | | | | |
|  | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| B | | | | | | | | | | |
| L | | | | | | | | | | |
| S | | | | | | | | | | |
| BT | | | | | | | | | | |
|  | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| B | | | | | ƞ | ƞ | X ƞ | X ƞ | ƞ | | ƞ | S |
| L | | | | | | | | | | | |
| S | | | | | | | | | | | |
| BT | | | | | W S | | KBH | | W S | | |

| CHARTING FOR | 01/01/07 | THROUGH | 01/31/07 | PAGE | 1 OF 1 | | |
|---|---|---|---|---|---|---|---|
| Physician | WARR, STURGEON | | | Telephone No. | 334-298-8621 | Medical Record No. | |
| Alt. Physician | WARR, STURGEON | | | Alt. Telephone | 334-298-8621 | 580572 | |
| Allergies | | | | Rehabilitative Potential | | | |

Diagnosis

| Medicaid Number | Medicare Number | Approved By Doctor: | | |
|---|---|---|---|---|
| | | By: | Title: | Date: |
| RESIDENT | PICKARD, DANNY | D.O.B. 00/00/0000 | Sex | Room # RJ72 | Patient Code PICKDAN | Admission Date 01/24/0 |

# MEDICATION ADMINISTRATION RECORD

| MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Amitriptylin 100mg 1 tablet twice daily | 0800 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 2000 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Naproxen 500mg 1 tablet @ bedtime | 2000 | | | | ← LAST DOSE | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Abilify 5mg 1 tablet nice daily x 7 days | 2000 | | | | | | | | | | | → D/C | | | | | | | | | | | | | | | | | | | | |
| Abilify 5mg 2 tabs daily x 7 days | 2000 0800 | | | | | | | | | | | | | | | | | | | → | | | | | | | | | | | | |
| Abilify 15mg 1 tablet daily | 2000 | | | | | | | | | | | | | | | | | | | | → | | | | | | | | | | | |
| Cymbalta 30mg 1 capsule w/ AM | Revised 2000 0800 | | | | | | | | | | | → D/C | | | | | | | | | | | | | | | | | | | | |

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| B | | | FTO | | | | | | | |
| L | | | | | | | | | | |
| S | | | | | | | | | | |
| BT | | | | | | WS | S | X | 7S | PLO4 |

| | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
|---|---|---|---|---|---|---|---|---|---|---|
| B | | | | | | | | | | |
| L | | | | | | | | | | |
| S | | | | | | | | | | |
| BT | | | | | | | | | | |

| | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| B | | | | | | | | | | | |
| L | | | | | | | | | | | |
| S | | | | | | | | | | | |
| BT | | | | | | | | | | | |

CHARTING FOR _____  THROUGH _____

Physician _____
Alt. Physician _____ Warr

Telephone No. _____
Alt. Telephone 2/07

Medical Record No. _____

Allergies _____

Rehabilitative Potential _____

Diagnosis _____

| Medicaid Number | Medicare Number | Approved By Doctor: By: | | | |
|---|---|---|---|---|---|
| | | D.O.B. | Sex | Room # | Patient Code |

RESIDENT  Pickard, Barry

Title: _____  Date: _____

Admission Date _____

182439

# MEDICATION ADMINISTRATION RECORD

| MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cymbalta 30mg 1 capsule daily | 0800 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Abilify 5mg 1 tablet @ bedtime | 2000 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Abilify 10mg 1 tablet @ bedtime | 2000 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Abilify 15mg 1 tablet @ bedtime | 2000 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Trazodone 150mg 1 tablet @ bedtime | 2000 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| B | | | | | | | | | | |
| L | | | | | | | | | | |
| S | | | | | | | | | | |
| BT | | | | | | | | | | |

| | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
|---|---|---|---|---|---|---|---|---|---|---|
| B | | | | | | | | | | |
| L | | | | | | | | | | |
| S | | | | | | | | | | |
| BT | | | | | | | | | | |

| | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| B | | | | | | | | | | | |
| L | | | | | | | | | | | |
| S | | | | | | | | | | | |
| BT | | | | | | | | | | | |

CHARTING FOR _____ THROUGH _____

Physician _____ Telephone No. _____ Medical Record No. _____

Alt. Physician _____ Alt. Telephone _____

Allergies _____ Rehabilitative Potential _____

Diagnosis _____

| Medicaid Number | Medicare Number | Approved By Doctor: | | | | |
|---|---|---|---|---|---|---|
| | | By: | | | Title: | Date: |
| RESIDENT  Pickard Denny | | D.O.B. | Sex | Room # | Patient Code | Admission Date |

| MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cymbalta 60mg 1 capsule in AM | 0800 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Abilify 5mg 2 tabs @ bedtime (x 7 days) | 2000 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Trazodone 150mg 1 tablet @ bedtime | 2000 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| ( | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

REPRINT FROM INTEGRAL SOLUTIONS GROUP 800-285-0767

SPECIAL A-55

|   | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| B | | | | | | | | | | |
| L | | | | | | | | | | |
| S | | | | | | | | | | |
| BT | | | | | | | | | | |

|   | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
|---|---|---|---|---|---|---|---|---|---|---|
| B | | | | | | | | | | |
| L | | | | | | | | | | |
| S | | | | | | | | | | |
| BT | | | | | | | | | | |

|   | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| B | | S | S | 5 cm | 7 am | S | S | S | | | |
| L | | | | | | | | | | | |
| S | | | | | | | | | | | |
| BT | V | √ | A | MQY | 13 | WS | √ A | SB | | | |

| CHARTING FOR | | THROUGH | | | | | |
|---|---|---|---|---|---|---|---|
| Physician | Ware | | | Telephone No. | | Medical Record No. | |
| Alt. Physician | | | | Alt. Telephone | 2/07 | | |
| Allergies | | | | Rehabilitative Potential | | | |

Diagnosis

| Medicaid Number | | Medicare Number | | Approved By Doctor: By: | | | |
|---|---|---|---|---|---|---|---|
| RESIDENT | Pickard, Barry | | | D.O.B. | Sex | Room # | Title: ___ Date: ___ |
| | | | | | Patient Code | Admission Date | |

| MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Librium 25 mg 1 capsule twice daily | 0800 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 2000 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| B | | | | | | | | | | |
| L | | | | | | | | | | |
| S | | | | | | | | | | |
| BT | | | | | | | | | | |

| | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
|---|---|---|---|---|---|---|---|---|---|---|
| B | | | | | | | | | | |
| L | | | | | | | | | | |
| S | | | | | | | | | | |
| BT | | | | | | | | | | |

| | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| B | | | | | | | | | | | |
| L | | | | | | | | | | | |
| S | | | | | | | | | | | |
| BT | | | | | | | | | | | |

CHARTING FOR _____ THROUGH _____

Physician _____

Alt. Physician  Watt

Telephone No. _____

Alt. Telephone _____  1/07

Medical Record No. _____

Allergies _____

Rehabilitative Potential _____

Diagnosis _____

| Medicaid Number | Medicare Number | Approved By Doctor: | | | | |
|---|---|---|---|---|---|---|
| | | By: | | | Title: | Date: |
| RESIDENT  Pickard, Danny | | D.O.B. | Sex | Room # | Patient Code | Admission Date |

182439

3/21/07

Dear Sgt. Bussey
    I have gathered information on four wittnesses, that will come forth on my behalf & testifie to the truth.
    Id also like to challenge Sgt Moore to a lie dectors test, from a company that isnt bias.
    Sgt. Bussey you seem to be a man of integrity as I know you have a responibility to your Jail & the Sheriff. But by now seems to me you would be a lil suspicious by now.
    I dident do anything to deserve the treatment I recieved while being incarassated in your Jail.
    Mrs Riley is a liar & a trouble maker I am writing a grievance on her again today, she will not sign my request & I cant make her.
    I know you realize if we want to court at least half the people that saw what happened will tell the truth, while on stand sworn to tell the truth.
    & don't you want to know the truth, next time this happens he may kill someone.

He looks at me as if he could kill me, when he calls row or count he uses my whole name, loud & more aggressive of all the others he just uses there last name, I wonder if I'm safe here or not, I feel I could disappear & no one would care.

I thank you for your help which you have already done, I ask only for fare treatment I am also human.

After I talk to my lawyer I will find out if I need to give you the witnesses names now or later okay.

I know I'm one man against a large System who finances are unaccountable & I have none, but I do still believe in Miracles & that theres still good & honest people still out there.

I appologize for my writing for the nerves are shot today,

Thanks Again
DWPickard

# Summit Hospital

PHENIX CITY, ALABAMA

# Fax Cover Page

To _Tina Riley, LPN_     From _Karin / LMM_

Company _Russell County Jail_     No. of Pages _18 incl cover_

Fax Number _334-291-5130_     Date _3/23/07_

Re: _Med. Rec._

☐ Urgent     ☐ For Your Review     ☐ Reply ASAP     ☐ Please Comment

_attached see requested records_

**Confidentiality Notice**
This facsimile, and any files transmitted with it, may contain confidential and/or proprietary information in the possession of Summit Hospital and is intended only for the individual or entity to whom addressed. This facsimile may contain information that is held to be privileged, confidential, and exempt from disclosure under applicable law. This information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any unauthorized access, dissemination, distribution, or copying of any information from this facsimile is strictly prohibited and may subject you to criminal and/or civil liability. If you have received this facsimile in error, please call 334-732-3000.
Thank You.

If you have problems receiving this message, please call _____

0009789

BIBBARD DANNY
HARRINGTON DAVID
M        05/04/1957    35
01/15/07 17:57    000007331

24        Summit Hospital
**EMERGENCY PHYSICIAN RECORD**
General Adult    (s)

© 1996 - 2006 T-System, Inc. Circle or check affirmatives, backslash (\) negatives.

TIME SEEN: 1900 ☐ on arrival  ROOM: 10  __ EMS Arrival
HISTORIAN: (patient) spouse  paramedics_____
_HX / _EXAM LIMITED BY:_____

**HPI**

chief complaint: Meth withdrawals

started: Today

| time course: | severity: | modifying factors: |
|---|---|---|
| still present | mild | none |
| better | moderate | |
| gone now | (severe) | |
| worse | | |

context: Pt is going through withdrawals from street Pt broke

quality: bottles of meth crack on yesterday afternoon

location:_____

Recent trauma history_____
Ø

Similar symptoms previously_____
yes

Recently seen / treated by doctor_____
Ø

**ROS**

CONST
fever
  subjective / to _____°F
chills
generalized weakness
weight loss
ENT
sore throat
nasal drainage / congestion
CVS / PULMONARY
cough
  sputum
trouble breathing
chest pain

GI
abdominal pain
nausea / vomiting
diarrhea
black / bloody stools
URINARY
problems urinating
frequent urination

FEMALE GENITAL
abnormal bleeding / discharge
LNMP
  postmenopausal / hysterectomy

SKIN / MS
rash
back pain
leg pain
foot swelling

NEURO / EYES
headache
blackout / dizzy
loss feeling / power
  in arm  leg  face  R / L
difficulty walking
difficulty with speech
double vision
confusion

☐ all systems neg except as marked

**PAST HX** __negative
neurological problems
  CVA    seizure disorder
high blood pressure
cardiac disease
  heart attack (MI)    angina
  heart failure
DVT / PE risk factors
  cast  cancer  recent surgery
  leg swelling  bedridden  paralysis

lung disease
  asthma  emphysema
diabetes Type 1  Type 2
  diet / oral / insulin
renal disease
high cholesterol
HIV / AIDS

Insomnia
ETOH Abuse
Psych DZ

Surgeries / Procedures ___none
cardiac bypass / stent
endoscopy
indwelling lines ports / catheter / dialysis line

dialysis graft
pacemaker

Medications ___none  see nurse note
ASA   NSAID   acetaminophen

Allergies  / NKDA
see nurses note
Denies

SOCIAL HX  smoker          drug use / abuse  Denies
recent ETOH                 nursing home residence
FAMILY HX  Arthro Othensive

Page 1 of 2

☑ Nursing Assessment Reviewed  ☑ Vitals Reviewed

## PHYSICAL EXAM

**General Appearance**
- __ no acute distress
- __ alert

mild / moderate / severe distress
productv / toxic

**EENT**
- pharyn inspection
- ENT inspection nml
- __ pharynx nml
- __ no signs of dehydration

- scleral icterus / pale conjunctivae
- EOM palsy / anisocoria
- __ purulent nasal drainage
- __ pharyngeal erythema / exudate
- __ oral lesions / dry mucous membranes
- __ trauma
- strong etoh odor

**NECK**
- nml inspection
- thyroid nml

- __ thyromegaly
- __ lymphadenopathy ( R / L )
- __ stiff neck / Kernig's / Brudzinski's sign
- __ carotid bruit

**RESPIRATORY**
- chest non-tender
- no resp distress
- breath sounds nml

- __ see diagram
- __ wheezes / rales / rhonchi

**CVS**
- regular rate rhythm
- no murmur
- no gallop

- __ irregularly irregular rhythm
- __ extrasystoles ( occasional / frequent )
- __ tachycardia / bradycardia
- __ PMI displaced laterally
- __ JVD present
- __ murmur grade ___ /6  sys / dias
- __ gallop ( S3 / S4 )
- __ friction rub

- __ decreased pulse(s)
  - R carotid ___ fem ___ dors ped ___
  - L carotid ___ fem ___ dors ped ___

Two-three+ Bounding or nml med-moderate reviewer. Example: 7/7 indicates severe treatment.

**ABDOMEN**
- non tender
- no organomegaly
- nml bowel sounds
- no distension

- __ tenderness
- __ guarding / rebound
- __ abnormal bowel sounds
  - increased / decreased / absent
- __ hepatomegaly / splenomegaly / mass
- __ bruit

**RECTAL**
- __ non-tender
- heme neg stool

- __ black / bloody / heme pos. stool
- __ tenderness / mass / nodule

**BACK**
- nml inspection

- __ CVA tenderness ( R / L )

**SKIN**
- no systemic lesions
- color nml, no rash
- warm, dry

- __ cyanosis / diaphoresis / pallor
- __ skin rash

**EXTREMITIES**
- non-tender
- full ROM
- nml appearance
- no pedal edema

- __ pedal edema
- __ calf tenderness
- __ joint swelling
- __ Homan's sign

**NEURO / PSYCH**
- oriented x3
- mood / affect nml
- __ CN's nml (2-12)
- __ no motor /
  sensory deficit

- __ disoriented to person / place / time
- __ depressed affect
- __ facial droop
- __ weakness / sensory loss
- __ slurred / abnormal speech
- Tremors

① Visual hallucinations
② Suicidal ideations

General Adult-24   Page 2 of 2

## LABS, EKG & XRAYS

| CBC | Chemistries | UA |
|---|---|---|
| normal except | normal except | normal except |
| WBC ___ | Na ___ | CK ___ | WBC ___ |
| Hgb ___ | K ___ | CKMB ___ | RBC ___ |
| Hct ___ | Cl ___ | Troponin ___ | bacteria ___ |
| Platelets ___ | CO2 18 | | dipt ___ |
| segs ___ | Gluc ___ | PT ___ | |
| bands ___ | BUN 29 | PTT ___ | |
| lymphs ___ | Creat 1.5 | | |
| monos ___ | Ca ___ | Amylase ___ | |
| eos ___ | | Lipase ___ | |

**EKG MONITOR STRIP**  __ NSR  __ Rate ___

| EKG | __ NML | ☐ Interp. by me | ☐ Reviewed by me | Rate ___ |
| __ NSR | __ nml intervals | __ nml axis | __ nml QRS | __ nml ST/T |

not / changed from: ___

**CXR**  ☐ Interp. by me  ☑ Reviewed by me  ☐ Discsd w/ radiologist
__ nml/NAD  __ no infiltrates  __ nml heart size  __ nml mediastinum

not / changed from: ___

## PROGRESS

| Time | unchanged | improved | re-examined |

Rx given ___

Discussed with Dr. ___  Time: 2305
will see patient in: office / ED / hospital

Counseled patient / family regarding:  Additional history from:
lab / rad. results  diagnosis  need for follow-up  family  caretaker  paramedics
prior records ordered

**CRIT CARE TIME**  (excluding separately billable procedures)
30-74 min    75-104 min    ___ min

## CLINICAL IMPRESSION

DISPOSITION  ☐ home  ☑ admitted  ☐ transferred
CONDITION  ☐ unchanged  ☐ improved  ☑ stable

**PHYSICIAN SIGNATURE**
☐ Dictated Addendum

**EXHIBIT F – PART TWO**
**MEDICAL FILE OF DANNY WAYNE PICKARD**

## Labs

- H/H
- CBC with Diff *(circled)*
- BMP
- CMP *(circled)*
- Mg *(circled)*
- UHCG
- SHCG - qualitative
- SHCG - quantitative
- Strep Screen
- Amylase *(circled)*
- S. Ketones
- Lipase *(circled)*
- CK
- CK-MB
- Troponin I
- BNP
- PT / PTT
- Sed Rate
- H. Pylori
- UA *(circled)*
- CSF Protocol
- Toxin Screen *(circled)*
- Urine, blood
- Drug Levels:
  Digoxin  Dilantin  ETOH *(circled)*
  Tylenol  ASA  Tegretol
  Depakote  Phenobarbital

## Standard Panels

- Thyroid
  T₄
  T₃
  TSH

## X-Rays

- CXR *(circled)*
- Extremity   R   L
- Sonogram: pelvic   abd
  biliary   renal
- KUB: flat   upright
- CT: head   abdomen/pelvis
  with   without contrast
- IVP
- C-Spine 2 View
- C-Spine 3 View
- Acute Abdominal Series

## Cardiorespiratory

- EKG
- HFN with _____
- ABG: RA   O2
- Culture: urine
  blood x
  stool
- Stool Leukocytes
- Stool Hemoccult

## Please call Doctor

| Time Ordered Call | Doctor | Return |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

## Allergies

## Home Medications:

## Discharge Instructions:

Follow up with Dr: _____

**RETURN IMMEDIATELY FOR WORSENING SYMPTOMS!**

## Initial Nursing Orders

- ☐ Cardiac Monitor
- ☐ Pulse Oximeter
- ☐ Oxygen _____ L  NC
  - ☐ Titrate to keep sat greater than 95%
- ☐ Fully Disrobe / Gown
- ☐ Postural Vitals
- ☐ Neuro checks q _____
- ☑ IV  ☐ Saline Lock  NS / later Bolus ___ ml/hr
- ☐ Phenergan _____
- ☐ Toradol _____
- ☐ Tylenol _____
- ☐ Motrin _____
- ☐ Morphine sulfate _____
- ☐ Demerol _____
- ☐ Nubain _____
- ☐ Rocephin _____ IM mix w/1% Lidocaine plain
- ☐ Rocephin _____ IV _____
- ☐ Zofran _____

## Subsequent Nursing Orders

| Time | Orders Noted |
|---|---|
|  | ☐ Please repeat: BP  HR  RR  Temp _____ |
|  | ☐ May be off cardiac monitor for radiology studies or transport |
| 1915 | Thiamine 100mg IV |
| 1915 | Ativan 2 mg IM |
| 1915 | Haldol 5 mg IM |
| 2050 | Ativan 1mg IV |

## Disposition

- ☑ Admit  ☐ OBS  ☐ Discharge
- ☑ Med/Surg  ☐ Telemetry  ☐ ICU  ☐ L&D
  Dr. Valentul
- ☐ Transfer to: _____
  Care of Doctor: _____
- Condition:  ☐ Improved  ☑ Stable  ☐ Other: _____
- (1) Physician Signature: _____
- (2) Physician Signature: _____
- (3) Nurse Signature: _____

Page 1 of 1

Name: Last **Pickard**  First **Danny**  M: **W**  DOB: **05-04-57**  Sex: **M**  SVC Date: **01-15-07**  PKUP Time: **ASAP**  Rpt

Patient Address: **8377 Ca. 50 Norman Dr**  Dept / Rm
Origin Name: **Residence**
Origin Address: **50 Norman Dr Ft. Mitchell, AL**
Destination Name: **Summit ER**
Destination Address: **4401 Riverchase Dr. Phenix City AL 31867**

Phone:: ____  S.S. **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**  Sending MD: ____  Receiving MD: ____  Phone ____

### Signs & Symptoms
Pain / LOC / Skin / Pupils L R / ABDMN / Neuro/Vasc int / Lungs

Reason for Transport / Chief Complaint
(Why is the patient being transported today?): **Alcoholic**

What Specific Service is required but not avail at orig facility? **med eval**

Current Medications: **Ambien**

### Observations / Narrative

Medical Necessity: A: found 49 y/o w/m sitting on sofa
Alcoholic needs help, drunk most/was last night
pt having hallucinations

Narrative:
Hx: pt is wanting help for his alcoholism
A: CAO x 3, pupils slightly constricted, Airway patent, ∅ JVD, trach, midline, Chest: equal rise & fall, Abdomen unremarkable, Pelvis: stable, Extremities: PMS= good x4, CRT normal, Skin warm & dry.
R: VS below, ECG = S. Tach
T: Tcins. CP to Summit ER & turned care over to staff

Allergies: **unknown**

Physician Order's Verification
Physician Signature : ____  Cont on Narrative? Y N

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 2 | 706 | 151/91 | 122 | 24 | 5100 | 96 | |
| 2 | 728 | 136/91 | 112 | 24 | 5100 | 97 | |

Prov: 1 Driver ____  M. Denesey  EmT P  0600177
Prov: 2 Tech ____  G. Lawrence
Prov: 3 Other ____

Level of Care Provided: **0318**

**...mit Hospital**

***...idisciplinary Progress Note***

07/000000

313/A
PICKARD DANNY
UA VALENTINE RICHARD
M 05/04/1957
01/16/07 00:45

0009789
MS3
35
000007331

| Date & Time | Problem / Focus | Progress Note | Signature & Title |
|---|---|---|---|
| 1-16 | | Pt body mover & threated staff w glass shard — tried to cut own wrists — | |
| | | Police here — pt has forgery counts against him apparently, — dropped off a [illegible] [illegible] to report from staff | |
| | | No apparent outstanding warrant | |
| | | Pt agitated: will transfer to unit to monitor him more closely | |
| | | Add Thorazine for control | |
| | | [illegible] Talking & waits [illegible] | |
| | | P 95 T98 137/65 add [illegible] | |
| | | RR 20 | |
| | | [signature] | |
| | | A Alc withdraw<br>Suicidal gesture<br>Violent | [signature] |

312/A
PICKARD DANNY                    0009789
UA VALENTINE RICHARD             M83
M              05/04/1957
01/16/07 00:45   35
               000007331

**Summit Hospital**
*Multidisciplinary Progress Note*
82/000000

Case Management

| Date & Time | Problem / Focus | Progress Note | Signature & Title |
|---|---|---|---|
| 1/18/07 0830 to 0947 | Transfer Needs - Called to West Central, East Alabama Medical Center, Brookwood, Meadowhaven & UAB West - no psych beds. Call to Trinity. Per Kelly, we had instructed to call D. Harvey at 205·444·0420 or pager 205·940·1698. Spoke a Joyce - will discuss c Dr. Harvey for possible acceptance at Trinity. ——— J Mughal | |

20 DANGER 3.10

Summit Hospital
*Medication Administration Record - Blank*
89/000000

PICKARD DANNY
HARRINGTON LLOYD
N          05/04/1957
01/15/07 17:57

0009789
ENS

35
000007332

**Diagnosis:**

## Alcoholism

**Allergies:**

**Weight:**

| Medication | Start | Stop | Days 0701 – 1600 | Evenings 1501 – 2300 | Nights 2301 - 0700 |
|---|---|---|---|---|---|
| **Administration Period:** 1/16 @ 0701 thru 1/17 @ 0700 | | | | | |
| Protonix 40mg IV QD | 1/16/07 | | 0900 M | (2100 or 2400 dt) | |
| Darvocet N 100 ī - īī Q4H PO PRN pain. | | | | 2330 dt a330 dt | 0500 dt |
| Valium 10mg IM or PO q2h PRN agitation | | | | 2010 dt 2130 dt 2230 dt 0030 dt 0030 dt 0230 dt | 0500 dt |
| Haldol 10mg P.O. X 1 now | 1/17/07 | 1/17/07 | | | 0150 yc |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

0130 yc 07 yc 3:11 p

| Response | Meds Not Given | Injection Sites | Signature | Initials | Signature | Initials |
|---|---|---|---|---|---|---|
| A. Relief in 30 minutes | P. Patient Asleep | I. Right Deltoid Area | [signature] RN | M | Y. Kwon. RN | yn |
| B. Relief in 60 minutes | Q. Off of Unit | II. Left Deltoid Area | | | | |
| C. No Relief. | R. Refused | III. Right Gluteal Area | | | DTankesley  VRN | dt |
| | S. NPO / Studies | IV. Left Gluteal Area | | | | |
| | T. NPO / Surgery | V. Right Abdomen | | | | |
| | | VI. Left Abdomen | | | | |
| | | VII. Right Thigh | | | | |
| | | VIII. Left Thigh | | | | |
| | | IX. Right Ventrogluteal | | | | |
| | | X. Left Ventrogluteal | | | | |

PRN / Routine

RX0R02
Rx Location: Pharmacy
User    : JACDAVIS

MEDICATION ADMINISTRATION RECORD
DeWitt Hospital

Date:  1/17/2007
Time:  16:12:01

01/18/2007 07:00:00 through 01/19/2007 06:59:00

Patient : PICKARD DARBY        0009789  Sex   : M        Admit Date: 1/16/07    Location: M93  312-A
Physician: UA VALENTINE RICHARD     89987  Height: 5 ft 10 in  Weight  : 180 lb 0 oz

| No: | Medication | Start/Stop | Adm | 1/18 07:00 to 14:59 | 1/18 15:00 to 22:59 | 1/18 23:00 to 06:59 | 1/19 |
|---|---|---|---|---|---|---|---|
| | | Scheduled Orders | | | | | |
| 0049492 | POTASSIUM CHL 20MEQ 20 MEQ PO EACH DAY | 01/17/2007 | | 0900 | | | |
| | ONE DOSE = 20 MEQ = 1 TABLET | AT 0900 | | | | | |
| | K-DUR 20MEQ TAB | 03/17/2007 | | | | | |
| | ** SOUND-ALIKE/LOOK-ALIKE MEDICATION ** | AT 0900 | | | | | |
| | ****FLOOR STOCK**** | | | | | | |
| | Sign 1:        Sign 2: | | | | | | |
| 0048688 | PROTONIX 40MG INJ 40 MG IV EACH DAY | 01/16/2007 | | 0900 | | | |
| | ONE DOSE = 40 MG | AT 0900 | | | | | |
| | PANTOPRAZOLE 40MG INJ | 03/16/2007 | | | | | |
| | ****FLOOR STOCK**** | AT 0900 | | | | | |
| | Sign 1:        Sign 2: | | | | | | |

| One time only medications-dose/strength | Time | Init | Signatures | Init | Shift |
|---|---|---|---|---|---|
| | | | | M 0 | 7A—7P |

Patient     : PICKARD DARBY        0009789        Diagnosis: ALCOHOLISM
Admitted    : 1/16/07 00:45                       Discharge: 0/00/00  00:00
Admit Physician: UA VALENTINE RICHARD             Note     :
Age         : 49 Y   Date of Birth: 05/04/1957
Sex         : Male        Hist.#:  7331           Location : M93  312-A
Allergies: No Known Drug Allergy
Patient:   0009789 PICKARD DARBY          Room/Bed: 312-A        Verified By:

RXOR02
RX Location: Pharmacy
User      : JACDAVIS

ADMIT HOSPITAL
MEDICATION ADMINISTRATION RECORD
01/18/2007 07:00:00 through 01/19/2007 06:59:00

Date: 1/17/2007
Time: 16:12:01

Patient : PICKARD DANNY          0009789  Sex  : M          Admit Date: 1/16/07   Location: MS3  312-A
Physician: UA VALENTINE RICHARD          99997  Height: 5 ft 10 in  Weight : 180 lb 0 oz

| | | 1/18 | 1/18 | 1/18 | 1/18 | 1/18 | 1/19 |
| No: | Medication | Start/Stop | Adm | 07:00 to 14:59 | 15:00 to 22:59 | 23:00 to 06:59 |
| | | Scheduled Orders | | | | |
| 0049011 | Bags 7, 8, 9 | 01/16/2007 | | 1130 | 1930 | 0330 |
| | Dextrose 5%NS 0.45% KCL 10mEQ 1000 ML | AT 1130 | | | | |
| | IV CONT 1000 ML | 03/17/2007 | | | | |
| | ONE DOSE = 1000 ML | AT 1129 | | | | |
| | THIAMINE HCL 100 MG IV CONT 2 ML | | | | | |
| | ONE DOSE = 100 MG = 1 ML | | | | | |
| | D5NS1/2 + KCL 10MEQ 1000ML | | | | | |
| | VIT B1 (THIAMINE) 100MG/ML INJ | | | | | |
| | RATE: 125 ML /HR | | | | | |
| | ****FLOOR STOCK**** | | | | | |
| | Sign 1:         Sign 2: | | | | | |

| One time only medications-dose/strength | Time | Init | Signatures | | Init | shift |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | | | |

Patient    : PICKARD DANNY          0009789     Diagnosis: ALCOHOLISM
Admitted   : 1/16/07 00:45                      Discharge: 0/00/00  00:00
Admit Physician: UA VALENTINE RICHARD           Note   :
Age        : 49 Y  Date of Birth: 05/04/1957
Sex        : Male        Hist.#:    7331         Location : MS3  312-A
Allergies: No Known Drug Allergy
Patient:  0009789 PICKARD DANNY              Room/Bed: 312-A            Verified By: _____

Selected Encounters

SUMMIT HOSPITAL
4401 RIVER CHASE DRIVE
PHENIX CITY  AL  36867

LABORATORY
JOHN STICH, M.D.

NAME: PICKARD DANNY
MR# : 000007331

DOB: 5/04/57
AGE: 49  SEX: M

PCP:

\*\*\*URINALYSIS\*\*\*

SPECIMEN YR  2007
        DT 01/15
        TM 18:40

REFERENCE
LOW - HIGH   UNITS

| | | LOW - HIGH | |
|---|---|---|---|
| COLOR | . YELLOW | - | |
| APPEAR | CLEAR | - | |
| SP GR | 1.020 | - | |
| PH | 6.0 | | |
| PROTEIN | 30 | TRACE - | |
| GLUC | NEGATIVE | NEG - | |
| KET | >~80 | NEG - | |
| BILI | NEGATIVE | NEG - | |
| OCCBLOOD | LARGE | NEG - | |
| UROBIL | 0.2 | 0.2 - | 1.0 |
| NITRITE | NEGATIVE | - | |
| LEUKOCYT | NEGATIVE | NEG - | |
| WBC | 0-3 | - | |
| RBC | 10-25 | - | |
| EPITH | OCC | - | |
| MUCUS | FEW | - | |
| ACETEST | LARGE | - | |

TECHNOLOGIST  DAC
  VERIFIED DT 01/15/07
      TM 19:02

COMMENTS:
15/07/01 19:00 UA    SOURCE:: VOIDED

RXOR02
Rx Location: Pharmacy
User    : JACDAVIS

**MEDICATION ADMINISTRATION RECORD**
01/18/2007 07:00:00 through 01/19/2007 06:59:00

Date: 1/17/2007
Time: 16:12:01

Patient : PICKARD DANNY          0009789    Sex    : M        Admit Date: 1/16/07    Location: MS3  312-A
Physician: UA VALENTINE RICHARD     99987  Height: 5 ft 10 in  Weight  : 180 lb 0 oz

| No: | Medication | Start/Stop | Adm | 1/18<br>07:00 to 14:59 | 1/18<br>15:00 to 22:59 | 1/18<br>23:00 to 06:59 | 1/19 |
|---|---|---|---|---|---|---|---|
| | | PRN Orders | | | | | |
| 0049493 | PROPOXYPHENE N-APAP 2 TABLET PO THREE TIMES A DAY AS NEEDED<br>ONE DOSE = 2 TABLET<br>Darvocet N-100 TAB<br>PRN PAIN<br>****FLOOR STOCK****<br>Sign 1:        Sign 2: | 01/17/2007<br>AT 0859<br>03/18/2007<br>AT 0858 | | 1046 ST | | | |
| 0049494 | CHLORDIAZEPOXIDE HCL 25 MG PO EVERY THREE HOURS AS NEEDED<br>ONE DOSE = 25 MG = 1 CAPSULE<br>LIBRIUM 25MG CAP<br>****FLOOR STOCK****<br>Sign 1:        Sign 2: | 01/17/2007<br>AT 0901<br>03/18/2007<br>AT 0900 | | | | | |

| One time only medications-dose/strength | Time | Init | Signatures | | Init | Shift |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

Patient        : PICKARD DANNY        0009789
Admitted       : 1/16/07 00:45
Admit Physician: UA VALENTINE RICHARD
Age            : 49 Y  Date of Birth: 05/04/1957
Sex            : Male   Hist.#:    7331

Diagnosis: ALCOHOLISM
Discharge: 0/00/00  00:00
Note    :

Location : MS3  312-A

Allergies: No Known Drug Allergy
Patient: 0009789 PICKARD DANNY

Room/Bed: 312-A            Verified By: _____

# SUMMIT HOSPITAL

Page of 1

| | |
|---|---|
| **Patient Name: PICKARD, DANNY** | **Date of Birth: 5/4/1957** |
| **MRN: 7331** | **Observation Date/Time: 01/15/2007 19:57:00** |
| **Order Control: NW** | **Order Number: 1500** |
| **Accession #: 00097890001500** | **Ordering Provider: DARIUS BROWN** |
| **Exam Code: XRPCHEST** | **Clinical Indication:etoh withdrawel** |

C:.dot
**Exam Title:**
Chest, AP portable, 01/15/2007.

**History:**
ETOH withdrawal.

**Findings:**
The heart diameter and mediastinum are normal. The lungs are clear. There are no pleural
effusions.

**Impression:**
Normal.

Fernando Bayo, III, MD

:This document is electronically signed by  Fernando  Bayo, III MD on 01/16/2007 at 10:42:24
AM (CST) Verification: 163668982007011610424224

D: 01/16/07 08:47
T: 01/16/2007 08:12
SJN: SMT16366898
DJN: 6534
/

*Legally authenticated by BAYO III FERNANDO 2007-01-16 08:12:01*

SUMMIT HOSPITAL
4401 RIVER CHASE DRIVE
PHENIX CITY   AL  36867

LABORATORY
JOHN STICH, M.D.

NAME: PYCKARD DANNY
MR# : 000007331

DOB:  5/04/57
AGE: 49   SEX: M

PCP:

***URINE CHEMISTRY***

====================================================================================================

| SPECIMEN YR 2007 | | REFERENCE | |
| DT 01/15 | | | |
| TM 18:40 | | LOW - HIGH | UNITS |

----------------------------------------------------------------------------------------------------

| PCP | NEGATIVE | NEG - |
| THC | NEGATIVE | NEG - |
| BARBIT | NEGATIVE | NEG - |
| BENZO | NEGATIVE | NEG - |
| COCAINE | NEGATIVE | NEG - |
| OPIATE | NEGATIVE | NEG - |
| TRICYC | NEGATIVE | NEG - |

TECHNOLOGIST   DAC
VERIFIED DT 01/15/07
         TM 19:01

       ****FOR SCREENING PURPOSES ONLY****
   Confirmation testing recommended for positives.

# MEDICATION ADMINISTRATION RECORD

| MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cymbalta 60mg 1 capsule in AM | 0800 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Abilify 15mg 1 tablet @ bedtime | 2000 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Trazodone 150mg 1 tablet @ bedtime | 2000 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Naproxen 500mg 1 tablet twice daily (x 7 days) | 0800 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 2000 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Keflex 500mg 1 capsule twice daily (x 7 days) | 2000 | | | | | | | | | | | | | | | | | ← last dose | | | | | | | | | | | | |
| Amitriptyline 10mg 1 tab twice daily | 0800 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 2000 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

RTING FOR

THROUGH

sian

Physician    team

es                                    Telephone No.

Alt. Telephone    3/07

Medical Record No.

Rehabilitative
Potential

sis

icaid Number        Medicare Number        Approved By Doctor:

By:

# MEDICATION ADMINISTRATION RECORD

| MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Amitriptyline 100mg 1 tab twice daily | 0800 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 2000 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Abilify 15mg 1 tab @ bedtime | 2000 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| B | | | | | | | | sma | | |
| L | | | | | | | | | | |
| S | | | | | | | | | | |
| BT | | | | FB | FB | | | | | |

| | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
|---|---|---|---|---|---|---|---|---|---|---|
| B | | | | | | | | | | |
| L | | | | | | | | | | |
| S | | | | | | | | | | |
| BT | MDS | MDS | | FB | FB | | | | | |

| | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| B | KBH | | | | | | | VA | | | |
| L | | | | | | | | | | | |
| S | | | | | | | | | | | |
| BT | | | R 1¢ | FB | | | | | | | |

CHARTING FOR _____ THROUGH _____

Physician _____  Telephone No. 407

Alt. Physician _____  Alt. Telephone _____  Medical Record No. _____

Allergies _____  Rehabilitative Potential _____

Diagnosis _____

| Medicaid Number | Medicare Number | Approved By Doctor: | | |
|---|---|---|---|---|
| | | By: | Title: | Date: |

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| DANNY W. PICKARD, #245 939 | * | |
| Plaintiff, | * | |
| v. | * | 3:07-CV-270-MHT |
| SGT. MOORE, *et al.,* | * | |
| Defendants. | * | |

**ORDER**

A 42 U.S.C. § 1983 action has been filed by an inmate alleging a violation of civil rights during his confinement in the Russell County Jail. The Magistrate Judge has reviewed the complaint and determined that this pleading cannot be properly and effectively processed by the court without further additional information from the defendants. Accordingly, it is hereby

ORDERED that:

1. The defendants named in the complaint undertake a review of the subject matter of the complaint (a) to ascertain the facts and circumstances; (b) to consider whether any action should be taken by prison officials to resolve the subject matter of the complaint; and (c) to determine whether other similar complaints, whether pending in this court or elsewhere, should be considered together.

2. A **written report** shall be filed with the court and a copy served upon the plaintiff on or before **May 8, 2007**.   **The written report must contain the sworn statements of all persons having personal knowledge of the subject matter of the complaint.** *In cases involving medical treatment claims, the defendant(s) shall provide an affidavit from a named defendant or other health care professional which (i) contains a detailed explanation of the treatment provided to the plaintiff, and (ii) interprets the information contained in the medical records relevant to the claims presented in the complaint.*   All defenses including immunity defenses must be set forth in the written report or such defenses may be waived.   Authorization is hereby granted to interview all witnesses, including the plaintiff.   Whenever relevant, copies of medical and/or psychiatric records shall be attached to the written report.   Where the plaintiff's claim or the defendants' defenses relate to or involve the application of administrative rules, regulations or guidelines, the written report shall include copies of all such applicable administrative rules, regulations or guidelines.

3. The defendants shall identify the plaintiff's status during his incarceration in the county jail, i.e. whether he was a pre-trial detainee or convicted prisoner, at the time of the actions which form the basis for the instant complaint.

4. An answer be filed on or before **May 8, 2007.**

5. No motion for summary judgment, motion to dismiss or any other dispositive motions addressed to the amended complaint be filed by any party without permission of the

2

court. If any pleading denominated as a motion for summary judgment, motion to dismiss or other dispositive motion is sent to the court, the court shall not file or otherwise treat the pleading as a dispositive motion until and unless further order of the court.

6. <u>NOTICE TO PLAINTIFF</u>.

(a) The *Federal Rules of Civil Procedure* require that the plaintiff mail to the lawyer for the defendants or, if no attorney has appeared on behalf of the defendants, the defendants themselves a true copy of **anything** which he sends to the court. Failure to do so may result in dismissal of this case or other penalties. Anything filed should contain a certificate of service which specifically states that the pleading has been sent to the lawyer for the defendants. If the pleading does not contain a certificate of service, it will not be accepted for filing.

(b) With the exception of the complaint and any response ordered by the court, "[n]o other pleading shall be allowed" in this cause of action. Rule 7(a), *Federal Rules of Civil Procedure*.

(c) Each pleading, motion or other application submitted to the court shall contain "a caption setting forth the name of the court, title of the action, the file number, and a designation[,]" Rule10(a), *Federal Rules of Civil Procedure*, and must be signed by the plaintiff. Rule 11(a), *Federal Rules of Civil Procedure*.

(d) Every application which requests an order or particular action by the court "shall be [presented] by motion which, unless made during a hearing or trial, shall be made

3

in writing." Rule 7(b)(1), *Federal Rules of Civil Procedure*. The application "shall set forth with particularity the grounds" for the motion and "the relief or order sought." *Id.* Additionally, the request or application for relief must contain a proper caption setting forth a title designation which specifically states the action that the applicant or movant wants the court to undertake. Rules 7(b)(2) and 10(a), *Federal Rules of Civil Procedure*. Any application or request which fails to comply with the directives of the civil rules as outlined in this order will not be accepted by the court for filing.

**The plaintiff is hereby advised that the court will consider only those requests presented in an appropriate motion which is in the proper form. Consequently, any application for relief or request for action *must be contained in the title of the motion* to warrant consideration by the court.**

**(e)** All amendments to a complaint must be labeled with the words "amendment to complaint" or similar language. Except as permitted by Rule 15(a), *Federal Rules of Civil Procedure*, no amendment to a complaint will be accepted by the court for filing **unless accompanied by a motion for leave to amend.**

**(f) All amendments to the complaint and/or motions to amend must be filed within ninety (90) days of the date of this order and the allegations contained therein must relate to the facts made the basis of the instant complaint.** Proposed amendments or motions to amend filed after this date will be considered untimely. Any such

amendments or motions which contain claims unrelated to the claims presented in the original complaint will not be considered by the court.

(g)  Plaintiff is informed that this case will proceed as quickly as possible and that he will be informed of all action the court takes.

(h)  If the plaintiff moves to a different institution or is released, he must immediately inform the court and the defendants of his new address. Failure to comply with this requirement will result in the dismissal of this case. In so doing, Plaintiff shall style this notification as a "Notice of Change of Address" and provide a copy of this notice to Defendants. Failure to comply with this requirement will result in a Recommendation that this case be dismissed;

(i)  It is the responsibility of the plaintiff to furnish the clerk's office with accurate addresses for the defendant(s) whom plaintiff wishes to serve. Without accurate addresses, service of process is impossible. It is also the responsibility of the plaintiff to monitor this case to make sure that the persons whom plaintiff wishes to sue have been served. If a person has not been served, he/she is not a party to this lawsuit except in very unusual circumstances.

The plaintiff is specifically **CAUTIONED** that his failure to file motions, pleadings or other papers in conformity with the *Federal Rules of Civil Procedure* and/or the directives contained in this order will result in such documents not being accepted for filing. The

5

CLERK is DIRECTED to not accept for filing any pleadings, motions or other applications submitted by the plaintiff which are not in compliance with either the *Federal Rules of Civil Procedure* or the directives contained in this order.

The CLERK is hereby DIRECTED to furnish a copy of this order to Plaintiff and a copy of this order together with a copy of the complaint and any and all attachments to Defendants Moore and Riley.

Done, this 30th day of March 2007.

_____/s/ Wallace Capel, Jr._____
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

7

IN THE UNITED STATES DISTRICT COURT FOR RECEIVED
THE MIDDLE DISTRICT OF ALABAMA

2007 MAR 28  A 9: 59

Danny W. Pickard  245 939
**Full name and prison number**
**of plaintiff(s)**

v.

Jot Moore

Dr @ Russell Co. Detention Cen

MYRS - Riley Nurse

**Name of person(s) who violated**
**your constitutional rights.**
**(List the names of all the**
**persons.)**

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

CIVIL ACTION NO. 3:07-CV-270-MHT
**(To be supplied by Clerk of**
**U.S. District Court)**

I.  **PREVIOUS LAWSUITS**
    A.  **Have you begun other lawsuits in state or federal court**
        **dealing with the same or similar facts involved in this**
        **action?  YES (   )  NO ( X )**

    B.  **Have you begun other lawsuits in state or federal court**
        **relating to your imprisonment?  YES (   )  NO ( X )**

    C.  **If your answer to A or B is yes, describe each lawsuit**
        **in the space below.  (If there is more than one lawsuit,**
        **describe the additional lawsuits on another piece of**
        **paper, using the same outline.)**

        1.  **Parties to this previous lawsuit:**

            **Plaintiff(s)** _____

            _____

            **Defendant(s)** _____

            _____

        2.  **Court (if federal court, name the district; if**
            **state court, name the county)** _____

            _____

3.   Docket number _____

4.   Name of judge to whom case was assigned _____
     _____

5.   Disposition (for example:  Was the case dismissed?
     Was it appealed?  Is it still pending?) _____
     _____

6.   Approximate date of filing lawsuit _____

7.   Approximate date of disposition _____

II.   PLACE OF PRESENT CONFINEMENT  Russell County Den-
Tion Center

PLACE OR INSTITUTION WHERE INCIDENT OCCURRED  Russell
County Denstion Center

III.  NAME **AND ADDRESS** OF INDIVIDUAL(S) YOU ALLEGE VIOLATED YOUR
CONSTITUTIONAL RIGHTS.

NAME                          ADDRESS

1.  A Sgt Moore    russell county Detention center

2.  _____    ''    ''    ''    ''

3.  Russel Co COs    ''    ''    ''    ''

4.  _____

5.  _____

6.  _____

IV.  THE DATE UPON WHICH SAID VIOLATION OCCURRED  1/22/23/07

V.   STATE BRIEFLY THE GROUNDS ON WHICH YOU BASE YOUR ALLEGATION
THAT YOUR CONSTITUTIONAL RIGHTS ARE BEING VIOLATED:

GROUND ONE:   I WAS beaten until I
thaight I WAS Literally gona

2

STATE BRIEFLY THE FACTS WHICH SUPPORT THIS GROUND. (State as best you can the time, place and manner and person involved.)

Be Killed, Sgt Moore sprayed my face full of Mace, slapped me with his steal Black jack & Busted My head, Kept on Spraying & Beating until I passed out 1-22-07

GROUND TWO: 405 of Russell county deputies Beat me down Kicked 2 of my front teeth out

SUPPORTING FACTS: Witness saw this, 1-22-07 Hospital sewed me up, The whole jail witnessed my face after moore got thru, as did a good honorable Judge greene

GROUND THREE: They (Russell co. Medical stuff) have denied me medical help they seem to ignore

SUPPORTING FACTS: My request, even though my nerves are shot, I have extreme head acks, anxiety, dizzyness I had 2 siezures they've ongored them also, passed 3 kidney stones with out as much as an aspirin in the day time.

3

VI. **STATE BRIEFLY EXACTLY WHAT YOU WANT THE COURT TO DO FOR YOU.
MAKE NO LEGAL ARGUMENT. CITE NO CASES, OR STATUTES.**

*I want sgt Moore suspended with out pay.
I want Vendication in the amount to
cover what ever expensies I might have
when I do get to see a real neurologist*

*Danny Pickard*

Signature of plaintiff(s)

I declare under penalty of perjury that the foregoing is true
and correct.

EXECUTED on _____3/23/07_____.
(Date)

*Danny Pickard*

Signature of plaintiff(s)

*I swear all statements to be true
as I remember them.*

*3 witnesses who seen the beating*
*① Clenton Trammell*
*② Sam Colta*
*③ Jeffrey Harold*
*④ Mr. goodman — Nurses' aid witnessed nurse
throwing away my request forms, + begging for
Medical + Dental Help, with not 1 response*

4

# Attachment

Russell Co. Jail.    I

Continued Grievance

Date of crime 1-22-07

\*    I had been drinking for about a week, I was beginning to sober up + started going into DTs. I called an Ambulance out to my self. They sent the Russell Co police out First. then the Ambulance. I was taken to Summit Hospital, Im sure the doctors there hadnt had to much experience with DTs. They were not giving me enough Medication & I went into DTs. And got Rowdy and Scared them, so they called Russell Co. Police Back to the hospital. They found an old warrant a Probatic violation From FLA. on me. So I Ended up in Russell County Jail rather than in a Hospital.

\*    This is what I Remember happening 1/22/07 I went into DTs. right before we got to the Jail. I Dont know what I could of been Immigaring, but when we got inside I remember being Kicked, Knee Hit, pulled & Slammed around, while my cloths were being torn off. I got 2 front teeth missing during this beating. I was drug around Naked in Front of the female Staff, and thrown in a cold holding cell Naked. Eventually After I settled down I went into DTs again, I thought I heard sirens + went to see what it was, I pushed on the door & it slid open, I walked out side of it & there was Sgt Moore! I turned & walked toward him I thought he was there to help me.

1/22/07                                                     II

Grievance II

* ALL OF a sudden I get saturated in Mace.
then I feel A deadening pain across my Right
Eye. He has hit me with his steel club In ALL The
Blood, Mace, Slobber, I cant see or hear Anything
The cut is about 3/4 inch wide & about 6" Long.
around & across my Right eye. I Immediately
Hit the floor begging him not to hit me Any
more. But it wasn't enough as far As He was
concerned. He Kept spraying & swinging his bar
I Kept backing away, Cryin, Couldn't hardly see a
hear anything, Blood steady flowing. He Backed
me in a closet of some Kind. I grabbed at the
door. Tryin to close it, But he Kept sticking that
Bar in between it. Still Spraying & Tryin to hit
me agine. I found some Kind of handle was
poking at his club Trying to get him to go away
* I guess with all the bleeding, Mace & fear I
passed out. I can remember thinking there going
To Kill me now & started praying, The whole time Sgt
Moore was on my back still trying to spray me
again with his Mace, Then it was the sheriff
that came in I believe. They thru me down on
the floor & handcuffed me from the back. Toting
me Like a suit case they Almost Tore my Arms
Loose. Kept banging my Knees tryin to get me to
Walk, Like I Could After such a beating
twice. I was then toted out of the Jail —

Russell Co. Jail

C-22

III

Grievance III

And thrown in the back of a van.

✱ I was then hauled to another Jail, was toted in there where there was a nurse for Russell Co on Duty. The Sheriff Asked her about sewing it up she told him she couldn't do anything with this cut. IT was TO wide & TO Deep. So she was told to call another ambulance out to me. So we went Back to the hospital. We went in the back & out this back door, I'm not sure I even signed IN. They put about 25 staples in my head & around my eye. They didn't even take time to do a scan to see if there was something else wrong. I guess the van was sent for cleaning because when we left the hospital we were in the sheriffs car When we got to the Jail the sheriff jerked me out of the car, snatched me across his trunk & said if I said another word he would take off the other side of my head. As we entered the Jail I was stripped again & put in the holding cell. Sick cold, naked and sore. I was left this way for 6 days

✱ the nurse & other deputies that cleaned me up before the ambulance, was called held me down & cut all my hair off for no reason. They washed most the blood off, put on a piece of a bandage on me, & we waited on the ambulance. I have no ideal why All this HAD TO HAPPEN.

C-22

Grievance

* Since all this has happened, I have been put in the back in Cell C. I have been denied Medical Attn. They Just keep giving me the run around about it.

* Since the beating I have severe headacks Dizziness, My Memory slips more & more each day, My speech is slowed from the difficulty in Remembering simple words to complete a sentense. My Nerves are ruined, always shaking & Jumpy, I sleep hardly any. Anxiety & Fear are over whelming. I broke off the stub of my tooth that was Left from the 1st beating the other nite eating, Now I also have an Extreme tooth ach. I cant get to the dentist to get it pulled.

* My right eye brow is ½ inch lower than the Left. When ever I see Sgt. Moore or hear him call my name, I see or hear Amosity in him, I am scared of having a replay of this agine, This is the only way I know I might Protect my self, From the officiers & haveing trauma Later from this & no insurance or way of paying for medical Attn.

*Last of Grievance*

* CHIEF ALEXZANDER, I WANT TO personally appeal to you professionalism and on you being a compassonite man. I WAS beaten ungodly for no reason.

I actually was scared for my Life a couple times. Every time I hear or see Sgt Moore, I shake in fear. Him & some of the other officers seem to be holding on to a grudge.

* I feel that the appropriate action to be taken would be for Sgt. Moore & all ACCOMPANING officers be suspended without pay until Futher investigation. I also know they were trying very hard to cover all this up. remember ALL they had on me was a hold for FIA.

* CHIEF, I ALSO SIR INTEND on self Gradification with A 1983 FederaL LAW suit Form. I would also be grateful For your help with this. Of Course not to Exceed your duty & obligations to the SHERIFF and to your Jail.

Thank you for your help

R W Rickard
C 22
2/24/07